UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| Personal Audio, LLC, | ) |
|     Plaintiff, | ) |
| v. | ) Case 9:09-cv-00111-RC |
| Apple, Inc., | ) |
| Sirius XM Radio, Inc., | ) **ORAL HEARING REQUESTED** |
| Coby Electronics, Corp., | ) |
| Archos, Inc., | ) |
|     Defendants. | ) |

**PERSONAL AUDIO, LLC'S OPPOSITION TO
THE DEFENDANTS' MOTION TO TRANSFER VENUE**

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................................... 1

Factual Background ............................................................................................................. 2

Argument .............................................................................................................................. 4

I.  The Relative Ease of Access to Sources of Proof Does Not Favor the District of Massachusetts ........................................................................................................... 5

II. The Availability of Compulsory Process to Secure the Attendance of Material Trial Witnesses Does Not Favor Massachusetts ............................................................... 7

    A.  The Defendants' Non-party Witness List Does Not Contain Many Relevant Witnesses ....................................................................................................... 8

    B.  Witnesses Exist in Texas with Relevant Information ................................... 10

    C.  The Comparison Between Texas and Massachusetts Should Be Made Within the Overall Context of the Case ........................................................ 12

III. The Cost of Attendance for Willing Witnesses is Likely To Be Less Lufkin ................. 13

IV. All Other Practical Problems That Make Trial Easy, Expeditious, and Inexpensive Are Neutral ..................................................................................................................... 14

Conclusion ........................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

**Cases**

Adrain v. Genentech, Inc.,
  No. 2:08-CV-423, 2009 WL 3063414 (E.D. Tex. Sept. 22, 2009) .................................... 9

Aloft Media, LLC v. Yahoo!, Inc.,
  6:08-CV-509, 2009 WL 1650480 (E.D. Tex. June 10, 2009) ........................................ 11

Careview Comm'ns, Inc., v. Silicon Standard Corp.,
  No. 4:09-CV-176, 2009 WL 2998326 (E.D. Tex. Sept. 17, 2009) .................................. 11

Emanuel v. SPX Corp.,
  No. 6:09cv220, 2009 WL 3063322 (E.D. Tex. Sept. 21, 2009) ........................... 11, 12, 13

In re Genentech,
  566, F.3d 1338 (Fed. Cir. 2009) .............................................................. 6, 7, 9, 15

In re Hoffman-La Roche, Inc., 587 F.3d 1333 (Fed. Cir. 2009) ...................................... 6

In re Telular,
  319 Fed. Appx. 909, 2009 WL 905472 (Fed. Cir. Apr. 3, 2009) ........................... 5, 9, 13

In re TS Tech USA Corp.,
  551 F.3d 1315 (Fed. Cir. 2009) ...................................................................... 5, 14

In re Volkswagen of Am., Inc.,
  545 F.3d 304 (5th Cir. 2008) ........................................................................ passim

Mediostream, Inc. v. Acer America Corp.,
  No. 2:07CV376, 2008 WL 4444327 (E.D. Tex. Sept. 26, 2008) .................................... 14

Mohamed v. Mazda Motor Corp.,
  90 F. Supp. 2d 757 (E.D. Tex. 2000) .................................................................... 13

Neil Bros. Ltd. v. World Wide Lines, Inc.,
  425 F. Supp. 2d 325 (S.D.N.Y. 2006) .................................................................... 6

Sanofi-Aventis Deutschland GmbH v. Genentech, Inc.,
  607 F. Supp. 2d 769 (E.D. Tex. 2009), reversed on other grounds,
  In re Genentech TA \s "In re Genentech" , 566 F.3d 1338 (Fed. Cir. 2009) ..................... 15

**Statutes**

28 U.S.C. § 1400(b) ........................................................................................... 6

81236824.1

28 U.S.C. § 1404(a) .................................................................................................. 5, 7, 13

E.D. Tex. L.R. 7(h)-(i) ...................................................................................................... 2

Fed. R. Civ. P. 45(c)(3)(A)(ii) ........................................................................................ 13

81236824.1

## Introduction

This patent infringement case is a national dispute with a Texas connection. Plaintiff Personal Audio, LLC is a corporation intentionally formed in Texas for the purpose of enforcing the patents-in-suit. Personal Audio has no documents, employees, evidence, or other relevant presence in Boston. No defendant has made a showing that any of the defendants have any documents, employees, evidence, or other relevant presence in Boston. Instead, the corporate defendants state they are located in California, Colorado, New York, France, and China. The defendants can not meet their burden to show that Boston is clearly more convenient than Lufkin. None of the cases cited by the Defendants involved a transfer to a jurisdiction where no party resides, including In re Volkswagen of Am., Inc., 545 F.3d 304, 320 (5th Cir. 2008). By seeking a transfer to Massachusetts, the Defendants ask this Court to extend the recent transfer decisions far beyond reason.

The private and public interest factors the Court must consider are at best neutral given the information available at this stage of the proceedings, or weigh against transfer. In sum, there is only one material third-party witness within the subpoena power of Massachusetts. The other third-party witnesses identified by defendants near Boston are not material to the central issues in the case. In contrast, Plaintiff Personal Audio is a Texas Limited Liability Company with its documents and only office space located in Beaumont, Texas. The material party and non-party witnesses are spread across the country. And it is indisputable that the cost for parties and for material witnesses to attend trial in Lufkin, is far less expensive than in Boston, Massachusetts. Under these circumstances, Massachusetts is simply not "clearly more convenient," and Defendants' motion must be denied.

## Factual Background

Personal Audio sued the Defendants for infringing the '076 and '178 patents in June 2009. The Court set its case management conference for January 25, 2010, and reserved a <u>Markman</u> hearing date for August 30, 2010, and a trial date of March 2011. In preparation for the case management conference, the parties have already engaged in multiple and extensive meet-and-confers in a largely successful attempt to resolve scheduling disputes. On January 4, 2010, the Defendants filed a motion to transfer to the District of Massachusetts, Boston Division.[1]

The asserted patents were filed on October 2, 1996 naming James D. Logan, Charles G. Call, and Daniel F. Goessling as inventors. Exh. A.[2] Also in 1996, Logan started a company, Personal Audio, Inc. in Methuen, Massachusetts. Decl. Logan ¶3. Personal Audio, Inc. set out to commercialize the technology described in the asserted patents but did not succeed in manufacturing and selling an embodiment of the claimed invention. <u>Id.</u> After a short period of time, Personal Audio, Inc. shifted its focus to magazines-on-tape. <u>Id.</u> Personal Audio, Inc. closed in 1998 and has been defunct ever since. <u>Id.</u>

Logan and Call, and Goessling have separately pursued other endeavors since 1997. After Personal Audio, Inc., Logan founded two separate companies—Gotuit Media, Inc. and Gotuit Audio, Inc. <u>Id.</u> ¶5. Gotuit Media is not and has not been in the MP3 player business. <u>Id.</u> ¶5. Gotuit Media is in the video technology business, and continues to serve a number of high profile clients. <u>Id.</u> ¶6. While Logan was the original CEO of Gotuit Media, he has had no day-to-day involvement in the company since 2005. <u>Id.</u>

---

[1] The defendants overlooked the requirement of the Eastern District of Texas Local Rules to meet-and-confer with Personal Audio before filing this motion. E.D. Tex. L.R. 7(h)-(i). There are a number of facts that Personal Audio could have clarified before the Defendants filed their motion, had the Defendants properly met-and-conferred.

[2] All exhibits cited herein are attached to the Declaration of Patrick M. Arenz unless otherwise indicated.

2

Gotuit Audio was an affiliate of Gotuit Media. Id. ¶5. However, Gotuit Audio never got off the ground and shut down after about thirteen or fourteen months. Id. ¶7. No one besides Logan had any involvement with the '076 patent. Id.

Importantly, neither Gotuit Media nor Gotuit Audio has ever held an ownership interest in the asserted patents. Contrary to the Defendants' assertion, the ownership chain is quite simple. The inventors assigned their rights to Personal Audio, Inc. See Exh. at B.[3] Personal Audio, Inc. assigned its rights to Logan. See Exh. C. Logan assigned his rights to a family trust. See Exh. D. And the family trust assigned its rights to Personal Audio, LLC. See Exh. E.[4]

Logan and Call organized Personal Audio, LLC. Logan Decl. ¶11. Logan is the Manager and a Member of Personal Audio LLC and Call is also a Member. Id. Logan lives in Candia, New Hampshire, and Call lives in Marco Island, Florida. Call Decl. ¶3. Call does not, as alleged by defendants, live in Boston part time or otherwise.[5] Id. ¶4. Logan and Call did not form a Massachusetts entity to enforce the asserted patents. They formed a Texas entity. The Personal Audio members chose Texas to set-up this business in order to avail itself of this Court's jurisdiction, which has a proven ability to efficiently and promptly resolve patent infringement cases. See Logan Decl. ¶11.

None of the Defendants accused of infringement reside in Massachusetts. In fact, they are spread out across the globe. Apple's principal place of business is in Cupertino, California, but

---

[3] The patent application number that led to the '076 patent is 08/724,813. Because the early assignments occurred before the '076 patent issued, the assignments refer to this application number. Furthermore, the '178 patent issued in March 2009, and is a divisional of the '076 patent. Thus, the assignments encompass the '178 patent as well.

[4] The file history to the '076 patent at one point erroneously mentions that Gotuit Media is the real party in interest. This was a mistake. At the time, other patent applications—not including the application leading to the '076 patent—were assigned to Gotuit Media, which was the basis for the mix-up. See Exh. F.

[5] The Defendants incorrectly allege that Call lives part-time in Massachusetts. See Def. Br. at 2. This is just wrong. Apple has subsequently served Call with its reexamination petition, using Call's current Florida address. See Exh. G.

3

Apple also maintains one of its four world-wide campuses in Austin, Texas. See, e.g., Healey Decl. Exh. H, at 1-2. Recently, Apple argued to this very Court that at least five former employees with relevant information to the design and development of the iPod and iPhone (accused devices) live in California. See Exh. H. Coby Electronics' principal place of business is in Lake Success, New York. See, e.g., Healey Decl., Exh. H, at 6-7. Sirius XM resides in New York City, New York. See, e.g., id. at 8. However, at least some of Sirius XM's design, development, and manufacturing work occurs in Lawrenceville, New Jersey, and Farmington Hills, Michigan, and other of "XM's operations" are based in Washington, D.C. and Deerfield Beach, Florida. Id. at 9-10. Finally, Archos' principal place of business is Greenwich Village, Colorado, with a French parent company. See, e.g., id. at 4. None of the Defendants manufacture the accused products in the United States. Instead, they are all manufactured in the Pacific rim: China, Malaysia, Korea, and Taiwan.

### Argument

The Defendants are required to prove that the District of Massachusetts is "clearly more convenient" than the Eastern District to litigate and try this case. See, e.g., In re TS Tech USA Corp., 551 F.3d 1315, 1319 (Fed. Cir. 2009). The high burden placed on the Defendants reflects the required deference to Personal Audio's choice of forum. See, e.g., In re Volkswagen of Am., Inc., 545 F.3d 304, 1320 (5th Cir. 2008) ("the plaintiff's choice of venue corresponds to the burden that a moving party must meet in order to demonstrate that the transferee venue is a clearly more convenient venue."). Even if Defendants could meet this burden, 28 U.S.C. § 1404(a) provides only that "a district court **may** transfer any civil action."[6] Id. (emphasis added).

---

[6] Recent case law notwithstanding, the statute itself does not state that a district court "shall" transfer, and therefore does not mandate transfer even if the transferee court is proven to be clearly more convenient.

In this case, Defendants have not met their burden to show that Massachusetts is clearly more convenient, and thus have not placed this case within the Court's discretionary transfer power.

Indeed, the Defendants propose transferring this case to a venue where not one party, party witness, or party document has been identified. This is not a situation like TS Tech, Genentech, Hoffman, or Nintendo, which all dealt with a transferee forum where the defendants resided and made the infringing product. In this case Personal Audio is a Texas LLC, and none of the Defendants reside in the proposed transferee forum.

Even putting aside Personal Audio's Texas connection, this case is far more similar to In re Telular, in which the Federal Circuit explained that even if the Eastern District of Texas had no more of an interest than any other district, that "does not mean that [the Defendants'] alternative choice of venue ... is clearly more convenient." In re Telular, 319 Fed. Appx. 909, 2009 WL 905472, at *2 (Fed. Cir. Apr. 3, 2009). As the analysis of the transfer factors applied in the Fifth Circuit shows, Massachusetts has, at best, no more of interest in this case than does the Eastern District of Texas, making transfer inappropriate. No one disputes that the Eastern District of Texas is a proper venue as a matter of law. See, e.g., 28 U.S.C. § 1400(b).

## I. The Relative Ease of Access to Sources of Proof Does Not Favor the District of Massachusetts.

The Defendants make no showing that they have a single document in Boston, even though the Federal Circuit has correctly observed that the accused infringer's documents normally amount to "the bulk of relevant evidence." See, e.g., In re Genentech, 566, F.3d 1338, 1345 (Fed. Cir. 2009). Furthermore, the Federal Circuit has held that as long as a party has to transport its documents somewhere, the actual distance the documents must be shipped matters little. See id. at 1345-46. In addition, most of Personal Audio's original documents relating to the prosecution of the application that led to the '076 patent, the original assignment history of the

asserted patents, and the remaining documents from Personal Audio, Inc., are kept in Beaumont, Texas. Unlike the situation in the Federal Circuit's recent In re Hoffman-La Roche, Inc. decision, in which the court declined to consider 75,000 electronic documents sent to this forum ahead of filing suit by a California entity, Personal Audio stores its original, hard copy documents here as part of its corporate existence. 587 F.3d 1333 (Fed. Cir. 2009). Thus, if this case is transferred, Personal Audio's original documents will have to be transported. The location of Personal Audio's documents weighs at least slightly against transfer.[7]

Defendants tacitly acknowledge the weakness of their argument on this factor by focusing on third party witnesses rather than the location of documents and physical evidence, especially their own. Cf. In re Volkswagen of Am., Inc., 545 F.3d at 1315-27 (5th Cir. 2008) (addressing witnesses in the second and third private factors).

Defendants have cited no case law supporting their theory that the alleged potential for third party documents to exist is a relevant factor for the Court to consider. More importantly, the Defendants have simply not identified a single relevant document or other physical evidence that exists in Massachusetts. Instead, for instance, they rely on Personal Audio Inc., which has been defunct for over ten years. Personal Audio Inc. as an entity does not exist and has no relevant documents. Once Logan shuttered the doors to Personal Audio, Inc., he kept any remaining hard copy documents at his house in New Hampshire. Logan Decl. ¶3. And now those documents are stored in Beaumont, Texas. Id.

The Defendants also point to other patent litigation in Massachusetts involving Personal Audio, Inc. co-founder James Logan. While this argument is not relevant to the "ease of access

---

[7] Unquestionably this is a bizarre factor in an age when document production occurs between counsel across the country solely on electronic media. Nonetheless, the Federal Circuit has held that the location of documents does matter. See In re Genentech, 566 F.3d at 1345 (citing Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 330 (S.D.N.Y. 2006)).

6

81236824.1

to proof" factor, it is also objectively irrelevant under any factor. The Federal Circuit will not consider a previous lawsuit unless the "previous lawsuit involved the same parties, witnesses, evidence, and facts." In re Genentech, 566 F.3d at 1346. Here, the prior litigation involved a different company (Pause Technologies), different patent (Reissue Patent No. 36,801), and different technology (DVR-related technology). There is no overlap between that litigation and the current litigation.[8]

In sum, all the parties' documents and physical evidence are located outside the District of Massachusetts. This factor is neutral or weighs slightly against transfer, meaning Defendants have not met their burden.

## II. The Availability of Compulsory Process to Secure the Attendance of Material Trial Witnesses Does Not Favor Massachusetts.

The Defendants' analysis of this of this factor is legally and factually specious. The bulk of the relevant witnesses will naturally be party witnesses, most of whom will appear at trial regardless of venue. Defendants, therefore, identify a few third-party witnesses, not because they are material, but instead because they are in or near Boston. Defendants seem to assume that any witness, no matter how tangential or even irrelevant, qualifies under Fifth Circuit law as a material witness with a reasonable chance of being subpoenaed to trial if compulsory process is available. That is not the law.

Personal Audio is aware of no case that holds that any potential witness, no matter how tenuously related to central issues to be tried, must be given significant weight in a transfer analysis. It bears noting that Fifth Circuit law applies here, and the Federal Circuit applies Fifth

---

[8] It is perplexing that the Defendants would even raise this issue, as they also affirmatively claim that "[t]he fact that a movant may have filed prior cases as plaintiff in the District is not to be considered in the § 1404(a) transfer analysis." See Def. Mem. at 4 n.1. If the location of other litigation were considered, venue should remain in this District because Apple has chosen to invoke the jurisdiction of this Court by filing three cases here in 2006 involving the *same accused technology* in this case, even though it simultaneously argues about the inconvenience to litigate here in this and other cases. See, e.g., Exh. I, at 8-9.

7

81236824.1

Circuit law. In the Fifth Circuit's In re Volkswagen decision, the court rejected the notion that a defendant seeking transfer must provide affidavits including the likely trial testimony of the witnesses in order to meet its burden. 545 F.3d at 317 n.12. However, that decision did not change the Defendants' burden to demonstrate, in some manner, the importance of the witnesses or the likelihood that they could be called at trial—as the Defendants clearly did in In re Volkswagen. In fact, when applying the Volkswagen decision, the Federal Circuit explicitly stated that "[a] district court should assess the relevance **and materiality** of the information the witness may provide." In re Genentech, 566 F.3d at 1343. The court further noted that the defendants met their burden by identifying witnesses relevant to inequitable conduct, infringement, and validity, which may be issues at trial. Id. at 1344. The witnesses within the transferee district were the attorneys who prosecuted the patents-in-suit and others who were involved with the manufacture of the accused products. Id. at 1343. Thus, there is no support here for the proposition that every witness who could possibly have any relevant information must be counted, regardless of how immaterial that information appears to be.

Under a proper analysis, it becomes clear that Massachusetts has little relevant compulsory subpoena power. Alternatively, applying the Defendants' broad scope of relevant witnesses, Texas is at least as likely to have witnesses with relevant information. In addition, relevant and material witnesses are spread out across the country and the world, rendering little value to transferring this case to Massachusetts.

### A. The Defendants' Non-party Witness List Does Not Contain Many Relevant Witnesses.

A trial in this case between Personal Audio and the four named defendants is not going to revolve around the five witnesses identified in the Defendants' motion. Except for Daniel Goessling who is a named co-inventor, the remaining four witnesses are persons on the periphery

8

81236824.1

with some tangential connection to Logan. These four witnesses are simply not trial witnesses under any stretch of the imagination.

Janet Holian is not likely to have much information, if any at all, for this case. While she lives in Massachusetts, the only potential relevance is that 12 years ago she was as a marketing officer for Personal Audio, Inc., a company that did not manufacture or sell an embodiment of the asserted patents. The Defendants are free to subpoena and depose her if they choose, but there is no reason to believe that she will have testimony affecting any of the core issues in this case—e.g., infringement, validity, or enforceability of the asserted patents.

Similarly, the Defendants assert that Mark Pascarella may have information relating to the "offers to license the '076 patent." See Def. Mem. at 4. However, the evidence they cite for the "offers to license" are all on Gotuit Audio webpage archives. Logan was the only executive involved in Gotuit Audio. Logan Decl. ¶7. This is, in fact, confirmed by the Defendants' archival information which states "interested parties should contact **Jim Logan, CEO of Gotuit Audio**, at jlogan@gotuit.com." See, e.g., Healely Decl. Exh. C, at 17. The Defendants have not pointed to any reason why Gotuit Media's current CEO will have any information about an archived "offer" by Logan to license one of the asserted patents.

Mark Lowenstein is even more attenuated. Emergent Technologies is not an incorporated entity. Logan Decl. ¶9. Its goal is to invent and develop great ideas into commercial products and, if appropriate, secure patent protection. Id. Lowenstein is a former employee who worked for Emergent Technologies from his home, and had no involvement in the "offer" to license the '076 patent. Id.

Lastly, the Defendants list Richard Goldhor. Goldhor is a co-inventor on a set of unrelated patents that also list Logan as a co-inventor. These patents disclose systems and

9

methods for computer enhanced broadcast monitoring, and systems and methods for modifying broadcast programming; not portable audio players, like the iPod. See, e.g., Exh. J. Apple has not even contended that Goldhor had any involvement in the asserted patents.

Furthermore, the Defendants provide no specific reason why the deposition testimony for any of these witnesses—if they are even deposed—will be insufficient at trial. Instead, the Defendants generically rely on a foreign case and ignore this District's precedent that the Defendants must show some reason why testimony cannot be conveyed by deposition. See, e.g., Careview Comm'ns, Inc., v. Silicon Standard Corp., No. 4:09-CV-176, 2009 WL 2998326, at *6 (E.D. Tex. Sept. 17, 2009) (citing Aloft Media, LLC v. Yahoo!, Inc., 6:08-CV-509, 2009 WL 1650480, at *6 (E.D. Tex. June 10, 2009)). Indeed, this Court specifically foresees that deposition testimony will be used at trial if a witness cannot attend, which of course is a normal occurrence in almost every patent case. See, e.g., Emanuel v. SPX Corp., No. 6:09cv220, 2009 WL 3063322, at *6 n.2 (E.D. Tex. Sept. 21, 2009) ("Pragmatic considerations should also be given to the fact that even if this Court could not compel a witness's attendance, neither party is prevented from using the witness' videotaped deposition at trial.").

In short, the reality of the Defendants' non-party witness list is that one individual, co-inventor Goessling, is a legitimate non-party witness in Massachusetts. That is not sufficient to tip the scales of justice into favoring transfer of venue. It is simply neutral. Alternatively, if the analysis is as simple as listing names of persons who may have some relevant and cumulative information, then the truth lies in a litany of witnesses spread out across the country.

B. **Witnesses Exist in Texas with Relevant Information.**

At this stage in the litigation, "[t]he identity of non-party witnesses is not readily apparent and their potential locations is speculative." Emanuel, 2009 WL 3063322, at *6. Here the

10

81236824.1

Defendants bear the burden, but have done little to aid the Court in analyzing the location or materiality of defendants' own employees and former employees, who could be within this Court's subpoena power. On this record, it is at least as likely that there are witnesses with relevant, or even material, information in Texas as in Massachusetts.

For instance, Apple has a substantial facility in Austin, Texas, but has told the Court little about it. Apple admits it has "many" employees in Texas, and offers only that "it does not have any employees in the Eastern District of Texas that have any responsibility related to the research, design, or development of the above listed products." Healey Decl., Ex. H, at 2, ¶7. Apple leaves open the distinct possibility that it has current employees in Texas, just not the Eastern District, with relevant and material information about the design, development, sales, advertising, or marketing of its products. In addition, Apple certainly has former employees in Texas, perhaps even in the Eastern District. These former employees could have relevant and material information on any aspect of its business including design, development, sales, marketing and policies or procedures regarding patents. Similarly, Sirius represents only that no employees in Texas "have any responsibility related to the research, design, or development of the products that may be subject to this lawsuit." Healey Decl. Exh. H, pg. 8, ¶4. There could be other current of former employees in Texas with relevant knowledge.[9] Such witnesses could be subpoenaed for trial in the Eastern District. See Fed. R. Civ. P. 45(c)(3)(A)(ii); Mohamed v. Mazda Motor Corp., 90 F. Supp. 2d 757, 778 (E.D. Tex. 2000).

---

[9] Coby actually does represent that it has one sales representative in Keller, Texas. Healey Decl., Ex. H, at 6-7, ¶5. Coby asserts that this witness has "no unique documents or knowledge relevant to the current litigation." However, if the tangential names Defendants have proffered for Massachusetts are to be counted, this witness must be counted too. Under such an analysis, it is irrelevant that the witness has no "unique" knowledge as long as he or she has relevant knowledge. The sales and marketing of Coby products is clearly an issue that will be discussed at trial.

11

Personal Audio cannot prove, and does not bear the burden to prove, that Apple or the other defendants have relevant and material witnesses in Texas that Personal Audio would like to subpoena for trial. However, on this record it is at least as likely as Defendants' assertions about individuals in the Massachusetts area tangentially related to Logan. To say more, Personal Audio would need venue discovery. But that unappealing scenario is unnecessary because the Defendants have simply failed to prove that Massachusetts is clearly more convenient with regard to this factor. It would certainly not be "in the interest of justice" to transfer this case based on one third-party potentially material witness, co-inventor Goessling, and the Defendants' carefully crafted and limited representations, only to have Personal Audio later discover Apple's Texas witnesses and be unable to subpoena them to trial in Boston. See 28 U.S.C. § 1404(a).

C. **The Comparison Between Texas and Massachusetts Should Be Made Within the Overall Context of the Case.**

The Federal Circuit and this Court have determined that "this factor may weigh against transfer or be neutral when the relevant witnesses are spread throughout the country or the world." Adrain v. Genentech, Inc., No. 2:08-CV-423, 2009 WL 3063414, at *7 (E.D. Tex. Sept. 22, 2009) (citing In re Telular, 319 Fed. Appx. 909, 2009 WL 905472 (Fed. Cir. Apr. 3, 2009)). That logic applies here. For instance, when seeking a transfer to California, Apple recently represented to this Court that at least four employees and five former employees with knowledge about the design and development of the iPod and iPhone reside in California. The other defendants provide the locations of party, and likely non-party former-employee, witnesses with information about the other accused products in California, Colorado, New Jersey, New York, France, Florida, Michigan, Washington, D.C., and China. These are the types of witnesses that are normally considered in patent litigation transfer motions, and they are not within the subpoena power of Massachusetts or Texas. Even if the defendants could show one or two more

12

likely material witnesses in Massachusetts, a difference that small is insignificant in the overall context of this case. Cf. TS Tech, 551 F.3d at 1321 (finding "vast majority of identified witnesses" resided in Ohio or its neighboring state Michigan). This factor is neutral.

### III. The Cost of Attendance for Willing Witnesses is Likely To Be Less Lufkin.

The cost of attendance for willing witnesses weighs against transfer to Massachusetts. As part of the analysis, the Fifth Circuit applies the "100 mile" rule, which states, "when the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." Volkswagen, 545 F.3d at 317. This focuses on distance and not necessarily travel time. Witnesses for Personal Audio will travel from Florida or Illinois, and New Hampshire, as well as one of its experts from Houston, Texas.[10] And witnesses for the Defendants will travel at least from California, Colorado, Texas, New York, France, and China, and also likely New Jersey, Michigan, Washington D.C., and Florida (due to Sirius XM). According to the 100 mile rule, some of these locations are closer to Texas (e.g., Texas, California, Colorado, and China), and others are closer to Massachusetts (e.g., New York and France). This is not a clear showing of convenience. Indeed, the following chart[11] with reasonable estimates for each parties' minimum witnesses shows more miles will be traveled to Boston than Lufkin.

| Name and Address | Relevance to Case | Miles to Boston | Miles to Lufkin |
| --- | --- | --- | --- |
| James Logan Candia, NH | Named Inventor of patents-in-suit | 60 | 1,789 |

---

[10] Personal Audio expects to call Jim Nawrocki as an expert witness for this case. Nawrocki resides in Houston, Texas. While the location of expert witnesses is given little weight, it is nonetheless considered. See, e.g., Mediostream, Inc. v. Acer America Corp., No. 2:07CV376, 2008 WL 4444327, at *3 (E.D. Tex. Sept. 26, 2008).

[11] For the mileage involving Candia, New Hampshire, Marco Island, Florida, and Austin, Texas, see Exh. J. The remaining mileage estimates are taken from Defendants' memorandum of law at page 9.

| Charles Call<br>Marco Island, FL | Named Inventor and Patent Attorney of patents-in-suit | | 1,537 | | 1,173 |
|---|---|---|---|---|---|
| 2 Apple Witnesses<br>Austin, TX | Apple's Operations and Sales divisions | 1,956 x 2 = | 3,192 | 239 x 2 = | 478 |
| 4 Apple Witnesses<br>Cupertino, CA | Headquarters/Corporate | 3,136 x 4 = | 12,544 | 1,981 x 4 = | 7,924 |
| 3 Archos Witnesses<br>Greenwood Village, CO | Headquarters/Corporate | 1,984 x 3 = | 5,952 | 1,063 x 3 = | 3,189 |
| 3 Coby Witnesses<br>Lake Success, NY | Headquarters/Corporate | 211 x 3 = | 633 | 1,548 x 3 = | 4,644 |
| 3 Sirius /XM Radio Witnesses<br>New York, NY | Headquarters/Corporate | 216 x 3 = | 648 | 1,529 x 3 = | 4,587 |
| **Total** | | | 24,566 | | 23,784 |

The chart could easily be modified to tip the mileage slightly one way or the other, for instance by adding witnesses from the Pacific Rim. The point is that Defendants cannot demonstrate that Massachusetts is clearly more convenient.

Furthermore, the 100 mile rule is predicated on the notion that addition travel time increases the likelihood of overnight stays – which are highly likely in a major patent case regardless of venue. In re Volkswagen, 545 F.3d at 317. Trial in Lufkin would cost substantially less for willing witnesses, and the parties in general. The cost of hotels, food, local counsel, parking, and temporary office space is unquestionably much less in Lufkin than in Boston. See, e.g., Sanofi-Aventis Deutschland GmbH v. Genentech, Inc., 607 F. Supp. 2d 769, 789 (E.D. Tex. 2009), reversed on other grounds, In re Genentech, 566 F.3d 1338 (Fed. Cir. 2009). All things considered, out-of-pocket costs for a trial in Boston, Massachusetts can be expected to be between $250,000 and $347,000—two to three times more than the expected out-of-pocket costs of roughly $108,000 for trial in Lufkin, Texas. See, e.g., Case Decl. ¶ 12; see generally Case Decl. ¶¶1-12.

In sum, this factor either slightly weighs against transfer or, at most, is neutral.

**IV.   All Other Practical Problems That Make Trial Easy, Expeditious, and Inexpensive Are Neutral.**

81236824.1

Personal Audio filed this case in June 2009. Defendants waited until the last possible date under this Court's order to move to transfer. There is already a <u>Markman</u> hearing scheduled for August 2010 and a trial scheduled for March 2011. Should this case be transferred at this stage, the case will start all over. With an average time-to-trial of thirty months in Boston, this case would not be tried until late 2012—a year and a half later than in this Court. See Healey Decl., Exh. L at 189. Continuing in this District is unquestionably easier, and more expeditious and inexpensive for all parties. This factor weighs at least slightly against transfer.

In addition, as to Apple, this Court has already recognized that, "this factor weighs somewhat against transfer" based on conservation of judicial resources. Exh. I, at 8-9. Apple has filed suit here multiple times, produced documents here, and familiarized the Court with the technology at issue.[12]

## Conclusion

The record is clear that the Defendants failed to prove that the District of Massachusetts is "clearly more convenient" than this Court. Indeed, none of the factors weigh in favor of transfer, let alone a balance of factors clearly weighing in favor of transfer. This Court should retain jurisdiction.

Dated: January 22, 2010

Respectively submitted,

By:/s/ Charles W. Goehringer
**GERMER GERTZ, L.L.P.**
Lawrence Louis Germer     (TX Bar # 07824000)
Charles W. Goehringer, Jr. (TX Bar # 00793817)
550 Fannin, Suite 400
P.O. Box 4915
Beaumont, Texas 77701
Telephone: (409) 654-6700
Telecopier: (409) 835-2115
E-Mail:     llgermer@germer.com

---

[12] While not necessarily agreeing with the Defendants' reasoning, Personal Audio agrees that the public factors in this case are neutral as well.

15

81236824.1

cwgoehringer@germer.com

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
Ronald J. Schutz   (MN Bar No. 130849)
(Eastern District of Texas Member) (Lead Counsel)
Jake M. Holdreith   (MN Bar No. 211011)
(Eastern District of Texas Member)
Cyrus A. Morton (MN Bar No. 287325)
(Eastern District of Texas Member)
Kimberly Miller (MN Bar No. 032209X)
(Eastern District of Texas Member)
Patrick M. Arenz   (MN Bar No. 0386537)
(Eastern District of Texas Member)

800 LaSalle Avenue, Suite 2800
Minneapolis, Minnesota 55402
Telephone:  (612) 349-8500
Facsimile:  (612) 339-4181
E-mail:     RJSchutz@rkmc.com
            JMHoldreith@rkmc.com
            CAMorton@rkmc.com
            KGMiller@rkmc.com
            PMArenz@rkmc.com

**Attorneys for Plaintiff Personal Audio, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2010, a true and correct copy of this document was served via Electronic Case Filing (ECF) pursuant to Local Rule CV-5(a) on all counsel of record who has consented to electronic service by the Court's electronic filing system.

Dated: January 22, 2010         /s/ Charles W. Goehringer, Jr.
                                Charles W. Goehringer, Jr.