# KRAMER LEVIN NAFTALIS & FRANKEL LLP

JONATHAN S. CAPLAN
PARTNER
PHONE 212-715-9488
FAX 212-715-7718
JCAPLAN@KRAMERLEVIN.COM

May 4, 2010

The Honorable Ron Clark
U.S. District Court, Eastern District of Texas
300 Willow Street, Suite 221
Beaumont, TX 77701

Re:   *Personal Audio, LLC v. Apple, Inc. et al.*, Case No. 9:09-CV-00111-RC

Dear Judge Clark:

This letter responds to Personal Audio's April 29, 2010 letter to the Court alleging deficiencies with the source code production of Sirius XM Radio Inc. ("Sirius"). As explained in detail below, these allegations are simply not true. Sirius has produced all required source code in its possession, custody and control and has gone well beyond its obligations under the federal and local rules to identify and produce all pertinent source code for accused Sirius satellite receivers. In particular, Sirius contacted every third party involved with the accused products and requested that the third party cooperate with Sirius' discovery obligations.[1]

Sirius cannot produce third party documents that it does not possess or have permission to produce, as is the case with the source code Personal Audio complains about to the Court. What Personal Audio fails to make clear is that Sirius advised Personal Audio, in detail, of third party issues in Sirius' March 15, 2010 letter accompanying its P.R. 3-4 production, which Personal Audio did not provide to the Court. A copy of Sirius' March 15 letter is attached as Exhibit B. Sirius also identified the third parties at issue in Sirius' Initial Mandatory Disclosures, served on March 22, 2010 (attached as Exhibit C).

---

[1] Between February 23, 2010 and April 21, 2010, Sirius' counsel sent twenty-two letters to (and had additional written and oral communications with) all third party vendors (none of which are affiliates of Sirius) regarding discovery in this action. Representative letters are provided in Exhibit A. While this correspondence occurred with both Sirius and XM vendors, XM is not and should not be a party to this action for reasons explained at length in Sirius' opposition to Personal Audio's motion to add XM as a party. (Dkt. #116)

1177 AVENUE OF THE AMERICAS   NEW YORK NY 10036-2714   PHONE 212.715.9100   FAX 212.715.8000   WWW.KRAMERLEVIN.COM
ALSO AT 47 AVENUE HOCHE   75008 PARIS FRANCE

KL3 2776047.1

KRAMER LEVIN NAFTALIS & FRANKEL LLP

The Honorable Ron Clark
May 4, 2010
Page 2

Personal Audio's letter grossly distorts its knowledge of third party involvement with Sirius' accused products which was consistently raised since March 15. Their letter also launches personal attacks on Sirius and its counsel in an attempt to deflect blame for Personal Audio's failure to timely address the third party issues raised six weeks ago.[2]

**The March 15 Notice to Personal Audio Regarding Third Party Information**

Sirius' March 15 letter is notable in several respects. First, the letter was unequivocal that third parties were likely to possess documents and source code that may be of interest to Personal Audio <u>and</u> that Sirius would need to obtain third party permission in certain circumstances before being authorized to produce certain documents and source code:

> Information From Third Parties
>
> Sirius XM and XM note that <u>various third parties have had significant involvement in the design, development and manufacture of the Sirius XM and XM products accused of infringement in this action</u>. As such, a <u>substantial number of documents that may be responsive</u> for the purposes of Patent Rule 3-4(b) and the parties' continued rolling production under the schedule (e.g., documents concerning the design, development, manufacture of the accused products and their functions, including source code) <u>are not in Sirius XM's or XM's possession, custody or control, but may be in the possession, custody and/or control of third parties.</u> Also, for some potentially relevant documents and information in Sirius XM and XM's possession, custody and/or control, Sirius XM and XM <u>may be under a confidentiality or similar agreement with a third party</u> under which Sirius XM and XM may not disclose those documents without the prior consent of that third party.

Exh. B at 2 (emphasis added).

Second, the March 15 letter explained that Sirius undertook significant efforts to contact each third party to request permission to produce the third party's information or to request that the third party provide responsive information:

> Given this situation, in a good faith effort to reduce the burden on Personal Audio to obtain such potentially relevant information, <u>Sirius XM and XM have gone beyond their obligations under the rules and taken steps to contact all of the potentially relevant third parties that we are aware of at</u>

---

[2] Personal Audio's approach is strikingly similar to its attempt to overcome its failure to timely add XM as a party in accordance with the Scheduling Order (as explained in Sirius' opposition papers filed yesterday).

KRAMER LEVIN NAFTALIS & FRANKEL LLP

The Honorable Ron Clark
May 4, 2010
Page 3

> this time. In doing so, Sirius XM and XM have <u>attempted to obtain any necessary authorization to produce potentially relevant confidential third party documents</u> in Sirius XM and XM's possession, custody and/or control, as <u>well as to obtain potentially relevant documents in the possession, custody and/or control of the third parties.</u> We note that the lack of an agreed upon Protective Order in this action has slowed the process, as third parties were often unwilling to provide such authorization or documents without a final robust Protective Order in place. Still, Sirius XM and XM's communications with the third parties are ongoing, and <u>to the extent we are able to obtain documents, or receive the required authorization from third parties to produce documents, we will promptly provide those documents to Personal Audio.</u>

Exh. B at 2-3 (emphasis added).[3]

Third, the March 15 letter went further and also identified to Personal Audio, by name, each third party that was contacted for Sirius receivers, including express notice to Personal Audio that in order to obtain source code from certain third parties, a subpoena would be required:

> <u>For Sirius XM</u>:
> • The following third parties have been contacted: Humax Co., Ltd., Winstron NeWeb Corporation, Zing Systems, Inc., and Ziba Design, Inc.
> • Humax Co., Ltd. has provided us with documents in its possession pursuant to our request, which we have enclosed on the hard drive with Sirius XM documents. The Humax Co., Ltd. documents bear production numbers SIRIUS-HUMAX00000001 – SIRIUS-HUMAX00004066. <u>However, Humax Co., Ltd. may have additional documents and source code for which it will likely require a subpoena to produce.</u>
> • Zing Systems, Inc., and Ziba Design, Inc. are still considering our request that they produce potentially relevant documents in their possession, custody and/or control.
> • Winstron NeWeb Corporation has advised that it does not possess any unique relevant information.

Exh. B at 3 (emphasis added).[4]

---

[3] See Exh. A for representative letters sent to third parties regarding discovery in this action.
[4] Sirius' Initial Mandatory Disclosures also provided this information. Exh. C, Exhibit A at 3-4. To the extent Personal Audio suggests that this disclosure of third party information was inadequate, that argument is simply unsupported in the record. Further, Personal Audio's reliance on *Sensormatic* is misplaced. The issue here, as noted in *Sensormatic*, is whether Sirius has the "right of control" over third party documents. As represented to Personal Audio on multiple occasions and to this Court now, Sirius has produced all of

KRAMER LEVIN NAFTALIS & FRANKEL LLP

The Honorable Ron Clark
May 4, 2010
Page 4

Noticeably absent from Personal Audio's letter is any reference to even the slightest follow-up interest in the substance of Sirius' March 15 letter - no inquiry for further information on any of the third parties identified by Sirius or the need for a subpoena to obtain source code. Personal Audio also suggests that Sirius generally failed to meet its obligations to identify third parties. (Ltr. at 1). Here again, Personal Audio leaves out contrary facts – namely, Sirius' March 22, 2010 Initial Mandatory Disclosures containing a 28 page Exhibit A listing "persons with knowledge of relevant facts." Exh. C. Pages 3 and 4 of Exhibit A identify the third parties involved with Sirius receivers, along with contact information. Exh. C at 9.

Personal Audio has failed to act on the information about third parties described in the March 15 letter or the March 22 Mandatory Disclosures. Now, more than six weeks after Sirius first raised these third party issues, Personal Audio seeks relief from this Court by blaming Sirius for a situation that is clearly of Personal Audio's own making.

### Multiple Post-March 15 Communications Also Addressed Third Party Issues

In addition to raising third party involvement in its March 15 letter and Mandatory Disclosures, Sirius again raised the issue at a meet and confer on April 13 and in letters on April 15 and 16. Exhs. D and E. During the April 13 meet and confer, Sirius confirmed what was explained in the March 15 letter, and further advised Personal Audio that Sirius had exhausted its efforts to obtain third party permission or cooperation and was now turning that effort over to Personal Audio. Personal Audio confirmed this fact in its letter of April 14 summarizing the substance of the meet and confer. Exh. F.[5] Any claim of surprise by Personal Audio from the April 15 letter simply lacks credibility as every third party company identified for Sirius' products in the April 15 letter (save one)[6] was also identified in the March 15 letter and Initial Mandatory Disclosures.

Accordingly, Personal Audio's complaint that *only* now does it realize that third party discovery is necessary rings particularly hollow. Had Personal Audio paid any attention to Sirius' March 15 letter or Mandatory Disclosures, Personal Audio would have well understood the involvement of third parties with the accused products and the need to issue subpoenas to one of more of these third parties. As Sirius' disclosures and correspondence demonstrate, Sirius produced everything that it could produce.

---

the documents and source code it was required to produce in its possession, custody or control. To the extent source code has not been produced, it is because Sirius does not have possession, custody or control of it or lacks control because a third party has refused to grant permission to produce it.

[5] As a result of the meet and confer, Personal Audio requested a 30 day extension to supplement its infringement contentions (which Sirius did not oppose) with no mention of third party issues and the Court granted this request. (Dkt. #102).

[6] One third party, Portal Player, was not initially identified. Sirius promptly contacted Portal Player and requested permission to produce their source code, but Portal Player has so far declined the request. Exh. G.

KRAMER LEVIN NAFTALIS & FRANKEL LLP

The Honorable Ron Clark
May 4, 2010
Page 5

Personal Audio attempts to buttress its strawman argument by suggesting that the entire case schedule is threatened if it must pursue discovery from third parties, some of whom are located outside of the U.S. The problem with Personal Audio's argument is that it has identified no effort to even contact any of the third parties, and has not represented that Hague Service would even be required to obtain the requested discovery. Perhaps the third parties would cooperate once they spoke with Personal Audio's counsel and negotiated resolution of the discovery requests, as is often the case with third party discovery? Rather than undertake even that level of effort, however, Personal Audio, again with no basis, urges that "letters rogatory" will be required, to create confusion and cover-up its failure to reach out to any of the third parties for the last six weeks.

Finally, Personal Audio's letter request violates the local rules and can be rejected on those grounds alone. Following the meet and confer on April 13, there were no open issues regarding third party source code. Indeed, Personal Audio concedes that Sirius agreed at the meet and confer that to the extent Personal Audio obtained additional source code from third parties, Sirius would not oppose reasonable requests to update their infringement contentions if needed. Exh. F. Nor has Personal Audio ever asked for information it now raises with the Court (e.g., proof that the source code is not within Sirius' "possession, custody or control" or discovery on "the exact relationships with these 20 parties"). Ltr. at 2. Nonetheless, Personal Audio contacted the Court for guidance on a non-dispute before any meet and confer – suggesting that the true purpose of the letter was to improperly and prematurely color the Court's view of Sirius and its counsel.

Sirius is available for a telephone conference at the Court's convenience. Sirius respectfully submits, however, that no conference is needed as there is no issue. Personal Audio can pursue any third party discovery it deems appropriate given that the close of discovery is months away and must be completed by November 22, 2010. For the same reasons as well, Personal Audio's requested relief should be denied.

Sincerely,

Jonathan S. Caplan

JSC:lbp