IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| PERSONAL AUDIO, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br>SIRIUS XM RADIO, INC.,<br>COBY ELECTRONICS, CORP.,<br>ARCHOS, INC.,<br><br>    Defendants. | CASE NO.  9:09-CV-00111-RC<br><br>JURY TRIAL DEMANDED |

**DEFENDANT APPLE INC.'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF
RELATING TO DR. KEVIN ALMEROTH**

Pursuant to this Court's Order Granting Joint Motion to Amend Scheduling Order [Doc. No. 179], Apple provides this supplemental brief after the deposition of Personal Audio's declarant, Dr. Kevin Almeroth.

On July 28, 2010 Apple took the deposition of Dr. Almeroth concerning his declarations submitted in support of Personal Audio's claim construction and Summary Judgment briefing. Apple also attempted to cross-examine Dr. Almeroth with his July 16, 2010 declaration, which was submitted by Personal Audio to the Patent Office, and is now a part of the intrinsic record of the '178 Patent.[1]  Personal Audio refused to allow Apple to question Dr. Almeroth on his Patent Office declaration even though it directly contradicts his testimony in this case.

---

[1] *Alza Corp. v. Wyeth*, No. 9:06-CV-156, 2006 WL 3500015, *2 (E.D. Tex. Nov. 21, 2006) ("statements made during the reexamination proceedings become part of the prosecution history . . . .")  *See also St. Clair Intellectual Property Consultants, Inc. v. Matsushita Electronic Indus. Co., Ltd.*, 691 F.Supp.2d 538, 550 (D. Del. 2010) ("Statements by patentees and Examiners are part of a patent's prosecution history, which is intrinsic evidence a court should consider in construing patent claims . . . . This is as true of statements made during a reexamination as it is of statements made during the initial prosecution.") (citations omitted)

1

For example, at his deposition, Dr. Almeroth testified that one of ordinary skill in the art would have understood that the magnetic disk drive of a conventional personal computer in 1996 would be a "means for storing a plurality of program segments":

> Q. Okay. And what kind of capacity did a conventional laptop or desktop PC have in 1996?
>
> A. It ranged over a fairly wide range.
>
> Q. And what's that range?
>
> A. Roughly speaking, it was generally on the order of megabytes. On the low end it would be hard to say with any specificity, but tens of megabytes on the low end. Generally the upper end might be at hundreds of megabytes.
>
> Q. Okay. And is that appropriate for storing a plurality of songs?
>
> A. Yes.
>
> Q. And a person of ordinary skill in the art would have understood that in 1996?
>
> A. Yes.[2, 3]

In his Patent Office declaration Dr. Almeroth argued exactly the opposite, claiming that using a mid-90s PC to store songs would not have been obvious:

> 23. … <u>Given the hardware limitations of the mid-1990s, as described above, it would not have made sense to store a library of audio songs locally. Typical storage requirements for a reasonable sized library would be far greater than what was commonly available on a personal computer. Such a fact would teach away from storing audio files locally</u>, and instead, it would have made more sense to store the files only on the designated remote server, as is explicitly taught in the Windows 95 Resource Kit.[4]

---

[2] References herein to Exhibits A and B are attached to the Declaration of Benjamin C. Elacqua, filed concurrently herewith.

[3] Ex. A (July 28, 2010 Deposition of Dr. Kevin Almeroth) p. 69, l. 9-23.

[4] Ex. B (July 16, 2010 Declaration of Dr. Kevin Almeroth, Response in Inter Partes Reexamination) ¶ 23 (emphasis added).

Personal Audio indicated it would terminate the deposition if Apple asked Dr. Almeroth even one question on this declaration.[5]

Dr. Almeroth also made a number of other arguments in his Patent Office declaration that directly contradict Personal Audio's arguments to this Court and the intrinsic record, on which he should and would have been cross-examined. These contradictions include telling this Court that the claims do not require that the sequencing file itself be used to control playback, and instead that "information or data in the sequencing file is used to control playback,"[6] while telling the Patent Office that prior art playlist files were "not themselves capable of performing the operations of controlling" playback because they had to be "processed to create a … playlist."[7] Similarly, Dr. Almeroth told the Patent Office that one of ordinary skill in the art would not consider accessing files over a network using Windows 95 to be "download[ing] networked files to persistent storage,"[8] even though the preferred embodiment is Windows 95 and Personal Audio's proposed construction of "downloading" is simply "transferring or transmitting data." Whatever explanation Personal Audio later offers for these contradictions, Apple was unfairly denied the opportunity to explore them, and the Court was denied a complete record because Personal Audio improperly forbid questions about them.

Despite his prior inconsistent statements, Dr. Almeroth's testimony about the means-plus-function limitations on which he opined supports Apple's Motion for Summary Judgment that the claims are indefinite. First, Dr. Almeroth's testimony made absolutely clear the alleged invention is purely software:

---

[5] Ex. A (July 28, 2010 Deposition of Dr. Kevin Almeroth) p. 148, l. 8 – 149, l. 9.

[6] Personal Audio, LLC's Reply Claim Construction Brief at 3-4.

[7] Ex. B (July 16, 2010 Declaration of Dr. Kevin Almeroth, Response in Inter Partes Reexamination) ¶ 13-15.

[8] *Id.*, ¶ 21-22.

> Q. Okay. And there's nothing about those things that are required by the claims that would require any additional hardware as long as you had the right software, right?
>
> A. Well, assuming you had the right hardware --
>
> Q. I want to be clear. The right hardware we're talking about is a conventional laptop or desktop PC with a sound card and a speaker.
>
> A. Right. So assuming that you did have all of the right hardware and that you did have all of the right software by following the instructions here, that could perform the steps of Claim 1.[9]

Since a conventional PC is the only hardware required to practice the claims, the alleged "algorithms" identified by Personal Audio are the sole distinction from the prior art. Those "algorithms" are nothing more than a small number of boxes in Figure 3 and a small number of words that merely reiterate the functions indicated by the boxes.

An important example is Box 261, labeled "Command ?", which is the sole disclosure for performing the important function determining whether the user has spoken or typed a command. Dr. Almeroth testified that to one of ordinary skill, the specification merely describes the same function:

> Q. What do you understand the patent to be referring to when it says: "As indicated at 261, the receipt of a command, which may interrupt the playback of the current selection, and the character of the command is evaluated"? I'm asking specifically about the words in that sentence, the receipt of the command is evaluated, what do you understand those to mean?
>
> A. I think a person of ordinary skill in the art, as well as myself, would understand that to mean whether or not a properly formatted command had been received. If in implementing the invention that requires a check of whether or not the command is valid up until that part, box 261 may not know what the possible set of commands are. <u>You may just need to evaluate whether or not, you know, it's received correctly, whether or not there is actually a command that's been issued. That would happen at box 261</u>. And then that could be implemented by any of a variety of ways as I think a person of ordinary skill in the art would understand.[10]

---

[9] Ex. A (July 28, 2010 Deposition of Dr. Kevin Almeroth ) p. 56, l. 11-25 (objection omitted).

[10] *Id.*, p. 92, l. 14 – 93, l. 10 (objection omitted) (emphasis added).

Because the law requires the structure for performing this function to be described in the specification precisely in order to limit the "variety of ways [Dr. Almeroth thinks] a person of ordinary skill in the art would understand," the claims are indefinite.

Dated: August 4, 2010

Respectfully submitted,

FISH & RICHARDSON P.C.

By: /s/ Garland Stephens

Garland T. Stephens (24053910)
David J Healey (09327980)
John R. Lane (24057958)
Benjamin C. Elacqua (24055443)
Fish & Richardson PC
1221 McKinney Street, Ste 2800
Houston, TX 77010
Tel: 713-654-5300
Fax: 713-652-0109
healey@fr.com
stephens@fr.com
jlane@fr.com
elacqua@fr.com

***Attorneys for Defendant Apple Inc.***

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3), on this 4th day of August, 2010.

*/s/ Jason Bonilla*
Jason Bonilla
