**\*\*NOT FOR PRINTED PUBLICATION\*\***

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| PERSONAL AUDIO, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION No. 9:09CV111 |
| v. | § | |
| | § | |
| APPLE, INC.; SIRIUS XM RADIO, INC.; | § | JUDGE RON CLARK |
| COBY ELECTRONICS CORP.; and | § | |
| ARCHOS, INC., | § | |
| | § | |
| *Defendants*. | § | |

**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT INFRINGEMENT CONTENTIONS AND DENYING DEFENDANT'S MOTION TO STRIKE**

Plaintiff Personal Audio, LLC filed suit against Defendants Apple, Inc. *et al*, alleging infringement of U.S. Patent Nos. 6,199,076 and 7,509,178.[1]  Doc. #1.  The patents share a common specification, and are directed toward an audio program player that will play a sequence of audio program segments or files, and accept commands from the user to skip forward or backward in the sequence.

On February 1, 2010, Personal Audio served its initial infringement contentions on Apple, asserting twenty-two different claims of the patents-in-suit and accusing the following Apple devices of infringement: (1) three generations of iPhone devices; (2) six generations of iPod Classic devices; (3) two generations of iPod Mini devices; (4) five generations of iPod

---

[1] Defendants Sirius XM Radio, Inc., Coby Electronics Corp., and Archos, Inc. have since been dismissed from the case.  Docs. #126, 133, 177.

Nano devices; (5) three generations of iPod Shuffle devices; and (6) three generations of iPod Touch devices. Docs. #66, 167 at Ex. B.  Personal Audio served its supplemental infringement contentions on April 15, 2010, and now seeks leave to further supplement its contentions.  Apple opposes the motion, and moves to strike the iPhone and iPod Touch product lines from the case entirely.

      All four factors used to analyze whether amendment of infringement contentions is appropriate weigh against permitting Personal Audio leave to amend.  Without the proposed amendments, Personal Audio will be limited to the infringement contentions it has properly and timely disclosed, and expert testimony as to those contentions, for the iPhone and iPod Touch.  The court therefore denies both Personal Audio's motion to amend and Apple's motion to strike.

## I. BACKGROUND

      The following timeline is instructive:

| | |
|---|---|
| February 1, 2010 | Personal Audio served its disclosure of asserted claims and infringement contentions pursuant to P.R. 3-1 and P.R. 3-2. Doc. #66. |
| February 10, 2010 | Personal Audio served Apple with interrogatories seeking information regarding Apple's non-infringement position and how Apple's accused products work. Doc. #95, Ex. A. |
| March 2, 2010 | Personal Audio requested that Apple "identify how many versions and how much source code [it] intend[s] to provide for inspection, so we can make the appropriate arrangements." Doc. #152, Ex. C at 2. |
| March 15, 2010 | Apple served its disclosure of invalidity contentions pursuant to P.R. 3-3 and P.R. 3-4.  Doc. #80.  This date was also the deadline for Apple to make source code for the accused products available for inspection by Personal Audio pursuant to Patent Rule 3-1(g). Doc. #78. |

|  |  |
|---|---|
|  | Also on this date, Apple also informed Personal Audio that it believed Personal Audio's initial infringement contentions were insufficient because Personal Audio did not provide separate claim charts for each accused instrumentality. Doc. #167, Ex. A. |
| March 16, 2010 | Personal Audio again requested that Apple identify how many versions and how much source code would be provided for inspection. Doc. #152, Ex. D at 1. |
| March 22-23, 2010 | Personal Audio reviewed Apple's source code in Houston, Texas. |
| April 5, 2010 | Personal Audio filed a motion to compel Apple to fully respond to its February 10 interrogatories. Doc. #95. |
| April 7, 2010 | Personal Audio sent a letter to Apple stating that although it appeared that Apple had produced "the majority of the relevant source code," Personal Audio believed the source code production was incomplete. Doc. #152, Ex. F at 1. |
| April 8, 2010 | Apple sent an email to Personal Audio stating that "we have double-checked and believe that the code produced on March 15, 2010 includes all of Apple's source code for the functionalities relevant to Personal Audio's Rule 3-1(g) obligations." Doc. #152 Ex. G. |
| April 15, 2010 | Personal Audio served supplemental infringement contentions. Doc. #104.  In its infringement contentions regarding the iPhone product line, Personal Audio stated that "[t]he production of source code provided by Apple for the iPhone was incomplete. Upon information and belief, the iPhone software uses a similar database file as the iPod Classic . . . Should more source code become available, Personal Audio will further supplement these contentions with additional support confirming infringement." Doc. #171, Ex. T at 4.  The contentions then gave an example of source code from the iPod Classic.  *Id.* |
|  | Also on this date, Personal Audio sent a followup letter to Apple, indicating that it had found Apple's April 8, 2010 response unhelpful and requesting that Apple point out where the three categories of functions identified in the April 7, 2010 letter existed in the code that had been produced. Doc. #152, Ex. H at 1. |

| | |
|---|---|
| April 23, 2010 | Apple filed its response to Personal Audio's motion to compel, in which it stated that "Plaintiff's reliance on the source code for the iPod Classic for its contentions against the iPhone, iPod Touch and iPod Shuffle is wrong . . . Apple will seek disposition of claims against at least the iPhone, iPod Touch, and iPod Shuffle at an appropriate stage of the litigation based on Plaintiff's contentions tying them to the iPod Classic." Doc. #110 at 3. |
| May 6, 2010 | Apple sent a letter to Personal Audio identifying where in the produced source code the three categories of functions identified in Personal Audio's April 7, 2010 letter could be found. Doc. #152, Ex. J. |
| May 17, 2010 | Personal Audio conducted a second review of Apple's source code in Houston, Texas. |
| May 25, 2010 | Personal Audio sent a letter to Apple stating that it still believed some source code to be missing. Doc. #152, Ex. L.  With the exception of one file, none of the source code supposedly missing had anything to do with the iPhone or iPod Touch. |
| June 1, 2010 | The court granted in part the motion to compel, and ordered Apple to respond to the interrogatories concerning Apple's non-infringement position and how the accused products work. Doc. #139. |
| June 4, 2010 | Personal Audio inquired whether Apple would oppose a motion to supplement its infringement contentions. Doc. #152, Ex. M. |
| June 11, 2010 | Personal Audio sent Apple a copy of its proposed supplemental infringement contentions.  On June 14, Apple informed Personal Audio that it would oppose Personal Audio's motion for leave. |
| June 15, 2010 | Personal Audio filed the instant motion for leave to supplement its infringement contentions. Doc. #152. |

## II. APPLICABLE LAW

Local Patent Rule 3-1 requires any party claiming patent infringement to serve on all other parties a "Disclosure of Asserted Claims and Infringement Contentions," and delineates all of the information that must be contained in the Infringement Contentions, including a list of the

products accused of infringing each asserted claim and "[a] chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." *See* P.R. 3-1(a)-(c). The preparation and supplementation of infringement contentions is a matter of pleading, and is intended to put Defendant on notice of the asserted theories of infringement in order to streamline discovery. *Realtime Data, LLC v. Packeteer, Inc.*, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009).

A party may comply with Rule 3-1 "by setting forth particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patent rules themselves." *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755 (E.D. Tex. 2004). However, infringement contentions are not intended to require a party to set forth a prima facie case of infringement and evidence in support thereof. *Realtime Data*, 2009 WL 2590101, at *5; *see also Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 713 (E.D. Tex. 2008) (infringement contentions are not intended to be a forum for adjudicating merits of plaintiff's contentions).

In software cases, Patent Rule 3-1(g) also applies. Under this rule,

> If a party claiming patent infringement asserts that a claim element is a software limitation, the party needs only to identify the elements as a software limitation in its initial compliance with P.R. 3-1, but does not need to identify where such limitation is met in the Accused Instrumentality. At the latest, the party opposing a claim of patent infringement shall produce source code within 30 days of the initial P.R. 3-1 disclosures. After receipt of the source code for the Accused Instrumentality, the party is permitted 30 days to supplement P.R. 3-1 disclosure to identify, with specificity, the source code of the Accused Instrumentality that allegedly satisfies the software claim elements. The party claiming patent infringement shall identify, on an element-by-element basis for each asserted claim, what source code of each Accused Instrumentality allegedly satisfies the software limitations of the asserted claim elements . . . .

Doc. # 62, at 6.

Patent Rule 3-6 provides that amendment or supplementation of infringement contentions may be permitted only upon a showing of good cause. P.R. 3-6(b). District courts have discretion in ruling on motions to amend infringement contentions, and the court should consider four factors in making its ruling:

(1) the explanation for the failure to meet the deadline;

(2) the importance of the amendments;

(3) the potential prejudice in allowing the amendments; and

(4) the availability of a continuance to cure such prejudice.

*Realtime Data*, 2009 WL 2590101, at *2.

### III. DISCUSSION

**A. Personal Audio's motion for leave to supplement infringement contentions**

1. *Explanation for failure to meet the deadline*

Personal Audio spends a great deal of its briefing complaining about any number of reasons it was supposedly unable to meet its deadline.  However, it appears that many, if not the majority, of the problems Personal Audio points to are of its own making.

Personal Audio served its initial infringement contentions on February 1, 2010.  The first "roadblock" Personal Audio cites to is Apple's objection and failure to answer its February 10, 2010 interrogatories which, if answered, would have been received by March 15, 2010.  Personal Audio omits the fact that it did not move to compel interrogatory responses from Apple until April 5, 2010, which was after the source code review was conducted on March 22-23.  If Personal Audio felt the interrogatories requested documents that were crucial to source code review, it presumably would have made its motion on an expedited basis *prior* to looking at the

source code.  Further, even though the court ultimately disagreed, Apple is within its rights to object to interrogatories it believes are improper.  If Personal Audio really wanted the documents before source code review, it could have sent its interrogatories sooner.

Personal Audio next bemoans the fact that Apple's P.R. 3-4(a) document production was not due until March 15, 2010.  Personal Audio fails to mention that it previously agreed to this deadline, Doc. # 44, Ex. A at 1, even though it was fully aware of its P.R. 3-1(g) obligations regarding source code.  Personal Audio obtained a two week extension from Apple, in which time it could review Apple's P.R. 3-4(a) production, which it apparently expected to contain specification, schematics, and/or flow charts that would show the operation of Apple's source code.[2]  For this rather remarkable proposition, Personal Audio cites to P.R. 3-4(a).

P.R. 3-4(a) actually states that Apple must produce or make available for inspection and copying "[s]ource code, specifications, flow charts, artwork, formulas, *or* other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its P.R. 3-1(c) chart[.]" (emphasis added).  Apple need not produce all of the above cited items, merely one or more sufficient to show the operation of accused products' elements.  As Personal Audio itself states, Apple produced hardware specifications, the products' user manuals, and source code.[3]  Source code is "high-level software

---

[2] The court notes that Apple has never produced such documents, because Apple states that they do not exist, and Personal Audio has nevertheless managed to produce the amended infringement contentions it now seeks to use for supplementation.

[3] Personal Audio complains elsewhere that Apple produced 59,000 source code files.  It is difficult to understand how Personal Audio could have expected anything less, when the products accused include four different versions of the iPhone, six generations of the iPod classic (including all special editions), two generations of the iPod Mini, five generations of the iPod Nano, three generations of the iPod Shuffle, and three generations of the iPod Touch.  If Personal

language that properly trained humans can understand." *Texas Instruments, Inc. v. Hyundai Elec. Indus. Co., Ltd.*, 190 F.R.D. 413, 414 (E.D. Tex. 1999). Personal Audio needed to send a "properly trained human" to review the source code, and apparently did so, amending its February 1 infringement contentions on April 15, and attempting to do so again on June 11. *See* Doc. # 152, Ex. F (April 7, 2010 letter from Personal Audio's counsel to Apple's counsel stating that Apple "certainly appears to have produced the majority of the relevant source code," and that, while there may be a few omissions, "[e]ven where the source code is incomplete, we have an adequate basis to assert infringement as required in initial infringement contentions . . . .").

Personal Audio spends some time in its reply explaining that it reasonably thought, between April 7 and May 6, that certain source code had been omitted. Apple identified on May 6 the portions of the previously-produced source code which addressed Personal Audio's concerns, and Personal Audio re-inspected the source code in Houston later that month. Personal Audio then asked Apple if it would oppose supplementation of the infringement contentions on June 11. However, as noted above, Personal Audio's counsel stated on April 7 that even assuming the source code was incomplete, Personal Audio had "an adequate basis to assert infringement as required in initial infringement contentions." There was no reason, therefore, why any supposed failure of Apple to produce source code would have required Personal Audio's subsequent re-examination and supplementation, especially if Personal Audio had reviewed the source code in the first place using a "properly trained human." Personal Audio itself contends that the April 15 and proposed June 11 contentions were "very similar."

---

Audio wanted to review fewer source code files, it should not have accused so many products.

Personal Audio spent only two days reviewing Apple's source code in March 2010. This was its own choice. Apple also offered Personal Audio a Rule 30(b)(6) deposition on the source code, which Personal Audio declined.[4]  Personal Audio accused a large number of products, which resulted in 59,000 source code files. Apple produced all source code in a timely manner, and it was all available to Personal Audio before the April 15 deadline for supplementation under P.R. 3-1(g).[5]  While Apple is not completely blameless in the sequence of events[6], Personal Audio's explanation for the failure to timely amend its infringement contentions is less than convincing. This factor weighs somewhat against granting leave.

---

[4] Personal Audio states that Apple raised the idea of a deposition for the first time on March 29, which was only two weeks before Personal Audio's supplemental contentions were due on April 15. This was, according to Personal Audio, insufficient to schedule and take such a deposition, which would have undoubtedly lasted for days. The court notes, however, that Personal Audio never actually attempted to set such a deposition up, and that, again, the sheer volume of source code was a direct result of the fact that Personal Audio accused six different product lines, over twenty different products, and more than fifty different versions of software. Personal Audio could also have asked for such a deposition earlier on in the month of March (or even February) if it was concerned about a time crunch. And while Personal Audio may have been concerned about getting only one shot at a Rule 30(b)(6) deposition on source code, there is no indication in the record that concern was even raised by Apple. Personal Audio's roadblocks are, again, largely of its own making.

[5] The court previously stated, in its Order Granting in Part Personal Audio's Motion to Compel, that while it was "certainly fair to permit Personal Audio the opportunity to amend its contentions if Apple failed to produce source code in a timely manner," Apple was entitled to bring an appropriate motion if it believed that any future amendment occurred based on source code Personal Audio had previously been permitted access to. Doc. # 139 at 4, n.3.

[6] Apple could have, for example, cleared up the problem of supposedly missing source code raised in Personal Audio's April 7 letter sooner than May 6. However, it is Personal Audio's job to review the source code, not Apple's. As Personal Audio concedes, no source code related to the iPod Touch and iPhone was actually missing at all.

2.   *Importance of the amendments*

Personal Audio states that, with respect to the iPod Classic, iPod Mini, iPod Nano, and iPod Shuffle, the April 15 and proposed June 11 contentions were "very similar," and that its infringement theory "has not changed." While it is undisputed that Personal Audio has added new source code citations to its contentions for these product lines, Personal Audio characterizes them as the addition of infringement evidence, rather than a restructuring of its theory. As to these devices, therefore, the proposed amendments are not important.

With respect to the iPod Touch and iPhone, Personal Audio makes the same argument. Apple disagrees, arguing that Personal Audio is instead attempting to "drop all of the code it previously identified in its iPhone and iPod [T]ouch infringement contentions, and replace it with iPhone source code that it could have identified at the outset." Doc. # 167, at 4. It is undisputed that Personal Audio relied almost entirely on source code citations to the iPod Classic (first and sixth generations) for every accused product, including the iPhone and iPod Touch.

At first glance, Personal Audio's amendment with respect to the iPod Touch and iPhone appears relatively important, because Apple argues that if amendment is not permitted with respect to these two products, they will have to be dropped entirely. This would indicate the amendments are important as to the iPod Touch and iPhone, if this is true. However, as discussed below, Personal Audio suggests that it could continue to pursue claims against the iPhone and iPod Touch based solely on infringement contentions which cited to the iPod Classic source code. Evidently, Personal Audio believes it could demonstrate that the iPhone and iPod Touch software uses files similar to the iPod Classic. If this is true, under Personal Audio's own

theory, the amendment cannot be that important at all. This factor also weighs somewhat against permitting leave to amend.

      3.     *Potential prejudice in allowing amendment*

Apple argues that it is prejudiced because, if the amendment is allowed, it will affect a number of pre-trial deadlines, such as claim construction, as well as damages and expert discovery. Although Apple states it might have altered its claim construction position in light of the amendment, it provides no specific way in which it might have done so, or any additional terms it would have requested the court construe.

Apple also argues that it is "inherently prejudicial" to permit Personal Audio to disregard its obligations under the Patent Rules. This is not a specific showing of prejudice, and Apple would have been "forced" to conduct employee interviews and gather source code regardless of whether Personal Audio did its job or not.

At the same time, the *Markman* hearing has been held, trial is set for little more than four months away in March 2011, and discovery will close soon. While the landscape was somewhat different when Personal Audio originally made this motion, it would be difficult, if not impossible, to allow amendment at this point without moving the trial.

While this factor does weigh against permitting amendment, it does so only slightly.

      4.     *Availability of continuance to cure any prejudice*

The court's calender is such that a continuance of the trial date is not possible. This factor weighs against permitting amendment.

     5.   *Conclusion*

Weighing the above factors, the court concludes that granting Personal Audio's motion to amend would be inappropriate at this time. Personal Audio's April 15, 2010 Infringement Contentions will stand, and the court will strike its proposed June 11, 2010 amended contentions.

**B.**   **Apple's motion to strike**

In addition to requesting that the court deny Personal Audio's motion to amend, Apple requests in its motion that the court strike Personal Audio's contentions for the iPhone and iPod Touch lines entirely, because of the failure to cite any iPhone or iPod Touch source code in its April 15, 2010 Infringement Contentions. Instead, the April 15 Contentions primarily cite to the iPod Classic source code.

"[U]sing an exemplary product to outline infringement contentions can be sufficient." *Linex Techs.*, 628 F. Supp. at 711. Apple argues that Personal Audio conceded in a June 22, 2010 letter that the iPod Classic is not exemplary of the iPod Touch and iPhone. Doc. # 167, Ex. G. (stating that Personal Audio identified ten different product groups "in preparation for today's meet and confer discussion regarding identification of product groupings and representative products," three of which were limited solely to the iPhone/iPod Touch with different versions of the operating system).

The purpose of Infringement Contentions is for a party claiming infringement to provide "particular theories of infringement with sufficient specificity to provide defendants with notice of infringement beyond that which is provided by the mere language of the patent rules themselves." *STMicroselectronics,* 308 F. Supp. 2d at 755 (internal quotation omitted). Personal Audio's counsel stated at the Case Management Conference that while there were

substantial similarities across the accused devices, "there are some differences within each of the individual devices and the particular software operating systems that they use on the device." Tr. at 9:25-10:2 [Doc. # 64]. As Personal Audio apparently concluded that amendment of its contentions was required after reviewing the iPod Touch and iPhone source code, this belies its assertion in motion papers that the source code identified in its June 11 contentions is not materially different from that identified in its April 15 contentions.

While Personal Audio is not required to prove its theory of infringement in its infringement contentions, it is supposed to provide Apple with sufficient information as to what its contentions are. The court will deny Apple's motion to strike at this time, but emphasizes that Personal Audio will be limited to the iPod Classic source code cited to in its April 15 contentions for the iPhone and iPod Touch. Any expert testimony presented by Personal Audio will also be limited to explanation of the April 15 contentions and source code.

IT IS THEREFORE ORDERED that Plaintiff Personal Audio, LLC's Motion for Leave to Supplement Infringement Contentions [ Doc. # 152] is DENIED, and Defendant Apple, Inc.'s Motion to Strike [Doc. # 167] is DENIED.

So **ORDERED** and **SIGNED** this 2   day of **December, 2010.**

_____
Ron Clark, United States District Judge