**\*\*NOT FOR PRINTED PUBLICATION\*\***

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| PERSONAL AUDIO, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION No. 9:09CV111 |
| v. | § | |
| | § | |
| APPLE, INC.; SIRIUS XM RADIO, INC.; | § | JUDGE RON CLARK |
| COBY ELECTRONICS CORP.; and | § | |
| ARCHOS, INC., | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

## ORDER DENYING MOTION TO COMPEL DEPOSITION ON WILLFUL INFRINGEMENT AND INJUNCTIVE RELIEF

Before the court is Plaintiff Personal Audio, LLC's motion to compel a Rule 30(b)(6) deposition from Defendant Apple, Inc. on the topics of willful infringement and injunctive relief [Doc. #221]. With respect to willful infringement, the only non-privileged, non-cumulative information that Personal Audio might discover at the requested deposition is unlikely to be helpful to Personal Audio's willfulness claim. With respect to injunctive relief, a deposition is not necessary at this stage of the litigation but may be permitted if necessary post-trial. The court finds that the burden and expense of the requested deposition outweighs its likely benefit considering the needs of the case at this stage, the parties' resources, and the importance of the discovery in resolving the issues at stake. Accordingly, Personal Audio's motion to compel is denied.

## I. BACKGROUND

Plaintiff Personal Audio, LLC ("Personal Audio") filed suit against Defendant Apple, Inc. ("Apple"), asserting infringement of United States Patent Nos. 6,199,076 ("the '076 patent") and 7,509,178 ("the '178 patent"). The patents-in-suit share a common specification and are directed toward an audio program player that will play a sequence of audio program segments or files and accept commands from the user to skip forward or backward in the sequence. Personal Audio asserts that Apple's alleged infringement of both patents-in-suit is willful [*see* Doc. #106, Pl.'s 2d Am. Compl. ¶¶ 32-36, 42-44] and seeks a permanent injunction [*see* Doc. #106 at 14]. In the instant motion, Personal Audio seeks to compel a deposition of Apple on the topics of willful infringement and injunctive relief.

## II. APPLICABLE LAW

Unless otherwise limited by court order, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* However, the court must limit the extent of discovery otherwise allowed if it determines that "the discovery sought is unreasonably cumulative or duplicative," or that "the burden and expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

# III. DISCUSSION

## A. Willful Infringement

To prove willful infringement, a patentee must show that (1) the infringer was aware of the asserted patent, but nonetheless "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent"; and (2) that the infringer knew or should have known of the objectively high risk. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 860 (Fed. Cir. 2010) (citing *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007)). Willfulness must be shown by clear and convincing evidence. *Seagate*, 497 F.3d at 1371.

### 1. *Discovery sought.*

At issue is when Apple first became aware of the patents-in-suit. In response to interrogatories, Apple has already represented to Personal Audio that it "first became aware of the existence of each of the Asserted Patents after Personal Audio filed its Complaint." [*See* Doc. #242-8, Apple Interrog. Resps. at 12.] Personal Audio's original complaint in this suit was filed on June 25, 2009. [*See* Doc. #1, Pl.'s Compl.] Personal Audio seeks further discovery regarding whether Apple actually knew of the existence of the patents-in-suit at an earlier date.

In defense of a different litigation, Apple relied on U.S. Patent No. 5,721,827 ("the '827 patent") as prior art. *See* Mot. for Summ. J. of Invalidity, *Individual Network, LLC v. Apple, Inc.*, No. 2:07-cv-00158-LED (E.D. Tex. Apr. 30, 2009), Doc. #109 (citing '827 patent). The named inventors on the '827 patent, James Logan, Daniel F. Goessling, and Charles Call, are the same inventors named on the patents asserted in this case, and the '827 patent's specification is similar to the shared specification of the patents-in-suit and includes many of the same figures. *Compare* U.S. Patent No. 5,721,827 (filed Oct. 2, 1996), *with* U.S. Patent No. 6,199,076 (filed

Oct. 2, 1996), *and* U.S. Patent No. 7,509,178 (filed Feb. 13, 2001). And, in connection with the *Individual Network* litigation, Apple's outside counsel had some contact with Mr. Logan in October 2007 regarding the '827 patent. [*See* Doc. #221-3, Howrey Emails.]

Separately, Mr. Logan contacted Apple's in-house counsel in March and September 2008 to discuss potentially selling a number of his patents to Apple. [*See* Doc. #221-4, Lutton Emails.] The email correspondence between Mr. Logan and Apple's in-house counsel does not mention any specific patent, merely stating that Mr. Logan has "a number of . . . patents in which Apple might have an interest." [Doc. #221-4.] Mr. Logan has testified at deposition that when he spoke with Apple's in-house counsel in 2008, he was careful not to identify any particular Personal Audio patent because he did not want to risk Apple filing a declaratory judgment action. [*See* Doc. #242-3, Logan Dep. at p. 93, ll. 8-14.]

Based on the above, Personal Audio asserts that "it is difficult to believe Apple never searched for other patents from Mr. Logan," including the patents asserted in this case. [Doc. #221 at 2.] Personal Audio therefore seeks to depose an Apple representative on the following topics:

1.    All facts and circumstances surrounding Apple's first awareness of the '076 patent.

2.    All facts and circumstances surrounding Apple's first awareness of the '178 patent.

3.    Any investigation in connection with Apple's defense in Individual Network LLC v. Apple Inc., Case No. 2:07-CV-00158 (E.D. Tex.) into any patent application in which James Logan, Charles Call, or Dan Goessling, was a named inventor.

4.    Any action taken by Apple upon learning of either the '076 patent or the '178 patent before Personal Audio filed its Complaint in this case, including any

opinions, oral or written, received by Apple with respect to either the '076 patent or the '178 patent.

5.     All facts supporting or refuting Apple's contention that it did not face an objectively high likelihood that its actions constituted infringement of the '076 patent or '178 patent by selling the accused products.

6.     Any action or investigation taken by Apple to investigate any patent application in which James Logan, Charles Call, or Dan Goessling, was a named inventor after Mr. Logan contacted Chip Lutton on September 7, 2008.

[Doc. #221-5, Dep. Notice at 3.]

2.     *Attorney-client and attorney work product privileges*.

Apple opposes Personal Audio's deposition request, asserting that it has no non-privileged information that it has not already provided to Personal Audio on the noticed topics. The attorney-client privilege protects communications from the client to the attorney made in confidence for the purpose of obtaining legal advice. *Wells v. Rushing*, 755 F.2d 376, 379 n.2 (5th Cir. 1985). However, the privilege extends only to communications, and not to facts; "facts do not become privileged just because they are communicated to or by a lawyer." *Intervet, Inc. v. Merial Ltd.*, 256 F.R.D. 229, 232 (D.D.C. 2009) (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 395-96, 101 S. Ct. 677, 685-86 (1981)). The privilege shields communications from the attorney to the client only to the extent that such communications are based on, or may disclose, confidential information provided by the client, or may contain advice or opinions of the attorney. *Wells*, 755 F.2d at 379 n.2.

The attorney work product privilege protects materials that are prepared in anticipation of litigation. Fed. R. Civ. P. 26(b)(3)(A). Even if the court permits discovery of such materials, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal

theories of a party's attorney . . . concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B); *see also*

*United States v. Nobles*, 422 U.S. 225, 238, 95 S. Ct. 2160, 2170 (1975) ("[T]he work product

doctrine shelters the mental processes of the attorney, providing a privileged area within which

he can analyze and prepare his client's case.").

    The facts of when Apple became aware of the existence of the patents-in-suit, whether

and when Apple's outside counsel became aware of the patents-in-suit, and whether and when

outside counsel communicated knowledge of their existence to Apple are not privileged. What

Apple or its outside counsel knew as an objective fact is not privileged merely because it

happened that counsel gave, or Apple sought, legal advice about that fact. *See Intervet*, 256

F.R.D. at 232.

> The identity of the person or group of people who first came across the . . . patent or
> the corresponding time frame [cannot] be withheld on the basis of privilege. If [the
> attorney] discovered the patent and notified [the client], that discovery would not be
> a confidential piece of information obtained from the client.

*Id.* at 232-33 (requiring party to supplement interrogatory response "to state the name(s) of the

person(s) who first discovered the . . . patent," "the dates when these discoveries were made,"

and "the circumstances under which the discovery was made, including, if applicable, that the

patent was discovered by an attorney for Intervet").

    However, the above-noted facts, i.e. when Apple and/or its counsel became aware of the

existence of the patents-in-suit, are all that Personal Audio might discover at a deposition on the

noticed topics. The attorney-client privilege protects any communications made by Apple to its

outside counsel for the purpose of obtaining legal advice about the patents-in-suit or about the

*Individual Network* litigation. Likewise, the attorney-client privilege protects communications

made from Apple's outside counsel to Apple to the extent such communications contain

counsel's legal advice or opinions with respect to the patents-in-suit or the *Individual Network* litigation. And, the attorney work product privilege protects outside counsel's mental impressions, legal theories, and litigation tactics and strategies regarding the *Individual Network* litigation.

3.      <u>The burden and expense of the proposed deposition outweighs its likely benefit.</u>

Personal Audio correctly notes that there are three possible scenarios regarding the awareness of Apple and its outside counsel of the existence of the patents-in-suit: (1) outside counsel discovered the existence of the patents-in-suit when searching for prior art in connection with the *Individual Network* litigation and passed that knowledge on to Apple; (2) outside counsel discovered the existence of the patents-in-suit in connection with the *Individual Network* litigation but did not pass that knowledge on to Apple; or (3) outside counsel did not discover the existence of the patents-in-suit when searching for prior art in connection with the *Individual Network* litigation, and neither outside counsel nor Apple was aware of the patents-in-suit until this lawsuit was filed. [*See* Doc. #265, Pl.'s Reply at 1-4.]

With respect to the first scenario, Apple has already responded in discovery that it "first became aware of the existence of each of the Asserted Patents after Personal Audio filed its Complaint." [*See* Doc. #242-8 at 12.] The court trusts that Apple has not lied in its interrogatory responses, because it would be subject to sanctions if it had.[1] Thus, it is extremely unlikely that

---

[1]  Although Apple's interrogatory response is not a sworn statement made under the penalty of perjury as Personal Audio suggests that Apple should provide [*see* Doc. #265 at 4], every discovery response must be signed by an attorney of record, certifying that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry, the response is complete and correct and consistent with the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(g)(1). If an attorney's certification violates Rule 26(g) without substantial justification, the court *must* impose an appropriate sanction on the signer, the party on whose behalf the signer

Personal Audio will discover at deposition that outside counsel passed knowledge of the patents-in-suit on to Apple prior to the filing of this lawsuit, or that Apple's in-house counsel became aware of the patents-in-suit through his own investigation after being contacted by Mr. Logan in September 2008.

The most that Personal Audio could be likely to discover at deposition would be the second scenario, that outside counsel encountered the patents-in-suit in connection with the *Individual Network* litigation but did not communicate knowledge of their existence to Apple. Personal Audio asserts that if outside counsel knew of the patents-in-suit, such knowledge would be imputed to Apple. [*See* Doc. #265 at 2.] For this proposition, Personal Audio cites a district court case addressing whether and when a defendant company "knew" of two patents for the purpose of its liability for inducing infringement of those patents. *See Veritas Operating Corp. v. Microsoft Corp.*, 562 F. Supp. 2d 1141, 1277-78 (W.D. Wash. 2008). The *Veritas* court held that knowledge of the asserted patents by the defendant's outside counsel was imputed to the defendant company even if no one at the company ever knew of the patents prior to the lawsuit. *Id.* This holding was based on agency law and Federal Circuit case law stating that liability for induced infringement can be premised on the inducer's "actual or constructive" knowledge of a patent. *See id.*

---

was acting, or both. Fed. R. Civ. P. 26(g)(3). Further, Apple represents in its briefing that it did not know of the patents-in-suit before Personal Audio filed this case. [*See, e.g.*, Doc. #242 at 9.] By making this representation to the court in Apple's responsive brief, Apple's attorney certified that to the best of his knowledge, information, and belief formed after a reasonable inquiry under the circumstances, this denial of prior knowledge by Apple is warranted based on the evidence. *See* Fed. R. Civ. P. 11(b). If Rule 11(b) has been violated, the court may impose an appropriate sanction on Apple's attorney or the attorney's law firm. Fed. R. Civ. P. 11(c)(1).

The court is not persuaded in this case that knowledge of the patents-in-suit by Apple's outside counsel that was obtained in connection with a separate litigation and never passed on to Apple can be imputed to Apple for the purpose of liability for willful infringement. Personal Audio has cited no Federal Circuit case to support such a proposition. And *Veritas* dealt with induced infringement, not willful infringement. The court has found no Federal Circuit case holding that a finding of willful infringement can be premised on an infringer's "constructive" knowledge of a patent. *See i4i*, 598 F.3d at 860 (to willfully infringe, infringer must be aware of asserted patent); *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) (to willfully infringe a patent, one must have knowledge of it). Thus, even if Personal Audio were to discover that Apple's outside counsel became aware of the patents-in-suit in connection with the *Individual Network* case, such a discovery would not help Personal Audio's case.[2]

*4.*    *Conclusion*.

Noticed topics 1 and 2, regarding Apple's first awareness of the patents-in-suit, are cumulative of an interrogatory to which Apple has already responded that it first became aware

---

[2] In *SynQor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-CV-497-TJW-CE (E.D. Tex. Dec. 2, 2010) (order denying defendants' motion for summary judgment of no willful infringement), cited by Personal Audio in its December 6, 2010 letter brief to the court, the district court found that the plaintiff need not establish defendants' knowledge of the patents-in-suit by direct evidence. Slip op. at 1. The court held, viewing the facts and the inferences to be drawn therefrom in the light most favorable to the plaintiff at the summary judgment stage, that a jury could reasonably infer that the defendants had knowledge of the patents prior to suit based on "Defendants' behavior and their documented knowledge of Plaintiff's other patents, products, and technologies" and the "highly competitive nature of the industry and the high familiarity each competitor has with the other competitors' offerings and technology." *Id.* at 1-2. If Personal Audio were to discover at deposition that outside counsel encountered the patents-in-suit in connection with the *Individual Network* litigation, such a discovery would not do much to strengthen the circumstantial evidence already obtained by Personal Audio regarding Apple's alleged pre-suit knowledge of the patents-in-suit.

9

of the patents-in-suit when Personal Audio filed its complaint in this case. [*See* Doc. #242-8

at 12.] With respect to noticed topics 3, 4, and 6, regarding whether Apple's counsel investigated

patents on which Mr. Logan, Mr. Goessling, and Mr. Call are named as inventors and whether

Apple learned of took or any action concerning the patents-in-suit prior the filing of this case, the

only non-privileged information that Personal Audio might acquire at the requested deposition is

not likely to be helpful in proving its claim of willful infringement. Noticed topic 5, regarding

"[a]ll facts supporting or refuting Apple's contention that it did not face an objectively high

likelihood that its actions constituted infringement," is overly-broad and also cumulative of an

interrogatory that Apple has already answered [*see* Doc. #242-8 at 12-13] and, presumably

cumulative of the facts contained in Apple's pending motion for summary judgment of no willful

infringement [Doc. #327].

The court finds that the burden and expense of deposing Apple on the requested willful

infringement topics outweighs the likely benefit of the deposition. *See* Fed. R. Civ.

P. 26(b)(2)(C). Personal Audio's motion to compel is therefore denied with respect to its request

to depose an Apple designee on the topic of willful infringement.

## B. Injunctive Relief

If Personal Audio succeeds in proving infringement at trial and Apple does not succeed

on its invalidity or unenforceability defenses, the court will have to consider the question of

permanent injunctive relief in light of the four-factor test set out in *eBay Inc. v. MercExchange,*

*L.L.C.*, 547 U.S. 388, 126 S. Ct. 1837 (2006). Under *eBay*, to obtain a permanent injunction a

prevailing plaintiff must demonstrate (1) that it has suffered an irreparable injury; (2) that

remedies available at law, such as monetary damages, are inadequate to compensate for that

injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. 547 U.S. at 391, 126 S. Ct. at 1839.

With respect to injunctive relief, Personal Audio seeks to depose an Apple representative on the following topic:

> 7.    All facts upon which Apple bases its contention that Personal Audio is not entitled to injunctive relief, including any facts relating to the potential harm faced by Apple as a result of an injunction.

[Doc. #221-5 at 3.] The burden and expense of taking a deposition on the potential harm faced by Apple as a result of an injunction outweighs its benefit considering the needs of the case at this stage, given that a jury verdict in Apple's favor could render the issue of injunctive relief moot. *See* Fed. R. Civ. P. 26(b)(2)(C). Personal Audio's motion to compel is therefore denied with respect to its request to depose an Apple designee on the topic of injunctive relief. The court may permit a limited deposition on this topic post-trial if the issue of injunctive relief is still before the court at that time.[3]

---

[3]   Apple's opposition to a deposition on the topic of injunctive relief focuses largely on Apple's contention that Personal Audio has "fail[ed] to put forth even a colorable case to support its request for injunction." [Doc. #274, Def.'s Sur-reply at 1.] Apple appears to move, in a footnote, for summary judgment that Personal Audio is not entitled to a permanent injunction. [*See* Doc. #274 at 2 n.1.] The court is not convinced that there is no genuine issue of material fact with respect to the issue of permanent injunctive relief; Apple's "motion" for summary judgment on this issue is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, Personal Audio's Motion to Compel a Deposition of Apple

Concerning Willful Infringement and Injunctive Relief [Doc. #221] is hereby **DENIED**.


So **ORDERED** and **SIGNED** this **26** day of **April, 2011.**


_____

Ron Clark, United States District Judge

12