3232

1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF TEXAS
2                          LUFKIN DIVISION

3    PERSONAL AUDIO, LLC        |  DOCKET 9:09CV111
                                |
4                               |  JULY 8, 2011
     VS.                        |
5                               |  9:53 A.M.
                                |
6    APPLE, INC., ET AL         |  BEAUMONT, TEXAS

7    -----------------------------------------------------------

8         VOLUME 11 OF 11, PAGES 3232 THROUGH 3290

9         REPORTER'S TRANSCRIPT OF JURY TRIAL

10           BEFORE THE HONORABLE RON CLARK
      UNITED STATES DISTRICT JUDGE, AND A JURY
11
     -----------------------------------------------------------
12

13

14   APPEARANCES:

15   FOR THE PLAINTIFF:     RONALD J. SCHUTZ
                            JACOB M. HOLDREITH
16                          CYRUS A. MORTON
                            ROBINS KAPLAN MILLER & CIRESI - MN
17                          800 LASALLE AVENUE
                            SUITE 2800
18                          MINNEAPOLIS, MINNESOTA  55402

19                          ANNIE HUANG
                            ROBINS KAPLAN MILLER & CIRESI - NY
20                          601 LEXINGTON AVENUE
                            SUITE 3400
21                          NEW YORK, NEW YORK  10022

22                          LAWRENCE LOUIS GERMER
                            GERMER GERTZ
23                          550 FANNIN
                            SUITE 400
24                          BEAUMONT, TEXAS  77701

25

3233

```
 1  FOR THE DEFENDANTS:      RUFFIN B. CORDELL
                             FISH & RICHARDSON - WASHINGTON DC
 2                           1425 K STREET NW
                             SUITE 1100
 3                           WASHINGTON, DC  20005

 4                           GARLAND T. STEPHENS
                             BENJAMIN C. ELACQUA
 5                           FISH & RICHARDSON
                             1221 MCKINNEY
 6                           28TH FLOOR
                             HOUSTON, TEXAS  77010
 7
                             KELLY C. HUNSAKER
 8                           FISH & RICHARDSON
                             500 ARGUELLO STREET
 9                           SUITE 500
                             REDWOOD CITY, CALIFORNIA  94063
10
                             JUSTIN BARNES
11                           FISH & RICHARDSON
                             12390 EL CAMINO REAL
12                           SAN DIEGO, CALIFORNIA  92130

13                           J. THAD HEARTFIELD
                             THE HEARTFIELD LAW FIRM
14                           2195 DOWLEN ROAD
                             BEAUMONT, TEXAS  77706
15

16
    COURT REPORTER:          CHRISTINA L. BICKHAM, CRR, RMR
17                           FEDERAL OFFICIAL REPORTER
                             300 WILLOW, SUITE 221
18                           BEAUMONT, TEXAS  77701

19

20
       PROCEEDINGS REPORTED USING COMPUTERIZED STENOTYPE;
21    TRANSCRIPT PRODUCED VIA COMPUTER-AIDED TRANSCRIPTION.

22

23

24

25
```

1                              INDEX

2

3                                                        PAGE

4    JURY NOTE NUMBER 5                                  3235

5    JURY NOTE NUMBER 7                                  3239

6    JURY NOTE NUMBER 6                                  3240

7    VERDICT OF THE JURY                                 3241

8    COURT'S JMOL RULINGS                                3246

9    CONCORDANCE INDEX                                   3281

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3235

1                    (REPORTER'S NOTES PERSONAL AUDIO V. APPLE,

2    JURY TRIAL, VOLUME 11, 9:53 A.M., FRIDAY, JULY 8, 2011,

3    BEAUMONT, TEXAS, HON. RON CLARK PRESIDING.)

4                    (OPEN COURT, ALL PARTIES PRESENT, JURY NOT

5    PRESENT.)

6                    THE COURT:   Okay.   We have Jury Note Number 5.

7    "We are wanting to confirm that patent '076 and '178 are

8    completely separate.   We are a bit hung up on claim 1A on

9    '178 concerning the, quote, request, closed quote,

10   definition.

11                   Now, I think it would be appropriate, because

12   the law and the cases do say that the court has a duty to

13   provide curative instructions, to give them something

14   along the line of "The patents stem from the same

15   application and have the same specification, but the

16   claims are separate and describe separate inventions."

17                   Now, I know there may be an argument up higher

18   that, "Gee, one of these don't."   But that's a matter of

19   claim construction for me and not for the jury.   The jury

20   can't go back and say, "Oh, these are the same.   We're

21   going to get rid of that."   But I think we ought to let

22   them know that yes, these are separate patents; and the

23   claims are supposed to be separate inventions.   I mean,

24   if they're bogged down thinking that somehow they

25   describe the same thing, they're into more detail than I

3236

1 would have thought.

2           MR. SCHUTZ:  I think the law is pretty clear,

3 your Honor, that each claim is a separate invention; and

4 I think a response that simply says, "Each claim of the

5 patent is a separate invention and needs to be considered

6 separately."

7           THE COURT:  Right.  But I think because it's

8 been mentioned and talked about, the specification is the

9 same.  They can see that other than the lining; and that

10 may be what's bothering them is that we didn't explain

11 carefully enough that there is an application, a

12 specification, and then the second one that goes along.

13 So, I wanted to provide both.

14           MR. SCHUTZ:  I think that's probably okay as

15 long as you make it clear that each claim is a separate

16 invention and needs to be considered separately.

17           MR. STEPHENS:  Your Honor, I think the

18 instruction that you suggested makes sense.  I have no

19 problem with that.

20           THE COURT:  Okay.

21           All right.  Counsel, I'm giving you an

22 opportunity to review the proposed answer and the note

23 from the jury.

24           MR. STEPHENS:  Your Honor, the only concern I

25 have is that it might lead to some confusion on dependent

3237

1 claims.  While it's still true -- I mean, I think the

2 statement is literally accurate as you've written it --

3          THE COURT:  Well, what about this:  "Each

4 claim in the '076 patent is a completely separate

5 invention from the claims in the '178"?  Because those

6 aren't dependent on each other.

7          MR. STEPHENS:  That's fair.

8          MR. SCHUTZ:  That's okay.

9          THE COURT:  All right.

10          MR. STEPHENS:  Your Honor, one additional

11 concern.

12          THE COURT:  Let me just at least get this

13 note.

14          MR. STEPHENS:  Sure.

15          THE COURT:  Take a look at how I have that.

16          Show that to them before you type it.

17          Now you know why it's being typed instead of

18 handwritten.

19          Basically it would be along the lines of "Each

20 invention described in the claims of the '076 is

21 completely separate from the inventions described in the

22 claims of the '178."

23          MR. STEPHENS:  Generally I think it's okay,

24 your Honor; but the word "completely" I think may

25 overstate it a little bit.  They are obviously directed

3238

1  to similar things.  They are certainly to be considered

2  separately.

3           THE COURT:  Well, that's what I want to get

4  across without telling them that you have to consider

5  them separately because we've given them to them all in

6  one trial.

7           MR. STEPHENS:  Yes.

8           THE COURT:  And to state that we're giving

9  them to them separately is not...

10           MR. SCHUTZ:  The law says each claim is a

11  separate invention.

12           THE COURT:  Right.

13           MR. SCHUTZ:  And it only requires one claim to

14  be infringed; so, I think this is an accurate statement.

15           MR. STEPHENS:  My only concern, your Honor, is

16  the word "completely."  It's not that big an issue.

17           THE COURT:  Okay.  Well, then we'll go with it

18  because that's the way they asked the question --

19           MR. SCHUTZ:  Are they completely separate.

20           THE COURT:  -- is are they completely

21  separate, and I think they are.

22           MR. SCHUTZ:  They used the word "completely."

23           MR. STEPHENS:  Okay.  Thank you, your Honor.

24           (Discussion off the record.)

25           THE COURT:  Okay.  So, the note going back to

1  them will read, "Both patents stem from the same

2  application and have the same specification, but each

3  claim in the '076 patent is a completely separate

4  invention from the inventions described in the claims of

5  the '178." "

6              MR. SCHUTZ:  Fine by us, your Honor.

7              MR. CORDELL:  Your Honor, I know I'm late to

8  the party; but my only concern about that is that there

9  are limitations that appear in both patents.  And the

10 court's statement is absolutely a correct statement of

11 the law.

12             THE COURT:  All right.  Then that's what we'll

13 tell them.

14             And we will be in recess, then, until the next

15 note.

16             (Recess, 10:08 a.m. to 1:34 p.m.)

17             (Open court, all parties present, jury not

18 present.)

19             THE COURT:  All right.  We have a note from

20 the jury.  It's Jury Note Number 7, "We have reached a

21 verdict."

22             It is my custom after I receive the verdict

23 from the jury to take a brief recess, go down the hall,

24 and thank them personally -- I never thought much about

25 thank-you's from a podium -- and then I'll be back to

3240

1  deal with any motions.  So, I would ask that you just

2  remain here for a few minutes while I go down there and

3  do that; and then I'll be right back.

4          Everyone is here so -- and would you please

5  tell them that when you get them, that when they leave

6  here, if they'll just go back to the jury room, I'll be

7  down to speak to them?

8          COURT SECURITY OFFICER:  Yes, sir.

9          THE COURT:  Okay.  Please bring them in,

10  please.

11          I didn't announce it on the record but Jury

12  Note Number 6 did come in earlier and it said, "We are

13  eating lunch until 1:00 p.m.  I think we are getting

14  close."  So, they had a working lunch --

15          Oh, what time did they go out yesterday?

16          DEPUTY CLERK:  11:40.

17          THE COURT:  Okay.  So, they worked from 11:40

18  and they stayed until 5:00.  They had a working lunch and

19  they had a working lunch today, where they came in at

20  8:30 and they're now coming back at 1:30.  So, I don't

21  think anyone can say they didn't spend a good long time.

22  It's more than ten hours of deliberation.

23          (The jury enters the courtroom, 1:39 p.m.)

24          THE COURT:  Mr. Dixon, I understand that the

25  jury has reached a verdict?

3241

1          THE FOREPERSON:  Yes, sir, we have.

2          THE COURT:  And is it the unanimous verdict of

3  the jury?

4          THE FOREPERSON:  It is unanimous.

5          THE COURT:  Would you please hand it to the

6  court security officer.

7          (Perusing document.)

8          All right.  I note for the record that --

9  while it's initialed but it's not dated, I take it,

10 Mr. Dixon, of course, it is today's date?

11         THE FOREPERSON:  Yes, sir.

12         THE COURT:  All right.  Without objection,

13 counsel, I'll fill in the date on the last page.

14         MR. SCHUTZ:  No objection, your Honor.

15         MR. CORDELL:  No objection, your Honor.

16         THE COURT:  All right.  Ladies and gentlemen,

17 I am going to have your verdict published by having it

18 read aloud by the clerk of the court.  Please listen

19 carefully to be sure that it is, in fact, your verdict.

20         DEPUTY CLERK:  In the matter of *Personal Audio*

21 *versus Apple, Inc.*, Question Number 1:  Do you find by a

22 preponderance of the evidence that Apple literally

23 infringes any of the following claims of the '076 patent?

24         As to claim 1, 3, and 15 regarding all of the

25 groups, the answer is "yes."

3242

1          Question 2:  Do you find by a preponderance of

2   the evidence that Apple infringes any of the following

3   claims of the '178 patent under the doctrine of

4   equivalents?

5          As to claim 1, 6, 13, and 14 regarding all

6   eight groups, the answer is "yes."

7          Question Number 3:  Do you find by clear and

8   convincing evidence that any of the following claims of

9   the patents-in-suit is invalid because it is anticipated

10  by either or both of the references listed below?

11         As to both the DAD system and the DAD manual

12  regarding all of the claims for both patents, the answers

13  are "no."

14         Question Number 4:  Do you find by clear and

15  convincing evidence that any of the following claims of

16  the '076 patent is invalid because it would have been

17  obvious to a person of ordinary skill in the art in light

18  of the combinations of references listed below?

19         Regarding the DAD system in combination with

20  the Sony Discman, as to all three claims, "no."

21         Regarding the DAD manual in combination with

22  the Sony Discman, all three claims, "no."

23         Regarding the DAD system in combination with

24  Musicshop manual, all three claims, "no."

25         Regarding the DAD manual in combination with

3243

1  Musicshop manual, all three claims, "no."

2         Regarding the Sound Blaster user's guide in

3  combination with *Windows 95* Resource Kit, all three

4  claims, "no."

5         In regards to the Sound Blaster user's guide

6  in combination with *Windows 95* Resource Kit and Sony

7  Discman, all three claims, "no."

8         Regarding the Sound Blaster user's guide in

9  combination with *Windows 95* Resource Kit and Musicshop

10  manual, all three claims, "no."

11         Question Number 5:  Do you find by clear and

12  convincing evidence that any of the following claims of

13  the '178 patent is invalid because it would have been

14  obvious to a person of ordinary skill in the art in light

15  of the combinations of references listed below?

16         Regarding the DAD system in combination with

17  Sony Discman, both claims, "no."

18         Regarding the DAD manual in combination with

19  Sony Discman, both claims, "no."

20         Regarding the DAD system in combination with

21  Musicshop manual, both claims, "no."

22         Regarding the DAD manual in combination with

23  Musicshop manual, both claims "no."

24         Regarding the Sound Blaster user's guide in

25  combination with *Windows 95* Resource Kit, all four

1  claims, "no."

2          Regarding the Sound Blaster user's guide in

3  combination with *Windows 95* Resource Kit and Sony

4  Discman, claim 1 is not applicable nor is claim 13.

5  Claims 6 and 14 is "no."

6          Regarding the Sound Blaster user's guide in

7  combination with *Windows 95* Resource Kit and Musicshop

8  manual, claims 1 and 13 are not applicable.  Claims 6 and

9  14, "no."

10          Regarding the DAD system in combination with

11  bone article, the answer is "no."

12          Regarding the DAD manual in combination with

13  Loeb article, the answer is "no."

14          Regarding the Sound Blaster user's guide in

15  combination with *Windows 95* Resource Kit and Loeb

16  article, the answer is "no."

17          Question Number 6:  What form of royalty do

18  you find should be used to calculate a reasonable royalty

19  in this case?

20          The answer is Number 2, "yes," lump-sum

21  royalty.

22          Question Number 8:  What sum of money, in the

23  form of a reasonable lump-sum royalty, covering all past

24  and future sales of Apple products, do you find is

25  adequate to compensate Personal Audio for the conduct you

1  found to infringe?

2            The answer, "$8 million."

3            It is initialed and dated.

4            THE COURT:  All right.  Does Personal Audio

5  want the jury polled?

6            MR. SCHUTZ:  We do, your Honor.

7            THE COURT:  All right.  Then I'm going to ask

8  each of the members of the jury, is this the verdict as

9  published your true and correct verdict in all respects?

10           Ms. Clark?

11           JUROR CLARK:  Yes.

12           THE COURT:  Mr. Shilo?

13           JUROR SHILO:  Yes.

14           THE COURT:  Ms. Smith?

15           JUROR SMITH:  Yes.

16           THE COURT:  Mr. Dixon?

17           JUROR DIXON:  Yes.

18           THE COURT:  Ms. Morgan?

19           JUROR MORGAN:  Yes.

20           THE COURT:  Ms. Colburn?

21           JUROR COLBURN:  Yes.

22           THE COURT:  Mr. Kline?

23           JUROR KLINE:  Yes.

24           THE COURT:  Mr. Evans?

25           JUROR EVANS:  Yes.

3246

1           THE COURT:  Ms. Elms?

2           JUROR ELMS:  Yes.

3           THE COURT:  And Ms. Domingue?

4           JUROR DOMINGUE:  Yes.

5           THE COURT:  All right.  Thank you, ladies and

6  gentlemen.  I know this has been a long and complicated

7  trial, but I appreciate very much your being here.  This

8  will complete your jury service.  Remember you do not

9  have to discuss your findings or your deliberations with

10 anybody if you do not want to.  Of course, this is the

11 United States.  If you want to talk to somebody, you go

12 right ahead; but you don't have to.  No one can come to

13 you and make you do it.

14           At this time you are excused and you can go

15 with the court security officer.

16           (The jury exits the courtroom, 1:47 p.m.)

17           THE COURT:  We'll be in recess.  I'll be right

18 back.

19           (Recess, 1:48 p.m. to 2:02 p.m.)

20           THE COURT:  All right.  Let me go ahead and --

21 there were several rulings pending at the time the jury

22 went out.  I'm going to go ahead and announce two of

23 those now, and then we may need to talk a little bit

24 about the next case.

25           One of them was the issue of inequitable

brief

3247

1  conduct.  That was alleged in the end, although it

2  started off in more detail, only as to the failure to

3  disclose the DAD manual in reference to the prosecution

4  of the '178 patent.  And just briefly, of course, the

5  *Therasense, Inc., versus Becton Dickinson & Company* at

6  2011 WestLaw 2028255, Federal Circuit 2011, sets out

7  probably the most recent exposition of the law in that

8  case; and then that's followed up, of course, with an

9  even more recent *American Calcar, Inc., versus American*

10 *Honda Motor Company, Inc.*, case at 2011 WestLaw 2519503,

11 Fed Circuit 2011.

12         Obviously as set out in *Therasense*,

13 inequitable conduct is an equitable defense that bars

14 enforcement of the patent; and to prevail, the accused

15 infringer must prove that the applicant, Number 1,

16 misrepresented or admitted material information and, 2,

17 with specific intent to deceive the PTO.  Both elements

18 of this must be proven, intent and materiality; and the

19 burden of proof is clear and convincing evidence.

20         Now, it used to be that there was a sliding

21 scale; and that might have changed the ruling in this

22 case and many future cases.  But we now have quite

23 clearly that in the *Therasense* cases there must be a

24 showing of a specific intent to deceive the PTO by clear

25 and convincing evidence, and the materiality must be

1  but-for.

2          In a case where the jury or, for that matter,

3  the court invalidated a claim based on a reference, then

4  almost by definition that becomes a material reference

5  because it wound up invalidating the claim.  In this

6  particular case the jury did not find that.  But rather

7  than spending a lot of time on the -- and, of course, the

8  *American Calcar* case points out that even if the jury

9  rejects invalidity, the withheld information may be

10 material if it would have blocked the patent issuance

11 under the PTO's preponderance of the evidence standard.

12 So, it's not that I don't understand that there would be

13 that change there.

14         But let me look first at the specific intent

15 to deceive part of it.  And I think this is set out

16 perhaps most clearly in the *American Calcar* case where it

17 talks about (reading) in a case involving nondisclosure,

18 clear and convincing evidence must show that the

19 applicant made a deliberate decision to withhold a known

20 material reference.  And they made clear this court

21 should not use the sliding scale where there is a weak

22 showing of intent but a strong showing of materiality.

23         We get some indication of the materiality in

24 that Mr. Call himself thought it was material enough to

25 notify or provide a copy towards the end, and then that

3249

1  gets into the question of this so-called "specific intent

2  to deceive" by clear and convincing evidence.  And a

3  phrase there that the court uses, that "the specific

4  intent to deceive must be the single most reasonable

5  inference to be drawn from the evidence."

6          Well, in this case Mr. Call sent the

7  DAD manual to the PTO with specific references; and we

8  see that at PX 80 at pages 406 to 408.  It shows the

9  information disclosure by applicant and then along with

10 the number of patents that were there and the five

11 references, one of them being the DAD manual.

12          Now, the question I had -- and probably it's

13 one that the defendants would push -- is, well, the

14 only -- and oddly enough, this came out while Mr. Call

15 was testifying because I don't think anybody else

16 mentioned it -- that only part of the manual went in.  Up

17 until that time, I had thought the whole manual went in.

18          But if that had been some type of deliberate

19 intent to deceive, he sent in the index -- or he listed

20 the index and sent that in; and that's at those specific

21 pages that were listed, little Roman Numeral i and little

22 Roman Numeral ii.  At ii it lists all of the different

23 sections so that had anybody looked at it, they would

24 have known something was missing.  You would think that

25 the clever counsel trying to conceal something would not

1  have -- would have just sent that in without the index.

2          And, likewise, the sections that he did

3  cite -- and there was some discussion from defendant

4  that, well, he didn't specifically list the most -- what

5  the defendant thought to be the most pertinent or most

6  material pages; but those pages of Section 3 that he

7  listed, 3-1 to 3-15, which is at that page 388 of

8  Defendant's Exhibit 80, includes sections such as the

9  screen layout; the operational tutorial; building a

10  playlist, which is one of the key elements in here;

11  loading and playing a playlist, what's next.  And then

12  the other section he listed, the 5-1 through 5-16, goes

13  into more detail on the playback machine playlist

14  functions, building and modifying playlists, using the

15  playback machine, automating the audio cuts.

16          So, if it was an attempt to give a partial

17  indication -- or I guess since it has to be clear and

18  convincing evidence of intent to deceive, maybe there is

19  some hint or some question; but it isn't a question of

20  why didn't he do better, because the question could just

21  as easily be why didn't the person at the PTO do more.

22  And we probably all know that.  they're overworked;

23  overburdened; and evidently in this case, according to

24  Mr. Call, the examiner first said it wasn't there and

25  then didn't have time to or didn't want to look at it.

3251

1          But the problems that we have with the PTO

2    don't translate into inequitable conduct.  And the

3    argument was raised, well, you could have stopped the

4    whole train and started it all over again and pulled

5    everything back.  I think by that time, notice of the --

6    in fact, the fee -- notice had been issued and the fee

7    had been paid and the reference was in there.  I suppose

8    every patent prosecutor could decide that the examiner

9    did a really lousy job and tell him he did it and stop

10   everything and go up there and demand that the examiner

11   do a better job, at which point he probably needs to give

12   up his career as a patent prosecutor because he'll never

13   get another one issued.

14          So, based on the lack of clear and convincing

15   evidence of intent to deceive, I am going to find that

16   the equitable defense of -- or inequitable conduct

17   defense has not been proven and don't feel there is a

18   need then to get into the materiality of the DAD manual.

19   It's obviously an important item, and it would certainly

20   lead a reasonable -- one of reasonable skill in the art

21   to take a close look, which we can see because counsel

22   put it in and brought it before the jury.  That's one of

23   the ones they selected.  And I've looked at it and would

24   agree with that.

25          So, I'm going to deny that.

1        Now, another issue is the -- it's one of the

2   top four motions that defendant brought out; and that's

3   the (reading) no infringement under the doctrine of

4   equivalents as to the '178 patent because there was

5   insufficient evidence to support a jury verdict that the

6   accused products include an equivalent that meets the

7   "communications port for downloading from one or more

8   servers" limitations.

9        And that gets us into the court's definition

10  of that.  And the court defined that as "transferring a

11  plurality of separate digital compressed audio program

12  files and a separate sequencing file from the memory of

13  one or more separate computers to the memory of the

14  player upon a request by the player.  'Request' means a

15  communication to initiate the transfer."

16        And I went over in great detail in the claim

17  construction order, Document 258 -- or one of the several

18  claim construction orders -- and, in fact, one of the

19  main disputes, as I noted there on page 31 of

20  Document 58, was whether the downloading must be

21  initiated by a request from the player computer and

22  concluded that it did.

23        The evidence wasn't spectacularly clear on

24  either side; but in the end it comes down to the burden

25  on infringement is on the plaintiff, Personal Audio, by a

1  preponderance of the evidence.  Dr. Almeroth expressed

2  his opinion that the UBS *[sic]* cable wasn't equivalent or

3  basically that it satisfied under the doctrine of

4  equivalents, but there was no real discussion as to

5  exactly how the UBS *[sic]* cable or the port made the

6  request or the communication.

7        Now, it is true that Apple did not have

8  witnesses who could explain it either; and I think there

9  was some deposition testimony that those were lower-down

10  people or -- it sounded like they were less-favored

11  people, but I think maybe they meant people who worked at

12  a lower level of the program or something.  At least

13  that's what I hoped they meant.

14        But the burden was still on Personal Audio,

15  and basically what Dr. Almeroth said was -- and the

16  evidence basically was that the UBS *[sic]* system or cable

17  protocol says "here I am."  And "here I am" is not a

18  request for -- to initiate the transfer.  I do not think

19  that a reasonable jury could take the evidence that we

20  have, other than the *ipse dixit* opinion of Dr. Almeroth,

21  which -- and on many of the other motions I'm probably

22  going to say that I found him to be very, very credible;

23  and I could easily see why a jury faced with a

24  description of something on one handmade by him and on

25  the other handmade by other witnesses, Dr. Wicker -- I

3254

1  could easily see why someone would believe Dr. Almeroth,

2  very credible, very well-educated, well explained, well

3  presented.  But as I looked through all the evidence in

4  the end, that one little item comes down to his

5  statement, his, as they call it, "*ipse dixit* statement"

6  that that is a communication to initiate the transfer

7  or -- under basically the equivalent of that.

8          I think I mentioned earlier in my claim

9  construction order that it can't just be a "here I am"

10  because that same signal is sent when you plug in a

11  mouse, a keyboard, almost anything else in there.  And,

12  therefore, it's got to be that *iTunes* program that's

13  searching or seeking or that begins the transfer when it

14  finds out, "Oh, there is something I can transfer to."

15          So, based on how that is -- the claims are set

16  out, I am going to grant that JMOL on that.

17          Now, we are going to -- I guess we've got a

18  couple other issues.  I've still got to finish my review

19  of all of the *laches* references you gave to me to finish

20  up on that.  In terms of -- since we have another trial

21  coming up very soon -- and, of course, everyone is

22  wondering, "Should we do the work?  What's he going to do

23  on all these other motions?"  I have reviewed those; and

24  I think the way most judges do this, I could give you --

25  what I'm going to do is give you what I think the rulings

1  are going to be.  I still haven't written them all out,

2  and I haven't focused on anything.  I may wind up

3  changing.  But unless going through in detail, myself and

4  Ms. Mullendore, the other JMOLs I'm going to deny.  I

5  think on many of them I could -- I could argue either one

6  of them both ways on most of the motions made by both

7  sides.  But in the end most of them, I think, come down

8  to burden of proof and in some cases credibility of the

9  witnesses.

10          So, in terms of planning, that's -- I think

11  it's going to wind up you're going forward with that

12  downloading JMOL -- well, that is granted and

13  equitable -- or the inequitable conduct denied.  I'm

14  still working on the *laches*.

15          Does that change anything as to the next

16  trial?  In other words, does it make sense to go through

17  the next one -- and you may not be able to decide this

18  immediately, but we want to decide this pretty quick --

19  or it would be better to go ahead and get all of these

20  issues appealed before going into the next trial?

21          And I'm not going to ask either side to jump

22  up, but I'm going to need to know -- you need to be

23  thinking about that very clearly.  And for that matter,

24  given the size of the jury verdict -- well, actually,

25  since it's a lump sum, there wouldn't be another trial.

3256

1  I'm sorry.  What am I thinking of?

2           MR. SCHUTZ:  We would like to address that at

3  the appropriate time, your Honor.

4           THE COURT:  Well, are you prepared to start

5  now?

6           MR. SCHUTZ:  I am.

7           THE COURT:  Because the -- and I'll just --

8  I'm under a couple of constraints.  One, Ms. Mullendore

9  leaves at the end of August.  You can just imagine,

10 either lead counsel, if your entire time just

11 disappeared -- and she is my entire team -- where you

12 would be trying to do this.  I think sometimes people

13 forget that there are three teams in the court, and I've

14 got to try to deal with it.  And, so, whatever is done,

15 I'm planning on moving forward quickly.

16          So, go ahead, sir.

17          MR. SCHUTZ:  Your Honor, on damages the jury

18 was instructed -- and I'm just going to read the

19 paragraph that is applicable here.  On page 37 of the

20 jury instructions, They were instructed, "You must

21 disregard any testimony or evidence that Personal Audio

22 is entitled to any damages based on any technology

23 incorporated in or profits received from *iTunes* or any

24 other Apple product that is not included in the eight

25 groups of accused products that I listed for you above."

1        And then the jury form, Question Number 8, or

2    lump sum, asks them, you know, (reading) what sum of

3    money in the form of a lump-sum royalty, et cetera, do

4    you find is adequate to compensate Personal Audio for the

5    conduct you found to infringe?

6        So, the jury was instructed very clearly by

7    your Honor that damages are limited to these eight

8    groups, they're limited to the conduct found to infringe;

9    and, yet, there is a whole other range of products that

10   have been separated out of this case for purposes of

11   dealing with the complexity of the case for which there

12   was no evidence and the jury, in fact, was told to

13   disregard anything they might have heard or might have

14   been argued about any of that.

15       And, so, in light of that instruction, we do

16   not think that we are legally precluded from moving

17   forward with the second trial on products that were not,

18   as the jury instruction said, in the eight groups accused

19   in this case and were not the subject of an infringement

20   argument in this case.

21       And then I also incorporate all of the other

22   arguments I made during the charge conference.

23       MR. CORDELL:  May I, your Honor?  I would have

24   a couple of responses.  Mr. Schutz's argument would have

25   been just as applicable at the moment the cases were

1  divided as it is right now.  I mean, it's a consequence

2  of dividing the cases.  What he's suggesting is that we

3  should have been deprived of the ability to present our

4  damages theory to the jury.

5          I don't recall him making that argument during

6  the jury instruction phase of the case, although it

7  was -- it did take a while.  But we went through the jury

8  instructions.  I know we disputed the form of the verdict

9  but we decided on that form and we made it very clear to

10 the jury that if they were to choose a lump sum, it would

11 be for all products.  "All Apple products" is what it

12 says.  It says "now," and it says "in the future."  There

13 was no limitation on it.

14          He argued it in closing, if you recall.  He

15 told the jury that if they gave them a lump sum, then

16 that would cover all Apple products, even those that

17 weren't in this case.  So, I don't think that his

18 objection to the jury instructions, the text itself, is

19 valid; and I think that the court's reasoning with

20 respect to its effect on the next trial is exactly sound.

21 The jury was asked.  He argued it.  He asked them not to

22 award a lump sum for exactly this reason.  And to now

23 deny what the jury has done would be a kind of a *posthac*

24 kind of argument.  Thank you.

25          MR. SCHUTZ:  I'd like to be heard briefly,

1   your Honor.

2          THE COURT:  Let me first ask Mr. Ruffin *[sic]*:

3   How do you deal with the -- the intent of that paragraph

4   on 37 was due to the -- and I'll flat out state I was

5   having a real problem with the testimony of plaintiff's

6   damages expert and seriously considering having to just

7   simply strike and tell the jury to disregard based on

8   numerous references to he was basing it or calculating it

9   on *iTunes* and the use of *iTunes*.  He said that a number

10  of different times and I've got the references, but I

11  don't need to stop to look for them now.

12         And, so, I put that in there to be sure that

13  we were not -- or in an effort to -- and I actually think

14  that at some point Apple objected to having that in

15  there.  They wanted running royalty out completely.  As

16  it turned out, the jury dealt with that.

17         But, nevertheless, the language is in there;

18  and the verdict form is in there.  So, how do you

19  directly address Mr. Schutz's argument?

20         MR. CORDELL:  What I would say, your Honor, is

21  that I think the jury understood this issue that's quoted

22  in the middle of page 37.  They understood that, in fact,

23  Personal Audio was not going outside of the precise

24  accused products but were going outside of the claims.

25  They were going to other products in order to fill out

1  their infringement allegations.  So, the jury understood

2  that this wasn't talking about whether we could make a

3  new iPod or we could use that technology in a different

4  product.  The jury had heard so much about their slipping

5  into *iTunes* and slipping into nonaccused areas of the

6  system, that they understood exactly what the court was

7  talking about in the paragraph on page 37.

8         And, so, where it talks about, you know,

9  evidence or testimony that they are entitled to damages

10  based on technology in *iTunes* or any other Apple product

11  that was not included, they understood that as technology

12  that was not part of what should have been the core

13  infringement allegation.  And that argument, that rubric

14  would be exactly the same for the next set of products.

15         THE COURT:  All right.  Let me ask Mr. Schutz

16  a question.  Can you point to me -- I mean, your argument

17  is based on the instruction they "must disregard

18  testimony or evidence that Personal Audio is entitled to

19  damages based on technology incorporated in or profits

20  received from."  Other than your own expert's mentions of

21  *iTunes* and that's how he calculated his damages, from

22  something that was not an accused infringing product,

23  what other damages or products did you try to present

24  evidence of that they would have disregarded?

25         In other words, I've told them to disregard

3261

1  them.  You're right about that.  That's what it says.

2  But where is the harm or the prejudice to you because

3  what other piece of evidence can you point to that was in

4  the trial that I by instruction told them to disregard?

5              MR. SCHUTZ:  I can point to the entirety of

6  the report of Mr. Nawrocki covering --

7              THE COURT:  Well, Mr. Nawrocki's report was

8  not in evidence.

9              MR. SCHUTZ:  I know, your Honor.  But had

10  Mr. Nawrocki got on the stand and said, "I now want to

11  talk about the number of sales of units of iPads and

12  iPhones and iPhone touches" -- if he would have said

13  that, they would have been on their feet saying, "This

14  isn't a trial about iPod touches, iPads, or iPhones" and

15  we would have been prevented from doing that and that was

16  my understanding, that that's another trial.

17              THE COURT:  Well, that was -- keeping in mind

18  that until we got here and got to the final pretrial, or

19  I guess when they submitted their proposed jury form, I

20  wasn't clear -- I mean, I didn't read their reports or go

21  to their deposition of Dr. Ugone and his lump sum.  And

22  to say what I would have done -- I mean, I think you are

23  making a strong argument, but you didn't make it at a

24  time I could deal with it.  I mean, at that time I would

25  have been faced with, "Okay.  How do I deal with this

3262

1  since I've separated the two cases?"  And I did that

2  because of the complexity of -- I mean, you can see how

3  our verdict form is now with all of these different

4  claims and all of these different accused -- we've

5  already got eight groups.  We'd have gone another six or

6  eight pages of forms.  That's what I was dealing with.

7  Where did you bring up to me early on where I could have

8  dealt with it, "I want to get in" -- or "Dr. Ugone wants

9  to get in the idea of the possibilities of lots of other

10 future uses"?  How do I get that?

11          MR. SCHUTZ:  Your Honor, I thought that our

12 position has been pretty clear -- and I argued it

13 strenuously at the charge conference -- that I didn't

14 think there's case law support for anything called a

15 "freedom-to-operate license" that can cover products that

16 aren't even introduced yet.

17          THE COURT:  Well, I understand that.  I mean,

18 your point of view as a matter of law is there can't be

19 lump sum or a straight lump sum into the future.  I think

20 there can.  I think the case law supports it.  There

21 probably does have to be a definitive decision by a

22 higher court.  I'll grant you that.  And I wouldn't be

23 embarrassed to be in your shoes -- I mean, that's the

24 test I usually use, would I be embarrassed to argue this

25 to the Court of Appeals.  No, I wouldn't; and you

3263

1  probably -- I know you will.

2         But right now -- and you knew -- I mean, it's

3  no secret.  I mean, anybody who has looked at my

4  opinions -- and, in fact, I've told counsel in this case,

5  you know, I think that's what a lump sum does.  So, when

6  did you give me the opportunity to say, "Gee, that's a

7  tough problem.  I am going to let Dr. Ugone talk about

8  the future in more speculative terms"?

9         MR. SCHUTZ:  Well, I guess, your Honor, I

10 assumed when the trials were broken apart that we were

11 going to be able to deal with all the economics of the

12 iPod touches and the iPads and the iPhones in the next

13 trial.  That's when we deal with the economics of that.

14 That's when the jury would deal with that.

15        The only economics the jury had to take into

16 account in awarding their lump sum are what they heard

17 about these accused products.  And, so, I'll admit the

18 thought never crossed my mind that I'd have to put an

19 expert on here to talk about the products that are

20 scheduled for the August trial.  I never even

21 contemplated that I could do that.

22        THE COURT:  Well, except that they're trying

23 to get in with -- at the -- I mean, their focus is on the

24 reasonable negotiation at the time of first infringement

25 which everyone agreed was that October --

3264

1        MR. CORDELL:  2001, your Honor.

2        THE COURT:  -- 2001.

3        And by its very nature, in a hypothetical

4   negotiation in October, 2001, you're looking at the facts

5   as they exist then.  Neither expert really tried to make

6   much use of the so-called "Book of Wisdom" and going into

7   the future.  Your expert did try to get in some of the

8   actual sales.  But pretty obviously the jury agreed with

9   the hypothetical negotiation analysis as opposed to the

10  "everything in the future" analysis.

11       And, of course, they're entitled to take a

12  close, hard look at what portion of the total the

13  invention -- the claimed invention contributed.

14       MR. SCHUTZ:  Well, they're entitled to look at

15  and the experts, in fact, each in some level relied on

16  the Book of Wisdom.  They didn't use those words.

17       One of the things you'll recall that

18  Mr. Nawrocki did was he said even though the average

19  price went down, the profit margin went up.  So, he used

20  the Book of Wisdom as a check on the profit apportionment

21  that he had done.  He didn't call it that, but he

22  certainly looked into the future.

23       The Concert license negotiations themselves,

24  your Honor, occurred in the, I think it was, 2007-2008

25  time frame.  So, that was clearly something in the future

1  on the Book of Wisdom.

2          So, we -- this instruction is very clear to

3  this jury that they are to take into account -- in fact,

4  they cannot take into account anything other than these

5  eight groups; and, so, that's what they're awarding

6  compensation for.  And now to allow Apple to say, "Well,

7  it actually covers another probably eight or five

8  groups" -- I can't remember how many groups the next

9  trial is split into -- that's just fundamentally unfair.

10 We didn't have the opportunity to present any of that.

11         And if you look at the case law, it talks

12 about with lump sum there has to be some analysis of what

13 you're getting for the lump sum in the form of

14 projections.  And my view -- and again I think the law

15 needs to be developed -- I'll agree with your Honor on

16 that -- more sharply.  But the lump-sum cases have not

17 dealt with this factual situation we're dealing with here

18 where we've got a bifurcated proceeding and another

19 scheduled round of products subject to the case.  There

20 is no case that deals with the factual situation we have

21 here.

22         THE COURT:  Oh, I agree with you there.  It

23 would be so much easier if there was.

24         Well, and let's look at the question you're

25 likely to get, Mr. Cordell.  Yes, it was true that -- and

3266

1  I had indicated several times from both counsel; and I've

2  indicated in the past that I think a lump sum is a way

3  that it can be done and once it's there, it handles

4  everything into the future.  I'm concerned about -- or I

5  was concerned about this testimony of Personal Audio's

6  expert, Mr. Nawrocki.  And, so, I write this instruction;

7  but I don't remember an objection as to that was going to

8  wind up making your lump-sum idea go down the drain.

9          MR. CORDELL:  No, your Honor.  But I guess,

10 you know -- I think Mr. Schutz may be correct that we

11 can't find a precise case on point.  So, what do we do?

12 We go back to our basic training as lawyers.

13          If he had a problem with this instruction, if

14 he thought he was being prejudiced by it, he should have

15 raised an objection at the charge conference.  We've just

16 been through the transcript of the charge conference.  I

17 don't find an objection.  Now, I did it quickly.

18          He talked about it at the JMOL stage.  He made

19 a motion about it, but he didn't say anything about it at

20 the charge.  And if he had, as your Honor pointed out, we

21 would have been able to fix it at that time.  We would

22 have chosen different language.  We would have addressed

23 it differently.

24          MR. SCHUTZ:  I --

25          MR. CORDELL:  And more than that, your

3267

 1  Honor --

 2          If I could finish.

 3          THE COURT:  Well, and I guess the question

 4  would be -- and my question to you was if you're looking

 5  at that -- I don't have it right in front of me -- what

 6  was your objections, if any, or your side's objections,

 7  if any, to that paragraph or, for that matter, the

 8  wording of B?

 9          MR. CORDELL:  I don't recall that we made an

10  objection, your Honor; but I didn't check for that.  But

11  what I would say is that I'm not claiming prejudice as a

12  result of that.  So, it's not up to me to object to

13  something that might prejudice Mr. Schutz.  It's the

14  other way around.

15          I don't think that he had any misconception

16  about this.  Let me read from Mr. Schutz's closing

17  statement.  This was in his final close, at page 3001.

18  "Then when you get to the damages question, you're going

19  to be asked per-unit running royalty or lump sum.  If you

20  want to check the box 'lump sum,' which they're going to

21  ask you to check, that's it.  There is -- Apple can use

22  this technology; and they can sell a hundred million,

23  200 million, a billion units.  They can incorporate it

24  into new devices in the future and everything else; and

25  whatever that lump sum, that's it."

1        So, I don't believe that Mr. Schutz was misled
2   about this at all.  I think he understood it completely;
3   and I think that he argued that to the jury, informing
4   them, making sure they were aware that if they awarded a
5   lump sum, it was going to be this freedom-to-use license
6   that he talked about.

7        So, I just don't believe that, in fact, this
8   caused any real prejudice.  I think he put that issue
9   squarely before the jury, and he argued it.  To the
10  extent there was any confusion about the instructions, he
11  should have objected to it earlier.  But I think he made
12  that crystal-clear to this jury and they knew exactly
13  what they were offering and what they were awarding when
14  they gave them $8 million.  They gave them more than I
15  had suggested certainly.  And you could certainly link
16  that back to Mr. Schutz's argument that they were giving
17  us a freedom-to-use or freedom-to-operate license.

18         THE COURT:  All right.  I think my rulings on
19  what would happen if we got a lump-sum verdict or my
20  opinion was well-known and quite clear.  Neither side
21  objected to the wording of either that paragraph on
22  page 37 or that Question Number 7B on the -- what form
23  and with the idea or goal of saying, "If this happens,
24  then we are cut out and the one who" -- you know, at this
25  point it comes back down to a burden.  If one is

3269

1  complaining of what happens or the result of what

2  happens, then that should have been brought up.

3         And then, finally, I do specifically remember

4  that argument that went on without objection.  And I

5  don't know of any cases that would go the other way.  I

6  think right now -- and I'll cite to the *Telcordia, Inc.,*

7  *versus* -- or *Technologies, Inc., versus Cisco System,*

8  *Inc.*, 612 F.3d 1365 at 1378, Fed Circuit 2010, district

9  courts have a broad discretion to interpret an ambiguous

10 verdict form, including assessment of the verdict figures

11 representing past infringement as well as ongoing

12 infringement.  I mean, there's obviously some discretion.

13 I mean, this case isn't quite on point, I don't think,

14 with lump sums; but that issue, I think, was fairly

15 presented to the jury; and if someone felt that -- and

16 not only that, counsel knew that's how it was being

17 presented.

18        I mean, I can't believe there is any doubt in

19 anybody's mind how I thought it was going to be

20 presented.  Running royalty or lump sum.  If lump sum,

21 it's over.  In fact, we even talked about that would

22 eliminate the next trial.  And if Personal Audio was

23 thinking, "Gee, then this instruction needs to be

24 different" for that reason, that objection needed to be

25 made, just as Dr. Ugone and his problems of not being

3270

1 able to show the potentials of the millions in the future

2 at his hypothetical negotiation needed to be brought out,

3 or at least on cross-examination.  I'm not sure -- I

4 mean, that would have been another way of doing it; but

5 it wasn't.

6          And, so, the issue isn't -- was not presented

7 where I could have said, "Yes, in light of you using

8 lump sum, I'm going to let them go ahead and take your

9 expert apart on he's not counting all of the other good

10 things that they've got with that."

11          I just -- I also think, just as a practical

12 matter, given what I think is the correct law on this

13 lump-sum thing, that to ask a bunch of citizens to come

14 in here and to put both parties through the expense of

15 another trial when both sides already have their list of

16 errors that I've committed in their view for appeal, I'm

17 sure, *vis-a-vis* claim construction and the way the trial

18 was handled -- I'm quite sure both sides have had

19 somebody sitting there carefully checking off what their

20 points are going to be.  It makes more sense to go ahead

21 and present it on up there.  And if the higher court

22 agrees that the claim constructions were correct or at

23 least not harmful error and the verdict holds up, then

24 they can give us some guidance on this lump sum.

25          On the other hand, it may be all moot if they

3271

1  decide that -- well, first of all, I think my ruling on

2  '178 is -- I'm not sure whether that UBS *[sic]* ruling

3  applies to all of the other -- all of the '178 claims as

4  to the other product groups.

5          MR. CORDELL:  They don't behave any

6  differently, your Honor.  It's the same USB in --

7          THE COURT:  Yeah.  I don't know right now, and

8  I don't have to -- but that might -- you know, let's

9  assume, for example, the higher court was to say, "No.

10  Your claim construction was wrong in the first place.  It

11  doesn't require that communication."  Or they say, "No.

12  There's enough testimony on the UBS *[sic]* cable and 'here

13  I am' is a communication," in which case that could make

14  a difference as to the other.

15          Likewise, you have some other JMOLs there that

16  I don't think anybody would be embarrassed to argue

17  before the Court of Appeals.  I mean, I've done my best

18  to come up with my view on them; but some of those

19  arguments are -- even though -- one of the things you're

20  going to get is I think a lot of them are basically

21  waived.  There were too many put in at once, and it was

22  hard to -- but, you know, you've laid out your top four,

23  and I'm sure the court will look at some number of

24  those -- maybe all of them.  I don't know.  I won't give

25  you a ruling on all of them.  But it certainly seems,

3272

1  Mr. Schutz -- and just in terms of efficiency, might as

2  well go ahead and have the higher court deal with all of

3  this.

4          MR. SCHUTZ:  I --

5          THE COURT:  I've also got to deal with, of

6  course, the question of -- well, let's see.  What's

7  left -- whether or not it's an exceptional case and

8  attorneys' fees.

9          MR. SCHUTZ:  Yeah.  I was going to mention

10 that we will be filing attorneys' fees and exceptional

11 case motion and prejudgment interest.

12         THE COURT:  Well, the prejudgment interest I

13 guess would be a matter of law.  I mean, there's -- how

14 much it is.  But it would normally be awarded in a case.

15         MR. SCHUTZ:  And then costs and those things

16 like that.

17         THE COURT:  Right.  I mean, you know, there

18 may be some disputes over the amount; but I don't think

19 there is a question over whether costs are normally

20 awarded to the prevailing side and prejudgment interest

21 is normally awarded to the prevailing side.  The

22 attorneys' fees is a different matter.  I've got to make

23 a decision on that.

24         Is there any other issue that you can see that

25 still has to be dealt with based on what I'm -- I mean,

3273

1  keep in mind as I go through this, by Tuesday I may look

2  at this and say, "Whoa, different JMOL needs to be

3  granted" or something like that.  But I really don't

4  think so.  I've gone through them.

5          MR. CORDELL:  Well, I mean, I think the

6  outstanding issues at the moment, your Honor, are the

7  *laches* issue.  That's obviously a big one.

8          We have been talking about perhaps asking for

9  a remittiture based on what seemed to have been the very

10  definite inclusion of noncore products or noncore

11  technology, things like the *iTunes*, reliance on the

12  *iTunes*.  But perhaps based on this verdict we won't do

13  it.  I just can't tell you, as I stand here, that we're

14  going to ask for that.

15          THE COURT:  You'd be in a tough position to

16  say that that instruction that they're relying on to get

17  another trial was not good enough to protect you.

18          MR. CORDELL:  I wouldn't be complaining about

19  the instruction, your Honor.  I'd be complaining about

20  the evidence and the fact that Mr. Nawrocki clearly did

21  rely on that.  But, again, as I stand here, it doesn't

22  sound like it's very likely at this point.

23          THE COURT:  Okay.  That may be one of those

24  you want to be careful what argument you make.

25          MR. CORDELL:  I will do that.  I will do that.

3274

1          THE COURT:  And understanding that you don't

2   agree with my rulings, Mr. Schutz, other than whether

3   it's an exceptional case and attorneys' fees and, of

4   course, prejudgment interest and costs, are there any

5   other issues?

6          MR. SCHUTZ:  No.  I just wanted to make -- and

7   I understand your ruling, your Honor.

8          THE COURT:  Okay.

9          MR. SCHUTZ:  I just wanted to make the record

10  clear on one point that I did not get to address when

11  Mr. Cordell said that I stood up and argued something to

12  the effect that this wouldn't cover all products.

13          One of the problems, of course, with that is

14  one thing we know about jurors is that the person they

15  listen to in court is the person on the bench with the

16  black robe and the person on the bench with the black

17  robe tells the jury, "I'm the source of the law and

18  nothing the lawyers say is evidence and let me read you

19  what the law is and I'll give you a copy in black and

20  white so when you're back there for a day and a half you

21  can look through it if you've got any questions."

22          So, if somebody in the jury room would have

23  said, "Well, Mr. Schutz made this argument that it would

24  have covered all products in the future.  What did the

25  judge say about that" and then they go and look at your

3275

1  words, your Honor, and they would say no.  That's not

2  right.  He was wrong about that because we're supposed to

3  disregard anything except these eight groups and the

4  question says conduct we find to infringe in this case.

5          With that, I have nothing else, your Honor.

6          THE COURT:  No.  You're -- I'm not saying this

7  is an easy one.

8          MR. SCHUTZ:  Oh, and --

9          THE COURT:  Go ahead.

10          MR. SCHUTZ:  And this is -- I'm sure you will

11  take this, your Honor, in the spirit with which it is

12  intended.  But when it comes between efficiency and

13  fairness, I would urge the court to come down on the side

14  of fairness.

15          THE COURT:  No.  I am -- I mean, this is

16  obviously an odd issue.  But keep in mind it's not the

17  question of a bench trial efficiency.  It's the question

18  of dragging in a bunch of citizens off the street and

19  taking them away from their home for a week or so.  I

20  worry about that a lot.  I mean, you can tell by the way

21  I run time limits I worry about that.

22          I also think in terms of the presentation of

23  issues, that there is a pretty complete package of issues

24  now to go up; and I really do think that based on how

25  everything was presented -- and we discussed this with

3276

1  would there be a lump-sum presentation at all.  I had

2  said earlier I was going to do a lump-sum presentation in

3  in spite of the fact that the cases had been divided.

4         Okay.  I think then what I need to do is

5  finish up my analysis of *laches*, finish up my analysis of

6  whether or not it's an exceptional case.  If I find it

7  is, I'll issue that ruling; and then you can submit the

8  attorneys' fees.  There's not much point in spending time

9  putting them together if I don't find this exceptional.

10        MR. SCHUTZ:  Right.  We'll -- with

11 your Honor's permission, we'll just brief the substance

12 of the exceptional case motion and not say if you grant

13 it, here's the amount of money.

14        THE COURT:  I really don't need, I don't

15 think -- unless there's been a case that came out

16 yesterday -- much help on the law of exceptional case;

17 but if you want to point to particular factual things

18 supported in the record --

19        MR. SCHUTZ:  And that's what we intend to do,

20 your Honor.

21        THE COURT:  -- I'd be interested in that.  I

22 would like it very quickly, though, because we need to

23 move this along.  And I would like any response very

24 quickly, just because of scheduling problems I'm going to

25 start running into.

1        How fast do you think you can get that in?  I

2   mean, sometime in the middle of this coming week?

3        MR. SCHUTZ:  I think we can have it to you

4   by -- end of the day Thursday be okay, your Honor?

5        MR. CORDELL:  We do have one small issue, your

6   Honor, and I --

7        THE COURT:  Sure.

8        MR. CORDELL:  And it may be a small issue, or

9   it may be a huge issue.  And it has to do with this

10  agreement that we heard about yesterday between Personal

11  Audio and Motorola.  And Mr. Schutz filed a letter last

12  night providing the court with deposition cites that were

13  in the neighborhood -- I will say that -- But we believe

14  that, in fact, this agreement was subject to disclosure.

15  It was not disclosed.  And we are in the process of

16  investigating that.  We're going to meet and confer with

17  Mr. Schutz, and we're going to find out where that

18  agreement is and what it says.  Our suspicion is that

19  there's more in that agreement than we've heard; and, so,

20  we would like the opportunity to get that, get to the

21  bottom of why it wasn't produced, and then consider any

22  motions thereon.

23        THE COURT:  Well, since it's my plan to get

24  this wrapped up and the judgment in quickly --

25        MR. CORDELL:  We'll go for Thursday.

3278

1          THE COURT:  I mean, you're -- yes.  You're

2  talking about a very, very short time period here because

3  we're now at the end of the case and -- I'm really

4  serious when I tell you to think, Mr. Schutz and

5  Mr. Cordell, the position you'd be in if everyone on your

6  respective teams suddenly won the lottery and moved off

7  to Hawaii and you were suddenly -- and you have no way of

8  replacing them, because I don't have a budget in my law

9  firm where I could go hire some other -- I mean, the next

10  person coming in is a young lady out of law school,

11  starting off fresh.

12          MR. CORDELL:  We'll get it in by Thursday,

13  your Honor.

14          THE COURT:  This needs to be wrapped up while

15  I've still got her able assistance and her almost two

16  full years of memory of this case.

17          MR. CORDELL:  And I certainly concede that

18  losing her is going to be tough.

19          If I could ask one thing, your Honor.  What

20  are we going to do about the deadlines that are currently

21  on the docket?  Can we suspend those?

22          THE COURT:  For the next case?  Well, given my

23  ruling on this, I think the answer to that will be yes,

24  just go ahead and abate that case and see what happens

25  with the case going up on appeal.  I mean, I don't see a

3279

1  point in wasting the work that has been done on that,

2  although a lot of it applies to this case.  And if the

3  case is sent back or if Mr. Schutz prevails in the

4  argument on this, then obviously that one will be open.

5           MR. CORDELL:  Thank you.

6           THE COURT:  Yeah.  I just don't see another

7  way around that.

8           Okay.  All right.  In that case the court is

9  adjourned.

10           (Proceedings adjourned, 2:59 p.m.)

11  COURT REPORTER'S CERTIFICATION

12           I HEREBY CERTIFY THAT ON THIS DATE, July 8,

13  2011, THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

14  RECORD OF PROCEEDINGS.

15           *Christina Bickham*

16  CHRISTINA L. BICKHAM,    CRR,    RMR

17

18

19

20

21

22

23

24

25

3280

## $

**$8** [1] - 2932:2

## '

**'076** [6] - 2922:7, 2924:4, 2924:20, 2926:3, 2928:23, 2929:16
**'178** [11] - 2922:7, 2922:9, 2924:5, 2924:22, 2926:5, 2929:3, 2930:13, 2934:4, 2939:4, 2958:2, 2958:3
**'here** [1] - 2958:12
**'lump** [1] - 2954:20
**'request'** [1] - 2939:14

## 1

**1** [6] - 2928:21, 2928:24, 2929:5, 2931:4, 2931:8, 2934:15
**10:08** [1] - 2926:16
**11** [1] - 2922:2
**11:40** [2] - 2927:16, 2927:17
**13** [3] - 2929:5, 2931:4, 2931:8
**1365** [1] - 2956:8
**1378** [1] - 2956:8
**14** [3] - 2929:5, 2931:5, 2931:9
**15** [1] - 2928:24
**1:00** [1] - 2927:13
**1:30** [1] - 2927:20
**1:34** [1] - 2926:16
**1:39** [1] - 2927:23
**1:47** [1] - 2933:16
**1:48** [1] - 2933:19
**1A** [1] - 2922:8

## 2

**2** [3] - 2929:1, 2931:20, 2934:16
**200** [1] - 2954:23
**2001** [3] - 2951:1, 2951:2, 2951:4
**2007-2008** [1] - 2951:24
**2010** [1] - 2956:8
**2011** [6] - 2922:2, 2934:6, 2934:10, 2934:11, 2966:13
**2028255** [1] - 2934:6
**2519503** [1] - 2934:10
**258** [1] - 2939:17
**2:02** [1] - 2933:19
**2:59** [1] - 2966:10

## 3

**3** [3] - 2928:24, 2929:7, 2937:6
**3-1** [1] - 2937:7
**3-15** [1] - 2937:7
**3001** [1] - 2954:17
**31** [1] - 2939:19

**37** [5] - 2943:19, 2946:4, 2946:22, 2947:7, 2955:22
**388** [1] - 2937:7

## 4

**4** [1] - 2929:14
**406** [1] - 2936:8
**408** [1] - 2936:8

## 5

**5** [2] - 2922:6, 2930:11
**5-1** [1] - 2937:12
**5-16** [1] - 2937:12
**58** [1] - 2939:20
**5:00** [1] - 2927:18

## 6

**6** [5] - 2927:12, 2929:5, 2931:5, 2931:8, 2931:17
**612** [1] - 2956:8

## 7

**7** [1] - 2926:20
**7B** [1] - 2955:22

## 8

**8** [5] - 2922:2, 2931:22, 2944:1, 2955:14, 2966:12
**80** [2] - 2936:8, 2937:8
**8:30** [1] - 2927:20

## 9

**95** [7] - 2930:3, 2930:6, 2930:9, 2930:25, 2931:3, 2931:7, 2931:15
**9:53** [1] - 2922:2

## A

**a.m** [1] - 2926:16
**A.M** [1] - 2922:2
**abate** [1] - 2965:24
**ability** [1] - 2945:3
**able** [5] - 2942:17, 2950:11, 2953:21, 2957:1, 2965:15
**absolutely** [1] - 2926:10
**according** [1] - 2937:23
**account** [3] - 2950:16, 2952:3, 2952:4
**accurate** [2] - 2924:2, 2925:14
**accused** [8] - 2934:14, 2939:6, 2943:25, 2944:18, 2946:24, 2947:22,

2949:4, 2950:17
**actual** [1] - 2951:8
**additional** [1] - 2924:10
**address** [3] - 2943:2, 2946:19, 2961:10
**addressed** [1] - 2953:22
**adequate** [2] - 2931:25, 2944:4
**adjourned** [2] - 2966:9, 2966:10
**admit** [1] - 2950:17
**admitted** [1] - 2934:16
**agree** [4] - 2938:24, 2952:15, 2952:22, 2961:2
**agreed** [2] - 2950:25, 2951:8
**agreement** [4] - 2964:10, 2964:14, 2964:18, 2964:19
**agrees** [1] - 2957:22
**ahead** [10] - 2933:12, 2933:20, 2933:22, 2942:19, 2943:16, 2957:8, 2957:20, 2959:2, 2962:9, 2965:24
**ALL** [1] - 2922:4
**allegation** [1] - 2947:13
**allegations** [1] - 2947:1
**alleged** [1] - 2934:1
**allow** [1] - 2952:6
**Almeroth** [4] - 2940:1, 2940:15, 2940:20, 2941:1
**almost** [3] - 2935:4, 2941:11, 2965:15
**aloud** [1] - 2928:18
**am'** [1] - 2958:13
**ambiguous** [1] - 2956:9
**American** [4] - 2934:9, 2935:8, 2935:16
**amount** [2] - 2959:18, 2963:13
**analysis** [5] - 2951:9, 2951:10, 2952:12, 2963:5
**announce** [2] - 2927:11, 2933:22
**answer** [9] - 2923:22, 2928:25, 2929:6, 2931:11, 2931:13, 2931:16, 2931:20, 2932:2, 2965:23
**answers** [1] - 2929:12
**anticipated** [1] - 2929:9
**apart** [2] - 2950:10, 2957:9
**appeal** [2] - 2957:16, 2965:25
**appealed** [1] - 2942:20
**Appeals** [2] - 2949:25, 2958:17
**appear** [1] - 2926:9
**APPLE** [1] - 2922:1
**Apple** [12] - 2928:21, 2928:22, 2929:2, 2931:24, 2940:7, 2943:24, 2945:11, 2945:16, 2946:14, 2947:10, 2952:6, 2954:21
**applicable** [4] - 2931:4, 2931:8, 2943:19, 2944:25
**applicant** [3] - 2934:15, 2935:19, 2936:9
**application** [3] - 2922:15, 2923:11, 2926:2
**applies** [2] - 2958:3, 2966:2
**apportionment** [1] - 2951:20
**appreciate** [1] - 2933:7
**appropriate** [2] - 2922:11, 2943:3
**areas** [1] - 2947:5

3281

**argue** [3] - 2942:5, 2949:24, 2958:16
**argued** [7] - 2944:14, 2945:14, 2945:21, 2949:12, 2955:3, 2955:9, 2961:11
**argument** [15] - 2922:17, 2938:3, 2944:20, 2944:24, 2945:5, 2945:24, 2946:19, 2947:13, 2947:16, 2948:23, 2955:16, 2956:4, 2960:24, 2961:23, 2966:4
**arguments** [2] - 2944:22, 2958:19
**art** [3] - 2929:17, 2930:14, 2938:20
**article** [3] - 2931:11, 2931:13, 2931:16
**assessment** [1] - 2956:10
**assistance** [1] - 2965:15
**assume** [1] - 2958:9
**assumed** [1] - 2950:10
**attempt** [1] - 2937:16
**attorneys'** [5] - 2959:8, 2959:10, 2959:22, 2961:3, 2963:8
**AUDIO** [1] - 2922:1
**audio** [2] - 2937:15, 2939:11
**Audio** [11] - 2928:20, 2931:25, 2932:4, 2939:25, 2940:14, 2943:21, 2944:4, 2946:23, 2947:18, 2956:22, 2964:11
**Audio's** [1] - 2953:5
**August** [2] - 2943:9, 2950:20
**automating** [1] - 2937:15
**average** [1] - 2951:18
**award** [1] - 2945:22
**awarded** [4] - 2955:4, 2959:14, 2959:20, 2959:21
**awarding** [3] - 2950:16, 2952:5, 2955:13
**aware** [1] - 2955:4

## B

**bars** [1] - 2934:13
**based** [12] - 2935:3, 2938:14, 2941:15, 2943:22, 2946:7, 2947:10, 2947:17, 2947:19, 2959:25, 2960:9, 2960:12, 2962:24
**basic** [1] - 2953:12
**basing** [1] - 2946:8
**BEAUMONT** [1] - 2922:3
**becomes** [1] - 2935:4
**Becton** [1] - 2934:5
**begins** [1] - 2941:13
**behave** [1] - 2958:5
**below** [3] - 2929:10, 2929:18, 2930:15
**bench** [3] - 2961:15, 2961:16, 2962:17
**best** [1] - 2958:17
**better** [3] - 2937:20, 2938:11, 2942:19
**between** [2] - 2962:12, 2964:10
**bifurcated** [1] - 2952:18
**big** [2] - 2925:16, 2960:7
**billion** [1] - 2954:23
**bit** [3] - 2922:8, 2924:25, 2933:23
**black** [3] - 2961:16, 2961:19

**Blaster** [7] - 2930:2, 2930:5, 2930:8, 2930:24, 2931:2, 2931:6, 2931:14
**blocked** [1] - 2935:10
**bogged** [1] - 2922:24
**bone** [1] - 2931:11
**Book** [4] - 2951:6, 2951:16, 2951:20, 2952:1
**bothering** [1] - 2923:10
**bottom** [1] - 2964:21
**box** [1] - 2954:20
**brief** [2] - 2926:23, 2963:11
**briefly** [2] - 2934:4, 2945:25
**bring** [2] - 2927:9, 2949:7
**broad** [1] - 2956:9
**broken** [1] - 2950:10
**brought** [4] - 2938:22, 2939:2, 2956:2, 2957:2
**budget** [1] - 2965:8
**building** [2] - 2937:9, 2937:14
**bunch** [2] - 2957:13, 2962:18
**burden** [5] - 2934:19, 2939:24, 2940:14, 2942:8, 2955:25
**but-for** [1] - 2935:1

## C

**cable** [4] - 2940:2, 2940:5, 2940:16, 2958:12
**Calcar** [3] - 2934:9, 2935:8, 2935:16
**calculate** [1] - 2931:18
**calculated** [1] - 2947:21
**calculating** [1] - 2946:8
**cannot** [1] - 2952:4
**career** [1] - 2938:12
**careful** [1] - 2960:24
**carefully** [3] - 2923:11, 2928:19, 2957:19
**case** [44] - 2931:19, 2933:24, 2934:8, 2934:10, 2934:22, 2935:2, 2935:6, 2935:8, 2935:16, 2935:17, 2936:6, 2937:23, 2944:10, 2944:11, 2944:19, 2944:20, 2945:6, 2945:17, 2949:14, 2949:20, 2950:4, 2952:11, 2952:19, 2952:20, 2953:11, 2956:13, 2958:13, 2959:7, 2959:11, 2959:14, 2961:3, 2962:4, 2963:6, 2963:12, 2963:15, 2963:16, 2965:3, 2965:16, 2965:22, 2965:24, 2965:25, 2966:2, 2966:3, 2966:8
**cases** [10] - 2922:12, 2934:22, 2934:23, 2942:8, 2944:25, 2945:2, 2949:1, 2952:16, 2956:5, 2963:3
**caused** [1] - 2955:8
**certainly** [7] - 2925:1, 2938:19, 2951:22, 2955:15, 2958:25, 2965:17
**CERTIFICATION** [1] - 2966:11
**CERTIFY** [1] - 2966:12
**cetera** [1] - 2944:3
**change** [2] - 2935:13, 2942:15
**changed** [1] - 2934:21

**changing** [1] - 2942:3
**charge** [5] - 2944:22, 2949:13, 2953:15, 2953:16, 2953:20
**check** [4] - 2951:20, 2954:10, 2954:20, 2954:21
**checking** [1] - 2957:19
**choose** [1] - 2945:10
**chosen** [1] - 2953:22
**Circuit** [3] - 2934:6, 2934:11, 2956:8
**Cisco** [1] - 2956:7
**cite** [2] - 2937:3, 2956:6
**cites** [1] - 2964:12
**citizens** [2] - 2957:13, 2962:18
**claim** [21] - 2922:8, 2922:19, 2923:3, 2923:4, 2923:15, 2924:4, 2925:10, 2925:13, 2926:3, 2928:24, 2929:5, 2931:4, 2935:3, 2935:5, 2939:16, 2939:18, 2941:8, 2957:17, 2957:22, 2958:10
**claimed** [1] - 2951:13
**claiming** [1] - 2954:11
**claims** [32] - 2922:16, 2922:23, 2924:1, 2924:5, 2924:20, 2924:22, 2926:4, 2928:23, 2929:3, 2929:8, 2929:12, 2929:15, 2929:20, 2929:22, 2929:24, 2930:1, 2930:4, 2930:7, 2930:10, 2930:12, 2930:17, 2930:19, 2930:21, 2930:23, 2931:1, 2931:5, 2931:8, 2941:15, 2946:24, 2949:4, 2958:3
**Clark** [1] - 2932:10
**CLARK** [2] - 2922:3, 2932:11
**clear** [20] - 2923:2, 2923:15, 2929:7, 2929:14, 2930:11, 2934:19, 2934:24, 2935:18, 2935:20, 2936:2, 2937:17, 2938:14, 2939:23, 2945:9, 2948:20, 2949:12, 2952:2, 2955:12, 2955:20, 2961:10
**clearly** [6] - 2934:23, 2935:16, 2942:23, 2944:6, 2951:25, 2960:20
**CLERK** [2] - 2927:16, 2928:20
**clerk** [1] - 2928:18
**clever** [1] - 2936:25
**close** [4] - 2927:14, 2938:21, 2951:12, 2954:17
**closed** [1] - 2922:9
**closing** [2] - 2945:14, 2954:16
**Colburn** [1] - 2932:20
**COLBURN** [1] - 2932:21
**combination** [17] - 2929:19, 2929:21, 2929:23, 2929:25, 2930:3, 2930:6, 2930:9, 2930:16, 2930:18, 2930:20, 2930:22, 2930:25, 2931:3, 2931:7, 2931:10, 2931:12, 2931:15
**combinations** [2] - 2929:18, 2930:15
**coming** [4] - 2927:20, 2941:21, 2964:2, 2965:10
**committed** [1] - 2957:16
**communication** [5] - 2939:15, 2940:6, 2941:6, 2958:11, 2958:13
**communications** [1] - 2939:7

**Company** [2] - 2934:5, 2934:10
**compensate** [2] - 2931:25, 2944:4
**compensation** [1] - 2952:6
**complaining** [3] - 2956:1, 2960:18, 2960:19
**complete** [2] - 2933:8, 2962:23
**completely** [11] - 2922:8, 2924:4, 2924:21, 2924:24, 2925:16, 2925:19, 2925:20, 2925:22, 2926:3, 2946:15, 2955:2
**complexity** [2] - 2944:11, 2949:2
**complicated** [1] - 2933:6
**compressed** [1] - 2939:11
**computer** [1] - 2939:21
**computers** [1] - 2939:13
**conceal** [1] - 2936:25
**concede** [1] - 2965:17
**concern** [4] - 2923:24, 2924:11, 2925:15, 2926:8
**concerned** [2] - 2953:4, 2953:5
**concerning** [1] - 2922:9
**Concert** [1] - 2951:23
**concluded** [1] - 2939:22
**conduct** [9] - 2931:25, 2934:1, 2934:13, 2938:2, 2938:16, 2942:13, 2944:5, 2944:8, 2962:4
**confer** [1] - 2964:16
**conference** [4] - 2944:22, 2949:13, 2953:15, 2953:16
**confirm** [1] - 2922:7
**confusion** [2] - 2923:25, 2955:10
**consequence** [1] - 2945:1
**consider** [2] - 2925:4, 2964:21
**considered** [3] - 2923:5, 2923:16, 2925:1
**considering** [1] - 2946:6
**constraints** [1] - 2943:8
**construction** [5] - 2922:19, 2939:17, 2939:18, 2941:9, 2957:17, 2958:10
**constructions** [1] - 2957:22
**contemplated** [1] - 2950:21
**contributed** [1] - 2951:13
**convincing** [9] - 2929:8, 2929:15, 2930:12, 2934:19, 2934:25, 2935:18, 2936:2, 2937:18, 2938:14
**copy** [2] - 2935:25, 2961:19
**Cordell** [3] - 2952:25, 2961:11, 2965:5
**CORDELL** [18] - 2926:7, 2928:15, 2944:23, 2946:20, 2951:1, 2953:9, 2953:25, 2954:9, 2958:5, 2960:5, 2960:18, 2960:25, 2964:5, 2964:8, 2964:25, 2965:12, 2965:17, 2966:5
**core** [1] - 2947:12
**CORRECT** [1] - 2966:13
**correct** [5] - 2926:10, 2932:9, 2953:10, 2957:12, 2957:22
**costs** [3] - 2959:15, 2959:19, 2961:4
**counsel** [8] - 2923:21, 2928:13, 2936:25, 2938:21, 2943:10, 2950:4, 2953:1, 2956:16

**counting** [1] - 2957:9
**couple** [3] - 2941:18, 2943:8, 2944:24
**course** [10] - 2928:10, 2933:10, 2934:4, 2934:8, 2935:7, 2941:21, 2951:11, 2959:6, 2961:4, 2961:13
**COURT** [70] - 2922:4, 2922:6, 2923:7, 2923:20, 2924:3, 2924:9, 2924:12, 2924:15, 2925:3, 2925:8, 2925:12, 2925:17, 2925:20, 2925:25, 2926:12, 2926:19, 2927:8, 2927:9, 2927:17, 2927:24, 2928:2, 2928:5, 2928:12, 2928:16, 2932:4, 2932:7, 2932:12, 2932:14, 2932:16, 2932:18, 2932:20, 2932:22, 2932:24, 2933:1, 2933:3, 2933:5, 2933:17, 2933:20, 2943:4, 2943:7, 2946:2, 2947:15, 2948:7, 2948:17, 2949:17, 2950:22, 2951:2, 2952:22, 2954:3, 2955:18, 2958:7, 2959:5, 2959:12, 2959:17, 2960:15, 2960:23, 2961:1, 2961:8, 2962:6, 2962:9, 2962:15, 2963:14, 2963:21, 2964:7, 2964:23, 2965:1, 2965:14, 2965:22, 2966:6, 2966:11
**Court** [2] - 2949:25, 2958:17
**court** [20] - 2922:12, 2926:17, 2928:6, 2928:18, 2933:15, 2935:3, 2935:20, 2936:3, 2939:10, 2943:13, 2947:6, 2949:22, 2957:21, 2958:9, 2958:23, 2959:2, 2961:15, 2962:13, 2964:12, 2966:8
**court's** [3] - 2926:10, 2939:9, 2945:19
**courtroom** [2] - 2927:23, 2933:16
**courts** [1] - 2956:9
**cover** [3] - 2945:16, 2949:15, 2961:12
**covered** [1] - 2961:24
**covering** [2] - 2931:23, 2948:6
**covers** [1] - 2952:7
**credibility** [1] - 2942:8
**credible** [2] - 2940:22, 2941:2
**cross** [1] - 2957:3
**cross-examination** [1] - 2957:3
**crossed** [1] - 2950:18
**crystal** [1] - 2955:12
**crystal-clear** [1] - 2955:12
**curative** [1] - 2922:13
**custom** [1] - 2926:22
**cut** [1] - 2955:24
**cuts** [1] - 2937:15

**D**

**DAD** [16] - 2929:11, 2929:19, 2929:21, 2929:23, 2929:25, 2930:16, 2930:18, 2930:20, 2930:22, 2931:10, 2931:12, 2934:3, 2936:7, 2936:11, 2938:18
**damages** [10] - 2943:17, 2943:22, 2944:7, 2945:4, 2946:6, 2947:9, 2947:19, 2947:21, 2947:23, 2954:18
**date** [2] - 2928:10, 2928:13
**DATE** [1] - 2966:12

**dated** [2] - 2928:9, 2932:3
**deadlines** [1] - 2965:20
**deal** [10] - 2927:1, 2943:14, 2946:3, 2948:24, 2948:25, 2950:11, 2950:13, 2950:14, 2959:2, 2959:5
**dealing** [3] - 2944:11, 2949:6, 2952:17
**deals** [1] - 2952:20
**dealt** [4] - 2946:16, 2949:8, 2952:17, 2959:25
**deceive** [8] - 2934:17, 2934:24, 2935:15, 2936:2, 2936:4, 2936:19, 2937:18, 2938:15
**decide** [3] - 2938:8, 2942:17, 2942:18, 2958:1
**decided** [1] - 2945:9
**decision** [3] - 2935:19, 2949:21, 2959:23
**defendant** [3] - 2937:3, 2937:5, 2939:2
**Defendant's** [1] - 2937:8
**defendants** [1] - 2936:13
**defense** [3] - 2934:13, 2938:16, 2938:17
**defined** [1] - 2939:10
**definite** [1] - 2960:10
**definition** [3] - 2922:10, 2935:4, 2939:9
**definitive** [1] - 2949:21
**deliberate** [2] - 2935:19, 2936:18
**deliberation** [1] - 2927:22
**deliberations** [1] - 2933:9
**demand** [1] - 2938:10
**denied** [1] - 2942:13
**deny** [3] - 2938:25, 2942:4, 2945:23
**dependent** [2] - 2923:25, 2924:6
**deposition** [3] - 2940:9, 2948:21, 2964:12
**deprived** [1] - 2945:3
**DEPUTY** [2] - 2927:16, 2928:20
**describe** [2] - 2922:16, 2922:25
**described** [3] - 2924:20, 2924:21, 2926:4
**description** [1] - 2940:24
**detail** [5] - 2922:25, 2934:2, 2937:13, 2939:16, 2942:3
**developed** [1] - 2952:15
**devices** [1] - 2954:24
**Dickinson** [1] - 2934:5
**difference** [1] - 2958:14
**different** [9] - 2936:22, 2946:10, 2947:3, 2949:3, 2949:4, 2953:22, 2956:24, 2959:22, 2960:2
**differently** [2] - 2953:23, 2958:6
**digital** [1] - 2939:11
**directed** [1] - 2924:25
**directly** [1] - 2946:19
**disappeared** [1] - 2943:11
**disclose** [1] - 2934:3
**disclosed** [1] - 2964:15
**disclosure** [2] - 2936:9, 2964:14
**Discman** [6] - 2929:20, 2929:22, 2930:7, 2930:17, 2930:19, 2931:4

**discretion** [2] - 2956:9, 2956:12
**discuss** [1] - 2933:9
**discussed** [1] - 2962:25
**Discussion** [1] - 2925:24
**discussion** [2] - 2937:3, 2940:4
**disputed** [1] - 2945:8
**disputes** [2] - 2939:19, 2959:18
**disregard** [7] - 2943:21, 2944:13, 2946:7, 2947:17, 2947:25, 2948:4, 2962:3
**disregarded** [1] - 2947:24
**district** [1] - 2956:8
**divided** [2] - 2945:1, 2963:3
**dividing** [1] - 2945:2
**dixit** [2] - 2940:20, 2941:5
**Dixon** [3] - 2927:24, 2928:10, 2932:16
**DIXON** [1] - 2932:17
**docket** [1] - 2965:21
**doctrine** [3] - 2929:3, 2939:3, 2940:3
**Document** [2] - 2939:17, 2939:20
**document** [1] - 2928:7
**Domingue** [1] - 2933:3
**DOMINGUE** [1] - 2933:4
**done** [7] - 2943:14, 2945:23, 2948:22, 2951:21, 2953:3, 2958:17, 2966:1
**doubt** [1] - 2956:18
**down** [12] - 2922:24, 2926:23, 2927:2, 2927:7, 2939:24, 2940:9, 2941:4, 2942:7, 2951:19, 2953:8, 2955:25, 2962:13
**downloading** [3] - 2939:7, 2939:20, 2942:12
**Dr** [9] - 2940:1, 2940:15, 2940:20, 2940:25, 2941:1, 2948:21, 2949:8, 2950:7, 2956:19
**dragging** [1] - 2962:18
**drain** [1] - 2953:8
**drawn** [1] - 2936:5
**due** [1] - 2946:4
**during** [2] - 2944:22, 2945:5
**duty** [1] - 2922:12

## E

**early** [1] - 2949:7
**easier** [1] - 2952:23
**easily** [3] - 2937:21, 2940:23, 2941:1
**easy** [1] - 2962:7
**eating** [1] - 2937:13
**economics** [3] - 2950:11, 2950:13, 2950:15
**educated** [1] - 2941:2
**effect** [2] - 2945:20, 2961:12
**efficiency** [3] - 2959:1, 2962:12, 2962:17
**effort** [1] - 2946:13
**eight** [9] - 2929:6, 2943:24, 2944:7, 2944:18, 2949:5, 2949:6, 2952:5, 2952:7, 2962:3

**either** [7] - 2929:10, 2939:24, 2940:8, 2942:5, 2942:21, 2943:10, 2955:21
**elements** [2] - 2934:17, 2937:10
**eliminate** [1] - 2956:22
**Elms** [1] - 2933:1
**ELMS** [1] - 2933:2
**embarrassed** [3] - 2949:23, 2949:24, 2958:16
**end** [8] - 2934:1, 2935:25, 2939:24, 2941:4, 2942:7, 2943:9, 2964:4, 2965:3
**enforcement** [1] - 2934:14
**enters** [1] - 2927:23
**entire** [2] - 2943:10, 2943:11
**entirety** [1] - 2948:5
**entitled** [5] - 2943:22, 2947:9, 2947:18, 2951:11, 2951:14
**equitable** [3] - 2934:13, 2938:16, 2942:13
**equivalent** [3] - 2939:6, 2940:2, 2941:7
**equivalents** [3] - 2929:4, 2939:4, 2940:4
**error** [1] - 2957:23
**errors** [1] - 2957:16
**et** [1] - 2944:3
**evans** [1] - 2932:24
**EVANS** [1] - 2932:25
**evidence** [28] - 2928:22, 2929:2, 2929:8, 2929:15, 2930:12, 2934:19, 2934:25, 2935:11, 2935:18, 2936:2, 2936:5, 2937:18, 2938:15, 2939:5, 2939:23, 2940:1, 2940:16, 2940:19, 2941:3, 2943:21, 2944:12, 2947:9, 2947:18, 2947:24, 2948:3, 2948:8, 2960:20, 2961:18
**evidently** [1] - 2937:23
**exactly** [6] - 2940:5, 2945:20, 2945:22, 2947:6, 2947:14, 2955:12
**examination** [1] - 2957:3
**examiner** [3] - 2937:24, 2938:8, 2938:10
**example** [1] - 2958:9
**except** [2] - 2950:22, 2962:3
**exceptional** [7] - 2959:7, 2959:10, 2961:3, 2963:6, 2963:9, 2963:12, 2963:16
**excused** [1] - 2933:14
**Exhibit** [1] - 2937:8
**exist** [1] - 2951:5
**exits** [1] - 2933:16
**expense** [1] - 2957:14
**expert** [6] - 2946:6, 2950:19, 2951:5, 2951:7, 2953:6, 2957:9
**expert's** [1] - 2947:20
**experts** [1] - 2951:15
**explain** [2] - 2923:10, 2940:8
**explained** [1] - 2941:2
**exposition** [1] - 2934:7
**expressed** [1] - 2940:1
**extent** [1] - 2955:10

## F

**F.3d** [1] - 2956:8
**faced** [2] - 2940:23, 2948:25
**fact** [13] - 2928:19, 2938:6, 2939:18, 2944:12, 2946:22, 2950:4, 2951:15, 2952:3, 2955:7, 2956:21, 2960:20, 2963:3, 2964:14
**facts** [1] - 2951:4
**factual** [3] - 2952:17, 2952:20, 2963:17
**failure** [1] - 2934:2
**fair** [1] - 2924:7
**fairly** [1] - 2956:14
**fairness** [2] - 2962:13, 2962:14
**fast** [1] - 2964:1
**favored** [1] - 2940:10
**Fed** [2] - 2934:11, 2956:8
**Federal** [1] - 2934:6
**fee** [2] - 2938:6
**fees** [5] - 2959:8, 2959:10, 2959:22, 2961:3, 2963:8
**feet** [1] - 2948:13
**felt** [1] - 2956:15
**few** [1] - 2927:2
**figures** [1] - 2956:10
**file** [1] - 2939:12
**filed** [1] - 2964:11
**files** [1] - 2939:12
**filing** [1] - 2959:10
**fill** [2] - 2928:13, 2946:25
**final** [2] - 2948:18, 2954:17
**finally** [1] - 2956:3
**findings** [1] - 2933:9
**fine** [1] - 2926:6
**finish** [5] - 2941:18, 2941:19, 2954:2, 2963:5
**firm** [1] - 2965:9
**first** [6] - 2935:14, 2937:24, 2946:2, 2950:24, 2958:1, 2958:10
**five** [2] - 2936:10, 2952:7
**fix** [1] - 2953:21
**flat** [1] - 2946:4
**focus** [1] - 2950:23
**focused** [1] - 2942:2
**followed** [1] - 2934:8
**following** [5] - 2928:23, 2929:2, 2929:8, 2929:15, 2930:12
**FOREGOING** [1] - 2966:13
**FOREPERSON** [3] - 2928:1, 2928:4, 2928:11
**forget** [1] - 2943:13
**form** [12] - 2931:17, 2931:23, 2944:1, 2944:3, 2945:8, 2945:9, 2946:18, 2948:19, 2949:3, 2952:13, 2955:22, 2956:10
**forms** [1] - 2949:6
**forward** [3] - 2942:11, 2943:15, 2944:17
**four** [3] - 2930:25, 2939:2, 2958:22

3284

**frame** [1] - 2951:25
**freedom** [4] - 2949:15, 2955:5, 2955:17
**freedom-to-operate** [2] - 2949:15, 2955:17
**freedom-to-use** [2] - 2955:5, 2955:17
**fresh** [1] - 2965:11
**FRIDAY** [1] - 2922:2
**FROM** [1] - 2966:13
**front** [1] - 2954:5
**full** [1] - 2965:16
**functions** [1] - 2937:14
**fundamentally** [1] - 2952:9
**future** [14] - 2931:24, 2934:22, 2945:12, 2949:10, 2949:19, 2950:8, 2951:7, 2951:10, 2952:22, 2951:25, 2953:4, 2954:24, 2957:1, 2961:24

## G

**Gee** [3] - 2922:18, 2950:6, 2956:23
**generally** [1] - 2924:23
**gentlemen** [2] - 2928:16, 2933:6
**given** [4] - 2925:5, 2942:24, 2957:12, 2965:22
**goal** [1] - 2955:23
**grant** [3] - 2941:16, 2949:22, 2963:12
**granted** [2] - 2942:12, 2960:3
**great** [1] - 2939:16
**groups** [11] - 2928:25, 2929:6, 2943:25, 2944:8, 2944:18, 2949:5, 2952:5, 2952:8, 2958:4, 2962:3
**guess** [7] - 2937:17, 2941:17, 2948:19, 2950:9, 2953:9, 2954:3, 2959:13
**guidance** [1] - 2957:24
**guide** [7] - 2930:2, 2930:5, 2930:8, 2930:24, 2931:2, 2931:6, 2931:14

## H

**half** [1] - 2961:20
**hall** [1] - 2926:23
**hand** [2] - 2928:5, 2957:25
**handled** [1] - 2957:18
**handles** [1] - 2953:3
**handmade** [2] - 2940:24, 2940:25
**handwritten** [1] - 2924:18
**hard** [2] - 2951:12, 2958:22
**harm** [1] - 2948:2
**harmful** [1] - 2957:23
**Hawaii** [1] - 2965:7
**heard** [6] - 2944:13, 2945:25, 2947:4, 2950:16, 2964:10, 2964:19
**help** [1] - 2963:16
**HEREBY** [1] - 2966:12
**higher** [5] - 2922:17, 2949:22, 2957:21, 2958:9, 2959:2
**himself** [1] - 2935:24
**hint** [1] - 2937:19
**hire** [1] - 2965:9

**holds** [1] - 2957:23
**home** [1] - 2962:19
**HON** [1] - 2922:3
**Honda** [1] - 2934:10
**Honor** [40] - 2923:3, 2923:17, 2923:24, 2924:10, 2924:24, 2925:15, 2925:23, 2926:6, 2926:7, 2928:14, 2928:15, 2932:6, 2943:3, 2943:17, 2944:7, 2944:23, 2946:1, 2946:20, 2948:9, 2949:11, 2950:9, 2951:1, 2951:24, 2952:15, 2953:9, 2953:20, 2954:1, 2954:10, 2958:6, 2960:6, 2960:19, 2961:7, 2962:1, 2962:5, 2962:11, 2963:20, 2964:4, 2964:6, 2965:13, 2965:19
**Honor's** [1] - 2963:11
**hoped** [1] - 2940:13
**hours** [1] - 2927:22
**huge** [1] - 2964:9
**hundred** [1] - 2954:22
**hung** [1] - 2922:8
**hypothetical** [3] - 2951:3, 2951:9, 2957:2

## I

**idea** [3] - 2949:9, 2953:8, 2955:23
**ii** [2] - 2936:22
**imagine** [1] - 2943:9
**immediately** [1] - 2942:18
**important** [1] - 2938:19
**Inc** [7] - 2928:21, 2934:5, 2934:9, 2934:10, 2956:6, 2956:7, 2956:8
**include** [1] - 2939:6
**included** [2] - 2943:24, 2947:11
**includes** [1] - 2937:8
**including** [1] - 2956:10
**inclusion** [1] - 2960:10
**incorporate** [2] - 2944:21, 2954:23
**incorporated** [2] - 2943:23, 2947:19
**index** [3] - 2936:19, 2936:20, 2937:1
**indicated** [2] - 2953:1, 2953:2
**indication** [2] - 2935:23, 2937:17
**inequitable** [5] - 2933:25, 2934:13, 2938:2, 2938:16, 2942:13
**inference** [1] - 2936:5
**information** [3] - 2934:16, 2935:9, 2936:9
**informing** [1] - 2955:3
**infringe** [4] - 2932:1, 2944:5, 2944:8, 2962:4
**infringed** [1] - 2925:14
**infringement** [8] - 2939:3, 2939:25, 2944:19, 2947:1, 2947:13, 2950:24, 2956:11, 2956:12
**infringer** [1] - 2934:15
**infringes** [2] - 2928:23, 2929:2
**infringing** [1] - 2947:22
**initialed** [2] - 2928:9, 2932:3
**initiate** [3] - 2939:15, 2940:18, 2941:6

**initiated** [1] - 2939:21
**instead** [1] - 2924:17
**instructed** [3] - 2943:18, 2943:20, 2944:6
**instruction** [12] - 2923:18, 2944:15, 2944:18, 2945:6, 2947:17, 2948:4, 2952:2, 2953:6, 2953:13, 2956:23, 2960:16, 2960:19
**instructions** [5] - 2922:13, 2943:20, 2945:8, 2945:18, 2955:10
**insufficient** [1] - 2939:5
**intend** [1] - 2963:19
**intended** [1] - 2962:19
**intent** [11] - 2934:17, 2934:18, 2934:24, 2935:14, 2935:22, 2936:1, 2936:4, 2936:19, 2937:18, 2938:15, 2946:3
**interest** [4] - 2959:11, 2959:12, 2959:20, 2961:4
**interested** [1] - 2963:21
**interpret** [1] - 2956:9
**introduced** [1] - 2949:16
**invalid** [3] - 2929:9, 2929:16, 2930:13
**invalidated** [1] - 2935:3
**invalidating** [1] - 2935:5
**invalidity** [1] - 2935:9
**invention** [9] - 2923:3, 2923:5, 2923:16, 2924:5, 2924:20, 2925:11, 2926:4, 2951:13
**inventions** [4] - 2922:16, 2922:23, 2924:21, 2926:4
**investigating** [1] - 2964:16
**involving** [1] - 2935:17
**iPads** [3] - 2948:11, 2948:14, 2950:12
**iPhone** [1] - 2948:12
**iPhones** [3] - 2948:12, 2948:14, 2950:12
**iPod** [3] - 2947:3, 2948:14, 2950:12
**ipse** [2] - 2940:20, 2941:5
**IS** [1] - 2966:13
**issuance** [1] - 2935:10
**issue** [14] - 2925:16, 2933:25, 2939:1, 2946:21, 2955:8, 2956:14, 2957:6, 2959:24, 2960:7, 2962:16, 2963:7, 2964:5, 2964:8, 2964:9
**issued** [2] - 2938:6, 2938:13
**issues** [6] - 2941:18, 2942:20, 2960:6, 2961:5, 2962:23
**item** [2] - 2938:19, 2941:4
**itself** [1] - 2945:18
**iTunes** [9] - 2941:12, 2943:23, 2946:9, 2947:5, 2947:10, 2947:21, 2960:11, 2960:12

## J

**JMOL** [4] - 2941:16, 2942:12, 2953:18, 2960:2
**JMOLs** [2] - 2942:4, 2958:15
**job** [2] - 2938:9, 2938:11
**judge** [1] - 2961:25

**judges** [1] - 2941:24
**judgment** [1] - 2964:24
**July** [1] - 2966:12
**JULY** [1] - 2922:2
**jump** [1] - 2942:21
**JUROR** [10] - 2932:11, 2932:13, 2932:15, 2932:17, 2932:19, 2932:21, 2932:23, 2932:25, 2933:2, 2933:4
**jurors** [1] - 2961:14
**jury** [53] - 2922:19, 2923:23, 2926:17, 2926:20, 2926:23, 2927:6, 2927:23, 2927:25, 2928:3, 2932:5, 2932:8, 2933:8, 2933:16, 2933:21, 2935:2, 2935:6, 2935:8, 2938:22, 2939:5, 2940:19, 2940:23, 2942:24, 2943:17, 2943:20, 2944:1, 2944:6, 2944:12, 2944:18, 2945:4, 2945:6, 2945:7, 2945:10, 2945:15, 2945:18, 2945:21, 2945:23, 2946:7, 2946:16, 2946:21, 2947:1, 2947:4, 2948:19, 2950:14, 2950:15, 2951:8, 2952:3, 2955:3, 2955:9, 2955:12, 2956:15, 2961:17, 2961:22
**JURY** [2] - 2922:2, 2922:4
**Jury** [3] - 2922:6, 2926:20, 2927:11

**K**

**keep** [2] - 2960:1, 2962:16
**keeping** [1] - 2948:17
**key** [1] - 2937:10
**keyboard** [1] - 2941:11
**kind** [2] - 2945:23, 2945:24
**Kit** [7] - 2930:3, 2930:6, 2930:9, 2930:25, 2931:3, 2931:7, 2931:15
**Kline** [1] - 2932:22
**KLINE** [1] - 2932:23
**known** [3] - 2935:19, 2936:24, 2955:20

**L**

**laches** [4] - 2941:19, 2942:14, 2960:7, 2963:5
**lack** [1] - 2938:14
**ladies** [2] - 2928:16, 2933:5
**lady** [1] - 2965:10
**laid** [1] - 2958:22
**language** [2] - 2946:17, 2953:22
**last** [2] - 2928:13, 2964:11
**late** [1] - 2926:7
**law** [17] - 2922:12, 2923:2, 2925:10, 2926:11, 2934:7, 2949:14, 2949:18, 2949:20, 2952:11, 2952:14, 2957:12, 2959:13, 2961:17, 2961:19, 2963:16, 2965:8, 2965:10
**lawyers** [2] - 2953:12, 2961:18
**layout** [1] - 2937:9
**lead** [3] - 2923:25, 2938:20, 2943:10
**least** [4] - 2924:12, 2940:12, 2957:3,

2957:23
**leave** [1] - 2927:5
**leaves** [1] - 2943:9
**left** [1] - 2959:7
**legally** [1] - 2944:16
**less** [1] - 2940:10
**less-favored** [1] - 2940:10
**letter** [1] - 2964:11
**level** [2] - 2940:12, 2951:15
**license** [4] - 2949:15, 2951:23, 2955:5, 2955:17
**light** [4] - 2929:17, 2930:14, 2944:15, 2957:7
**likely** [2] - 2952:25, 2960:22
**likewise** [2] - 2937:2, 2958:15
**limitation** [1] - 2945:13
**limitations** [2] - 2926:9, 2939:8
**limited** [2] - 2944:7, 2944:8
**limits** [1] - 2962:21
**line** [1] - 2922:14
**lines** [1] - 2924:19
**lining** [1] - 2923:9
**link** [1] - 2955:15
**list** [2] - 2937:4, 2957:15
**listed** [8] - 2929:10, 2929:18, 2930:15, 2936:19, 2936:21, 2937:7, 2937:12, 2943:25
**listen** [2] - 2928:18, 2961:15
**lists** [1] - 2936:22
**literally** [2] - 2924:2, 2928:22
**loading** [1] - 2937:11
**Loeb** [2] - 2931:13, 2931:15
**look** [13] - 2924:15, 2935:14, 2937:25, 2938:21, 2946:11, 2951:12, 2951:14, 2952:11, 2952:24, 2958:23, 2960:1, 2961:21, 2961:25
**looked** [5] - 2936:23, 2938:23, 2941:3, 2950:3, 2951:22
**looking** [2] - 2951:4, 2954:4
**losing** [1] - 2965:18
**lottery** [1] - 2965:6
**lousy** [1] - 2938:9
**lower** [2] - 2940:9, 2940:12
**lower-down** [1] - 2940:9
**lump** [30] - 2931:20, 2931:23, 2942:25, 2944:2, 2944:3, 2945:10, 2945:15, 2945:22, 2948:21, 2949:19, 2950:5, 2950:16, 2952:12, 2952:13, 2952:16, 2953:2, 2953:8, 2954:19, 2954:25, 2955:5, 2955:19, 2956:14, 2956:20, 2957:8, 2957:13, 2957:24, 2963:1, 2963:2
**lump-sum** [9] - 2931:20, 2931:23, 2944:3, 2952:16, 2953:8, 2955:19, 2957:13, 2963:1, 2963:2
**lunch** [4] - 2927:13, 2927:14, 2927:18, 2927:19

**M**

**machine** [2] - 2937:13, 2937:15
**main** [1] - 2939:19
**manual** [18] - 2929:11, 2929:21, 2929:24, 2929:25, 2930:1, 2930:10, 2930:18, 2930:21, 2930:22, 2930:23, 2931:8, 2931:12, 2934:3, 2936:7, 2936:11, 2936:16, 2936:17, 2938:18
**margin** [1] - 2951:19
**material** [6] - 2934:16, 2935:4, 2935:10, 2935:20, 2935:24, 2937:6
**materiality** [5] - 2934:18, 2934:25, 2935:22, 2935:23, 2938:18
**matter** [9] - 2922:18, 2928:20, 2935:2, 2942:23, 2949:18, 2954:7, 2957:12, 2959:13, 2959:22
**mean** [28] - 2922:23, 2924:1, 2945:1, 2947:16, 2948:20, 2948:22, 2948:24, 2949:2, 2949:17, 2949:23, 2950:2, 2950:3, 2950:23, 2956:12, 2956:13, 2956:18, 2957:4, 2958:17, 2959:13, 2959:17, 2959:25, 2960:5, 2962:15, 2962:20, 2964:2, 2965:1, 2965:9, 2965:25
**means** [1] - 2939:14
**meant** [2] - 2940:11, 2940:13
**meet** [1] - 2964:16
**meets** [1] - 2939:6
**members** [1] - 2932:8
**memory** [3] - 2939:12, 2939:13, 2965:16
**mention** [1] - 2959:9
**mentioned** [2] - 2923:8, 2936:16, 2941:8
**mentions** [1] - 2947:20
**middle** [2] - 2946:22, 2964:2
**might** [7] - 2923:25, 2934:21, 2944:13, 2954:13, 2958:8, 2959:1
**million** [4] - 2932:2, 2954:22, 2954:23, 2955:14
**millions** [1] - 2957:1
**mind** [5] - 2948:17, 2950:18, 2956:19, 2960:1, 2962:16
**minutes** [1] - 2927:2
**misconception** [1] - 2954:15
**misled** [1] - 2955:1
**misrepresented** [1] - 2934:16
**missing** [1] - 2936:24
**modifying** [1] - 2937:14
**moment** [2] - 2944:25, 2960:6
**money** [3] - 2931:22, 2944:3, 2963:13
**moot** [1] - 2957:25
**Morgan** [1] - 2932:18
**MORGAN** [1] - 2932:19
**most** [9] - 2934:7, 2935:16, 2936:4, 2937:4, 2937:5, 2941:24, 2942:6, 2942:7
**motion** [3] - 2953:19, 2959:11, 2963:12

**motions** [6] - 2927:1, 2939:2, 2940:21, 2941:23, 2942:6, 2964:22
**Motor** [1] - 2934:10
**Motorola** [1] - 2964:11
**mouse** [1] - 2941:11
**move** [1] - 2963:23
**moved** [1] - 2965:6
**moving** [2] - 2943:15, 2944:16
**MR** [57] - 2923:2, 2923:14, 2923:17, 2923:24, 2924:7, 2924:8, 2924:10, 2924:14, 2924:23, 2925:7, 2925:10, 2925:13, 2925:15, 2925:19, 2925:22, 2925:23, 2926:6, 2926:7, 2928:14, 2928:15, 2932:6, 2943:2, 2943:6, 2943:17, 2944:23, 2945:25, 2946:20, 2948:5, 2948:9, 2949:11, 2950:9, 2951:1, 2951:14, 2953:9, 2953:24, 2953:25, 2954:9, 2958:5, 2959:4, 2959:9, 2959:15, 2960:5, 2960:18, 2960:25, 2961:6, 2961:9, 2962:8, 2962:10, 2963:10, 2963:19, 2964:3, 2964:5, 2964:8, 2964:25, 2965:12, 2965:17, 2966:5
**Mullendore** [2] - 2942:4, 2943:8
**Musicshop** [6] - 2929:24, 2930:1, 2930:9, 2930:21, 2930:23, 2931:7
**must** [9] - 2931:3, 2934:18, 2934:23, 2934:25, 2935:18, 2936:4, 2939:20, 2943:20, 2947:17

## N

**nature** [1] - 2951:3
**Nawrocki** [5] - 2948:6, 2948:10, 2951:18, 2953:6, 2960:20
**Nawrocki's** [1] - 2948:7
**need** [8] - 2933:23, 2938:18, 2942:22, 2946:11, 2963:4, 2963:14, 2963:22
**needed** [2] - 2956:24, 2957:2
**needs** [7] - 2923:5, 2923:16, 2938:11, 2952:15, 2956:23, 2960:2, 2965:14
**negotiation** [4] - 2950:24, 2951:4, 2951:9, 2957:2
**negotiations** [1] - 2951:23
**neighborhood** [1] - 2964:13
**never** [4] - 2926:24, 2938:12, 2950:18, 2950:20
**nevertheless** [1] - 2946:17
**new** [2] - 2947:3, 2954:24
**next** [13] - 2926:14, 2933:24, 2937:11, 2942:15, 2942:17, 2942:20, 2945:20, 2947:14, 2950:12, 2952:8, 2956:22, 2965:9, 2965:22
**night** [1] - 2964:12
**nonaccused** [1] - 2947:5
**noncore** [2] - 2960:10
**nondisclosure** [1] - 2935:17
**normally** [3] - 2959:14, 2959:19, 2959:21
**NOT** [1] - 2922:4

**not..** [1] - 2925:9
**note** [6] - 2923:22, 2924:13, 2925:25, 2926:15, 2926:19, 2928:8
**Note** [3] - 2922:6, 2926:20, 2927:12
**noted** [1] - 2939:19
**NOTES** [1] - 2922:1
**nothing** [2] - 2961:18, 2962:5
**notice** [2] - 2938:5, 2938:6
**notify** [1] - 2935:25
**Number** [13] - 2922:6, 2926:20, 2927:12, 2928:21, 2929:7, 2929:14, 2930:11, 2931:17, 2931:20, 2931:22, 2934:15, 2944:1, 2955:22
**number** [4] - 2936:10, 2946:9, 2948:11, 2958:23
**Numeral** [2] - 2936:21, 2936:22
**numerous** [1] - 2946:8

## O

**object** [1] - 2954:12
**objected** [3] - 2946:14, 2955:11, 2955:21
**objection** [10] - 2928:12, 2928:14, 2928:15, 2945:18, 2953:7, 2953:15, 2953:17, 2954:10, 2956:4, 2956:24
**objections** [2] - 2954:6
**obvious** [2] - 2929:17, 2930:14
**obviously** [8] - 2924:25, 2934:12, 2938:19, 2951:8, 2956:12, 2960:7, 2962:16, 2966:4
**occurred** [1] - 2951:24
**October** [2] - 2950:25, 2951:4
**odd** [1] - 2962:16
**oddly** [1] - 2936:14
**OF** [1] - 2966:14
**offering** [1] - 2955:13
**officer** [2] - 2928:6, 2933:15
**OFFICER** [1] - 2927:8
**ON** [1] - 2966:12
**once** [2] - 2953:3, 2958:21
**one** [36] - 2922:18, 2923:12, 2924:10, 2925:6, 2925:13, 2933:12, 2933:25, 2936:11, 2936:13, 2937:10, 2938:13, 2938:20, 2938:22, 2939:1, 2939:7, 2939:13, 2939:17, 2939:18, 2940:24, 2941:4, 2942:5, 2942:17, 2943:8, 2951:17, 2955:24, 2955:25, 2958:19, 2960:7, 2960:23, 2961:10, 2961:13, 2961:14, 2962:7, 2964:5, 2965:19, 2966:4
**ones** [1] - 2938:23
**ongoing** [1] - 2956:11
**open** [2] - 2926:17, 2966:4
**OPEN** [1] - 2922:4
**operate** [2] - 2949:15, 2955:17
**operational** [1] - 2937:9
**opinion** [3] - 2940:2, 2940:20, 2955:20
**opinions** [1] - 2950:4
**opportunity** [4] - 2923:22, 2950:6,

2952:10, 2964:20
**opposed** [1] - 2951:9
**order** [3] - 2939:17, 2941:9, 2946:25
**orders** [1] - 2939:18
**ordinary** [2] - 2939:17, 2930:14
**ought** [1] - 2922:21
**outside** [2] - 2946:23, 2946:24
**outstanding** [1] - 2960:6
**overburdened** [1] - 2937:23
**overstate** [1] - 2924:25
**overworked** [1] - 2937:22
**own** [1] - 2947:20

## P

**p.m** [7] - 2926:16, 2927:13, 2927:23, 2933:16, 2933:19, 2966:10
**package** [1] - 2962:23
**page** [8] - 2928:13, 2937:7, 2939:19, 2943:19, 2946:22, 2947:7, 2954:17, 2955:22
**pages** [5] - 2936:8, 2936:21, 2937:6, 2949:6
**paid** [1] - 2938:7
**paragraph** [5] - 2943:19, 2946:3, 2947:7, 2954:7, 2955:21
**part** [3] - 2935:15, 2936:16, 2947:12
**partial** [1] - 2937:16
**particular** [2] - 2935:6, 2963:17
**PARTIES** [1] - 2922:4
**parties** [2] - 2926:17, 2957:14
**party** [1] - 2926:8
**past** [3] - 2931:23, 2953:2, 2956:11
**patent** [14] - 2922:7, 2923:5, 2924:4, 2926:3, 2928:23, 2929:3, 2929:16, 2930:13, 2934:4, 2934:14, 2935:10, 2938:8, 2938:12, 2939:4
**patents** [7] - 2922:14, 2922:22, 2926:1, 2926:9, 2929:9, 2929:12, 2936:10
**patents-in-suit** [1] - 2929:9
**pending** [1] - 2933:21
**people** [4] - 2940:10, 2940:11, 2943:12
**per** [1] - 2954:19
**per-unit** [1] - 2954:19
**perhaps** [3] - 2935:16, 2960:8, 2960:12
**period** [1] - 2965:2
**permission** [1] - 2963:11
**person** [7] - 2929:17, 2930:14, 2937:21, 2961:14, 2961:15, 2961:16, 2965:10
**Personal** [7] - 2928:20, 2931:25, 2932:4, 2939:25, 2940:14, 2943:21, 2944:4, 2946:23, 2947:18, 2953:5, 2956:22, 2964:10
**PERSONAL** [1] - 2922:1
**personally** [1] - 2926:24
**pertinent** [1] - 2937:5
**Perusing** [1] - 2928:7
**phase** [1] - 2945:6

**phrase** [1] - 2936:3
**piece** [1] - 2948:3
**place** [1] - 2958:10
**plaintiff** [1] - 2939:25
**plaintiff's** [1] - 2946:5
**plan** [1] - 2964:23
**planning** [2] - 2942:10, 2943:15
**playback** [2] - 2937:13, 2937:15
**player** [3] - 2939:14, 2939:21
**playing** [1] - 2937:11
**playlist** [3] - 2937:10, 2937:11, 2937:13
**playlists** [1] - 2937:14
**plug** [1] - 2941:10
**plurality** [1] - 2939:11
**podium** [1] - 2926:25
**point** [14] - 2938:11, 2946:14, 2947:16, 2948:3, 2948:5, 2949:18, 2953:11, 2955:25, 2956:13, 2960:22, 2961:10, 2963:8, 2963:17, 2966:1
**pointed** [1] - 2953:20
**points** [2] - 2935:8, 2957:20
**polled** [1] - 2932:5
**port** [2] - 2939:7, 2940:5
**portion** [1] - 2951:12
**position** [3] - 2949:12, 2960:15, 2965:5
**possibilities** [1] - 2949:9
**posthac** [1] - 2945:23
**potentials** [1] - 2957:1
**practical** [1] - 2957:11
**precise** [2] - 2946:23, 2953:11
**precluded** [1] - 2944:16
**prejudgment** [4] - 2959:11, 2959:12, 2959:20, 2961:4
**prejudice** [4] - 2948:2, 2954:11, 2954:13, 2955:8
**prejudiced** [1] - 2953:14
**prepared** [1] - 2943:4
**preponderance** [4] - 2928:22, 2929:1, 2935:11, 2940:1
**PRESENT** [2] - 2922:4, 2922:5
**present** [6] - 2926:17, 2926:18, 2945:3, 2947:23, 2952:10, 2957:21
**presentation** [3] - 2962:22, 2963:1, 2963:2
**presented** [6] - 2941:3, 2956:15, 2956:17, 2956:20, 2957:6, 2962:25
**PRESIDING** [1] - 2922:3
**pretrial** [1] - 2948:18
**pretty** [5] - 2923:2, 2942:18, 2949:12, 2951:8, 2962:23
**prevail** [1] - 2934:14
**prevailing** [2] - 2959:20, 2959:21
**prevails** [1] - 2966:3
**prevented** [1] - 2948:15
**price** [1] - 2951:19
**problem** [4] - 2923:19, 2946:5, 2950:7, 2953:13
**problems** [4] - 2938:1, 2956:25, 2961:13, 2963:24
**proceeding** [1] - 2952:18

**Proceedings** [1] - 2966:10
**PROCEEDINGS** [1] - 2966:14
**process** [1] - 2964:15
**produced** [1] - 2964:21
**product** [5] - 2943:24, 2947:4, 2947:10, 2947:22, 2958:4
**products** [19] - 2931:24, 2939:6, 2943:25, 2944:9, 2944:17, 2945:11, 2945:16, 2946:24, 2946:25, 2947:14, 2947:23, 2949:15, 2950:17, 2950:19, 2952:19, 2960:10, 2961:12, 2961:24
**profit** [2] - 2951:19, 2951:20
**profits** [2] - 2943:23, 2947:19
**program** [3] - 2939:11, 2940:12, 2941:12
**projections** [1] - 2952:14
**proof** [2] - 2934:19, 2942:8
**proposed** [2] - 2923:22, 2948:19
**prosecution** [1] - 2934:3
**prosecutor** [2] - 2938:8, 2938:12
**protect** [1] - 2960:17
**protocol** [1] - 2940:17
**prove** [1] - 2934:15
**proven** [2] - 2934:18, 2938:17
**provide** [3] - 2922:13, 2923:13, 2935:25
**providing** [1] - 2964:12
**PTO** [5] - 2934:17, 2934:24, 2936:7, 2937:21, 2938:1
**PTO's** [1] - 2935:11
**published** [2] - 2928:17, 2932:9
**pulled** [1] - 2938:4
**purposes** [1] - 2944:10
**push** [1] - 2936:13
**put** [6] - 2938:22, 2946:12, 2950:18, 2955:8, 2957:14, 2958:21
**putting** [1] - 2963:9
**PX** [1] - 2936:8

## Q

**questions** [1] - 2961:21
**quick** [1] - 2942:18
**quickly** [5] - 2943:15, 2953:17, 2963:22, 2963:24, 2964:24
**quite** [4] - 2934:22, 2955:20, 2956:13, 2957:18
**quote** [2] - 2922:9
**quoted** [1] - 2946:21

## R

**raised** [2] - 2938:3, 2953:15
**range** [1] - 2944:9
**rather** [1] - 2935:6
**reached** [2] - 2926:20, 2927:25
**read** [6] - 2926:1, 2928:18, 2943:18, 2948:20, 2954:16, 2961:18
**reading** [3] - 2935:17, 2939:3, 2944:2

**real** [3] - 2940:4, 2946:5, 2955:8
**really** [6] - 2938:9, 2951:5, 2960:3, 2962:24, 2963:14, 2965:3
**reason** [2] - 2945:22, 2956:24
**reasonable** [5] - 2931:18, 2931:23, 2936:4, 2938:20, 2940:19, 2950:24
**reasoning** [1] - 2945:19
**receive** [1] - 2926:22
**received** [2] - 2943:23, 2947:20
**recent** [2] - 2934:7, 2939:3
**recess** [3] - 2926:14, 2926:23, 2933:17
**Recess** [1] - 2926:16, 2933:19
**RECORD** [1] - 2966:14
**record** [5] - 2925:24, 2927:11, 2928:8, 2961:9, 2963:18
**reference** [5] - 2934:3, 2935:3, 2935:4, 2935:20, 2938:7
**references** [8] - 2929:10, 2929:18, 2930:15, 2936:7, 2936:11, 2941:19, 2946:8, 2946:10
**regarding** [19] - 2928:24, 2929:5, 2929:12, 2929:19, 2929:21, 2929:23, 2929:25, 2930:2, 2930:8, 2930:16, 2930:18, 2930:20, 2930:22, 2930:24, 2931:2, 2931:6, 2931:10, 2931:12, 2931:14
**regards** [1] - 2930:5
**rejects** [1] - 2935:9
**reliance** [1] - 2960:11
**relied** [1] - 2951:15
**rely** [1] - 2960:21
**relying** [1] - 2960:16
**remain** [1] - 2927:2
**remember** [4] - 2933:8, 2952:8, 2953:7, 2956:3
**remittiture** [1] - 2960:9
**replacing** [1] - 2965:8
**report** [2] - 2948:6, 2948:7
**REPORTER'S** [2] - 2922:1, 2966:11
**reports** [1] - 2948:20
**representing** [1] - 2956:11
**request** [5] - 2922:9, 2939:14, 2939:21, 2940:6, 2940:18
**require** [1] - 2958:11
**requires** [1] - 2925:13
**Resource** [7] - 2930:3, 2930:6, 2930:9, 2930:25, 2931:3, 2931:7, 2931:15
**respect** [1] - 2945:20
**respective** [1] - 2965:6
**respects** [1] - 2932:9
**response** [2] - 2923:4, 2963:23
**responses** [1] - 2944:24
**result** [2] - 2954:12, 2956:1
**review** [2] - 2923:22, 2941:18
**reviewed** [1] - 2941:23
**rid** [1] - 2922:21
**robe** [2] - 2961:16, 2961:17
**Roman** [2] - 2936:21, 2936:22
**RON** [1] - 2922:3
**room** [2] - 2927:6, 2961:22

**round** [1] - 2952:19
**royalty** [8] - 2931:17, 2931:18, 2931:21, 2931:23, 2944:3, 2946:15, 2954:19, 2956:20
**rubric** [1] - 2947:13
**Ruffin** [1] - 2946:2
**ruling** [7] - 2934:21, 2958:1, 2958:2, 2958:25, 2961:7, 2963:7, 2965:23
**rulings** [4] - 2933:21, 2941:25, 2955:18, 2961:2
**run** [1] - 2962:21
**running** [4] - 2946:15, 2954:19, 2956:20, 2963:25

# S

**sales** [3] - 2931:24, 2948:11, 2951:8
**satisfied** [1] - 2940:3
**scale** [2] - 2934:21, 2935:21
**scheduled** [2] - 2950:20, 2952:19
**scheduling** [1] - 2963:24
**school** [1] - 2965:10
**SCHUTZ** [30] - 2923:2, 2923:14, 2924:8, 2925:10, 2925:13, 2925:19, 2925:22, 2926:6, 2928:14, 2932:6, 2943:2, 2943:6, 2943:17, 2945:25, 2948:5, 2948:9, 2949:11, 2950:9, 2951:14, 2953:24, 2959:4, 2959:9, 2959:15, 2961:6, 2961:9, 2962:8, 2962:10, 2963:10, 2963:19, 2964:3
**Schutz** [11] - 2947:15, 2953:10, 2954:13, 2955:1, 2959:1, 2961:2, 2961:23, 2964:11, 2964:17, 2965:4, 2966:3
**Schutz's** [5] - 2944:24, 2946:19, 2954:16, 2955:16
**screen** [1] - 2937:9
**searching** [1] - 2941:13
**second** [2] - 2923:12, 2944:17
**secret** [1] - 2950:3
**Section** [1] - 2937:6
**section** [1] - 2937:12
**sections** [3] - 2936:23, 2937:2, 2937:8
**security** [2] - 2928:6, 2933:15
**SECURITY** [1] - 2927:8
**see** [11] - 2923:9, 2936:8, 2938:21, 2940:23, 2941:1, 2949:2, 2959:6, 2959:24, 2965:24, 2965:25, 2966:6
**seeking** [1] - 2941:13
**selected** [1] - 2938:23
**sell** [1] - 2954:22
**sense** [3] - 2923:18, 2942:16, 2957:20
**sent** [6] - 2936:6, 2936:19, 2936:20, 2937:1, 2941:10, 2966:3
**separate** [17] - 2922:8, 2922:16, 2922:22, 2922:23, 2923:3, 2923:5, 2923:15, 2924:4, 2924:21, 2925:11, 2925:19, 2925:21, 2926:3, 2939:11, 2939:12, 2939:13
**separated** [2] - 2944:10, 2949:1

**separately** [5] - 2923:6, 2923:16, 2925:2, 2925:5, 2925:9
**sequencing** [1] - 2939:12
**serious** [1] - 2965:4
**seriously** [1] - 2946:6
**servers** [1] - 2939:8
**service** [1] - 2933:8
**set** [4] - 2934:12, 2935:15, 2941:15, 2947:14
**sets** [1] - 2934:6
**several** [3] - 2933:21, 2939:17, 2953:1
**sharply** [1] - 2952:16
**Shilo** [1] - 2932:12
**SHILO** [1] - 2932:13
**shoes** [1] - 2949:23
**short** [1] - 2965:2
**show** [3] - 2924:16, 2935:18, 2957:1
**showing** [3] - 2934:24, 2935:22
**shows** [1] - 2936:8
**sic** [6] - 2940:2, 2940:5, 2940:16, 2946:2, 2958:2, 2958:12
**side** [6] - 2939:24, 2942:21, 2955:20, 2959:20, 2959:21, 2962:13
**side's** [1] - 2954:6
**sides** [3] - 2942:7, 2957:15, 2957:18
**signal** [1] - 2941:10
**similar** [1] - 2925:1
**simply** [2] - 2923:4, 2946:7
**single** [1] - 2936:4
**sitting** [1] - 2957:19
**situation** [2] - 2952:17, 2952:20
**six** [1] - 2949:5
**size** [1] - 2942:24
**skill** [3] - 2929:17, 2930:14, 2938:20
**sliding** [2] - 2934:20, 2935:21
**slipping** [2] - 2947:4, 2947:5
**small** [2] - 2964:5, 2964:8
**Smith** [1] - 2932:14
**SMITH** [1] - 2932:15
**so-called** [2] - 2936:1, 2951:6
**someone** [2] - 2941:1, 2956:15
**sometime** [1] - 2964:2
**sometimes** [1] - 2943:12
**Sony** [6] - 2929:20, 2929:22, 2930:6, 2930:17, 2930:19, 2931:3
**soon** [1] - 2941:21
**sorry** [1] - 2943:1
**sound** [2] - 2945:20, 2960:22
**Sound** [7] - 2930:2, 2930:5, 2930:8, 2930:24, 2931:2, 2931:6, 2931:14
**sounded** [1] - 2940:10
**source** [1] - 2961:17
**specific** [7] - 2934:17, 2934:24, 2935:14, 2936:1, 2936:3, 2936:7, 2936:20
**specifically** [2] - 2937:4, 2956:3
**specification** [4] - 2922:15, 2923:8, 2923:12, 2926:2
**spectacularly** [1] - 2939:23
**speculative** [1] - 2950:8

**spend** [1] - 2927:21
**spending** [2] - 2935:7, 2963:8
**spirit** [1] - 2962:11
**spite** [1] - 2963:3
**split** [1] - 2952:9
**squarely** [1] - 2955:9
**stage** [1] - 2953:18
**stand** [3] - 2948:10, 2960:13, 2960:21
**standard** [1] - 2935:11
**start** [2] - 2943:4, 2965:11
**started** [2] - 2934:2, 2938:4
**starting** [1] - 2965:11
**state** [2] - 2925:8, 2946:4
**statement** [7] - 2924:2, 2925:14, 2926:10, 2941:5, 2941:15, 2954:17
**States** [1] - 2933:11
**stayed** [1] - 2927:18
**stem** [2] - 2922:14, 2926:1
**STEPHENS** [9] - 2923:17, 2923:24, 2924:7, 2924:10, 2924:24, 2924:23, 2925:7, 2925:15, 2925:23
**still** [7] - 2924:1, 2940:14, 2941:18, 2942:1, 2942:14, 2959:25, 2965:15
**stood** [1] - 2961:11
**stop** [2] - 2938:9, 2946:11
**stopped** [1] - 2938:3
**straight** [1] - 2949:19
**street** [1] - 2962:18
**strenuously** [1] - 2949:13
**strike** [1] - 2946:7
**strong** [2] - 2935:22, 2948:23
**subject** [3] - 2944:19, 2952:19, 2964:14
**submit** [1] - 2963:7
**submitted** [1] - 2948:19
**substance** [1] - 2933:11
**suddenly** [2] - 2965:6, 2965:7
**suggested** [2] - 2923:18, 2955:15
**suggesting** [1] - 2945:2
**suit** [1] - 2929:9
**sum** [32] - 2931:20, 2931:22, 2931:23, 2942:25, 2944:2, 2944:3, 2945:10, 2945:15, 2945:22, 2948:21, 2949:19, 2950:5, 2950:16, 2952:12, 2952:13, 2952:16, 2953:2, 2953:8, 2954:19, 2954:20, 2954:25, 2955:5, 2955:19, 2956:20, 2957:8, 2957:13, 2957:24, 2963:1, 2963:2
**sums** [1] - 2956:14
**support** [2] - 2939:5, 2949:14
**supported** [1] - 2963:18
**supports** [1] - 2949:20
**suppose** [1] - 2938:7
**supposed** [2] - 2922:23, 2962:2
**suspend** [1] - 2965:21
**suspicion** [1] - 2964:18
**system** [8] - 2929:11, 2929:19, 2929:23, 2930:16, 2930:20, 2931:10, 2940:16, 2947:6
**System** [1] - 2956:7

## T

**talks** [3] - 2935:17, 2947:8, 2952:11
**team** [1] - 2943:11
**teams** [2] - 2943:13, 2965:6
**Technologies** [1] - 2956:7
**technology** [7] - 2943:22, 2947:3,
2947:10, 2947:11, 2947:19, 2954:22,
2960:11
**Telcordia** [1] - 2956:6
**ten** [1] - 2927:22
**terms** [5] - 2941:20, 2942:10, 2950:8,
2959:1, 2962:22
**test** [1] - 2949:24
**testifying** [1] - 2936:15
**testimony** [7] - 2940:9, 2943:21,
2946:5, 2947:9, 2947:18, 2953:5,
2958:12
**TEXAS** [1] - 2922:3
**text** [1] - 2945:18
**thank-you's** [1] - 2926:25
**THAT** [1] - 2966:12
**THE** [72] - 2922:6, 2923:7, 2923:20,
2924:3, 2924:9, 2924:12, 2924:15,
2925:3, 2925:8, 2925:12, 2925:17,
2925:20, 2925:25, 2926:12, 2926:19,
2927:9, 2927:17, 2927:24, 2928:1,
2928:2, 2928:4, 2928:5, 2928:11,
2928:12, 2928:16, 2932:4, 2932:7,
2932:12, 2932:14, 2932:16, 2932:18,
2932:20, 2932:22, 2932:24, 2933:1,
2933:3, 2933:5, 2933:17, 2933:20,
2943:4, 2943:7, 2946:2, 2947:15,
2948:7, 2948:17, 2949:17, 2950:22,
2951:2, 2952:22, 2954:3, 2955:18,
2958:7, 2959:5, 2959:12, 2959:17,
2960:15, 2960:23, 2961:1, 2961:8,
2962:6, 2962:9, 2962:15, 2963:14,
2963:21, 2964:7, 2964:23, 2965:1,
2965:14, 2965:22, 2966:6, 2966:13
**themselves** [1] - 2951:23
**theory** [1] - 2945:4
**Therasense** [3] - 2934:5, 2934:12,
2934:23
**therefore** [1] - 2941:12
**thereon** [1] - 2964:22
**they've** [1] - 2957:10
**thinking** [4] - 2922:24, 2942:23,
2943:1, 2956:23
**THIS** [1] - 2966:12
**three** [5] - 2929:20, 2929:22, 2929:24,
2930:1, 2930:3, 2930:7, 2930:10,
2943:13
**Thursday** [3] - 2964:4, 2964:25,
2965:12
**today** [1] - 2927:19
**today's** [1] - 2928:10
**together** [1] - 2963:9
**top** [2] - 2939:2, 2958:22
**total** [1] - 2951:12

**touches** [3] - 2948:12, 2948:14,
2950:12
**tough** [3] - 2950:7, 2960:15, 2965:18
**towards** [1] - 2935:25
**train** [1] - 2938:4
**training** [1] - 2953:12
**TRANSCRIPT** [1] - 2966:13
**transcript** [1] - 2953:16
**transfer** [5] - 2939:15, 2940:18, 2941:6,
2941:13, 2941:14
**transferring** [1] - 2939:10
**translate** [1] - 2938:2
**trial** [19] - 2925:6, 2933:7, 2941:20,
2942:16, 2942:20, 2942:25, 2944:17,
2945:20, 2948:4, 2948:14, 2948:16,
2950:13, 2950:20, 2952:9, 2956:22,
2957:15, 2957:17, 2960:17, 2962:17
**TRIAL** [1] - 2922:2
**trials** [1] - 2950:10
**tried** [1] - 2951:5
**true** [4] - 2924:1, 2932:9, 2940:7,
2952:25
**try** [3] - 2943:14, 2947:23, 2951:7
**trying** [3] - 2936:25, 2943:12, 2950:22
**Tuesday** [1] - 2960:1
**turned** [1] - 2946:16
**tutorial** [1] - 2937:9
**two** [5] - 2933:22, 2949:1, 2965:15
**type** [2] - 2924:16, 2936:18
**typed** [1] - 2924:17

## U

**UBS** [5] - 2940:2, 2940:5, 2940:16,
2958:2, 2958:12
**Ugone** [4] - 2948:21, 2949:8, 2950:7,
2956:25
**unanimous** [2] - 2928:2, 2928:4
**under** [6] - 2929:3, 2935:11, 2939:3,
2940:3, 2941:7, 2943:8
**understood** [6] - 2946:21, 2946:22,
2947:1, 2947:6, 2947:11, 2955:2
**unfair** [1] - 2952:9
**unit** [1] - 2954:19
**United** [1] - 2933:11
**units** [2] - 2948:11, 2954:23
**unless** [2] - 2942:3, 2963:15
**up** [27] - 2922:8, 2922:17, 2934:8,
2935:5, 2936:16, 2938:10, 2938:12,
2941:20, 2941:21, 2942:2, 2942:11,
2942:22, 2949:7, 2951:19, 2953:8,
2954:12, 2956:2, 2957:21, 2957:23,
2958:18, 2961:11, 2962:24, 2963:5,
2964:24, 2965:14, 2965:25
**urge** [1] - 2962:13
**USB** [1] - 2958:6
**user's** [7] - 2930:2, 2930:5, 2930:8,
2930:24, 2931:2, 2931:6, 2931:14
**uses** [2] - 2936:3, 2949:10

## V

**valid** [1] - 2945:19
**verdict** [18] - 2926:21, 2926:22,
2927:25, 2928:2, 2928:17, 2928:19,
2932:8, 2932:9, 2939:5, 2942:24,
2945:8, 2946:18, 2949:3, 2955:19,
2956:10, 2957:23, 2960:12
**versus** [1] - 2928:21, 2934:5, 2934:9,
2956:7
**view** [4] - 2949:18, 2952:14, 2957:16,
2958:18
**vis** [2] - 2957:17
**vis-a-vis** [1] - 2957:17
**VOLUME** [1] - 2922:2

## W

**waived** [1] - 2958:21
**wants** [1] - 2949:8
**wasting** [1] - 2966:1
**ways** [1] - 2942:6
**weak** [1] - 2935:21
**week** [2] - 2962:19, 2964:2
**well-educated** [1] - 2941:2
**well-known** [1] - 2955:20
**WestLaw** [2] - 2934:6, 2934:10
**white** [1] - 2961:20
**Whoa** [1] - 2960:2
**whole** [3] - 2936:17, 2938:4, 2944:9
**Wicker** [1] - 2940:25
**wind** [3] - 2942:2, 2942:11, 2953:8
**Windows** [7] - 2930:3, 2930:6, 2930:9,
2930:25, 2931:3, 2931:7, 2931:15
**Wisdom** [4] - 2951:6, 2951:16,
2951:20, 2952:1
**withheld** [1] - 2935:9
**withhold** [1] - 2935:19
**witnesses** [3] - 2940:8, 2940:25,
2942:9
**won** [1] - 2965:6
**wondering** [1] - 2941:22
**word** [3] - 2924:24, 2925:16, 2925:22
**wording** [2] - 2954:8, 2955:21
**words** [4] - 2942:16, 2947:25, 2951:16,
2962:1
**worry** [2] - 2962:20, 2962:21
**wound** [1] - 2935:5
**wrapped** [2] - 2964:24, 2965:14
**write** [1] - 2953:6
**written** [2] - 2924:2, 2942:1

## Y

**years** [1] - 2965:16
**yesterday** [3] - 2927:15, 2963:16,
2964:10
**you's** [1] - 2926:25

3290

**young** [1] - 2965:10